# COMPOSITE EXHIBIT 1
# Complaint and
# State Court Documents

## IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

DIAMOND WHITE

CASE NO.:

Div.:

     Plaintiff(s),

**JURY TRIAL DEMANDED**

vs.

BLUEGREEN VACATION UNLIMITED,
INC., d/b/a BLUEGREEN RESORTS and
BLUEGREEN VACATION CLUB

     Defendant(s).

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, DIAMOND WHITE, ("Plaintiff"), by and through undersigned counsel, hereby

files this complaint against Defendants, BLUEGREEN VACATION UNLIMITED, INC., d/b/a

BLUEGREEN RESORTS, and BLUEGREEN VACATION CLUB, ("Bluegreen" or

"Defendant"), and in support states as follows:

## JURISDICTION, PARTIES, AND VENUE

1.     This is an action for damages which exceed $50,000.00 exclusive of interest,

attorney's fees, and costs.

2.     Plaintiff, Diamond White, is a resident of the State of Wisconsin and is otherwise

*sui juris.*

3.     Defendant, Bluegreen Vacation Unlimited, Inc., d/b/a Bluegreen Resorts, and

Bluegreen Vacation Club, ("Bluegreen" or "Defendant"), is a Florida Corporation and has its

headquarters and principal place of business located at 4960 Conference Way North, Suite 100,

Boca Raton, Florida.

1

4.      Unless indicated otherwise, using Defendant's name in this Complaint includes all predecessor entities, d/b/a entities, affiliates, subsidiaries, agents, employees, officers, directors, principals, trustees, and representatives.

5.      The true names and capacities whether individual, corporate, associate or otherwise of Defendants are unknown to Plaintiff. Plaintiff reserves the right to seek leave of this Court to amend this Complaint to insert the true names and capacities of said Defendants if/when the same are ascertained.

6.      Upon information and belief, the Cibola Vista Resort & Spa, 27501 N. Lake Pleasant Road, Peoria, AZ 85383, is a timeshare resort owned and operated by Defendant through its brands, affiliates, subsidiaries, d/b/a entities, agents, agents, employees, officers, directors, principals, trustees, and representatives.

7.      Plaintiff purchased a timeshare interest for the, from the Defendant in Wisconsin in April of 2019.

8.      At all times relevant hereto, Defendants are vicariously liable for the acts and/or omissions of its agents, employees, and/or representatives, whether now known or later identified through the course of discovery under the doctrine of *respondeat superior* and/or other agency concepts.

9.      This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in Palm Beach County, Florida.

10.     Additionally, this court has personal jurisdiction over Defendant pursuant to Fla. Stat. § 48.193 and due process because Defendant has, at all times relevant to this case, individually or through its agents, officers, and representatives operated, conducted, engaged, and carried on a business venture in this State; maintained an office or agency in this State; committed tortious

conduct in this State related to the allegations made in this complaint; and/or caused damages to Plaintiffs which arose out of the acts or omissions which occurred inside the State of Florida and Palm Beach County.

11.     Venue is proper before this court pursuant to Fla. Stat. § 47.011 as Defendant's principal place of business is located at 4960 Conference Way North, Suite 100, Boca Raton, Florida, in Palm Beach County where this Court sits.

### GENERAL ALLEGATIONS

12.     Defendant is a for profit corporation engaged in the sales and management of timeshare resorts in Florida, Wisconsin, and throughout the country.

13.     To effectuate the sale of timeshares, Defendant invites members of the public to timeshare "presentations" and uses high-pressure sales tactics by multiple sales representatives and sales managers intended to deceive prospective purchasers to buy its timeshare vacation program.

14.     To the best of Plaintiff's information and belief on April 22, 2019, Defendant hosted a timeshare presentation for the purpose of selling timeshares at Defendant's resort facility in Wisconsin.

15.     Plaintiff was offered a vacation in exchange for attending what Plaintiff was promised would be a "short presentation".

16.     The entire presentation lasted approximately 6 hours.

17.     The actual time allowed to review and sign the closing documents to purchase the timeshare was approximately 30 minutes.

18.     The purchase and closing documents are at least 50 pages long.

19.     At all times relevant hereto, Defendant has adopted a uniform and standardized contract form which potential purchasers, including Plaintiffs, are not allowed to change or negotiate, and are presented by Defendants on a take-it or leave-it basis, and Defendant otherwise employs common practices, procedures, and false representations in connection with their timeshare business, which are the bases for this action.

20.     Plaintiff is not in possession of the full copy of the timeshare sales contract and closing documents, however Plaintiff incorporates the full timeshare sales contract and all subparts by reference herein. Plaintiff attached a full copy of what documents she did receive from Defendant as **Exhibit A.**

21.     Upon information and belief, the full timeshare sales contract is in possession of the Defendant and is well known to Defendant. Plaintiff will request the full sales contract and closing documents through discovery and will seek leave of this Court to amend this complaint once the full contract is received.

22.     At all times material hereto, Defendant had a common practice and scheme to orally misrepresent and otherwise make false and misleading representations and/or material omissions about the nature and true terms of the timeshare plan it sells to consumers, including Plaintiffs, in order to induce them to enter into contracts for the purchase of a timeshare interest, all while also employing an unreasonable and false sense of urgency and duress to secure a sale without allowing the benefit of reflection.

23.     The Defendant's sales team focuses on making any and all representations necessary to induce a sale, regardless of the validity or truthfulness of the assertions, and then relying on contradictory terms within its self-serving documents in hopes of absolution from any and all liability for its false assertions. Defendant's sales team perpetually engage in the practice

of orally representing facts that are known to be false and otherwise contradicted by mandatory statutory disclosures (Public Offering Statements) and boilerplate provisions within its own written documents, which is all unknown to the potential purchaser.

24.     Defendant then controls what portions of the sales agreement the potential purchasers are allowed to review during the contract closing/signing, and Defendant knowingly conceals material provisions of the sales agreement and Public Offering Statement, thereby preventing the potential purchaser from conducting a proper and adequate review of the sales contact and Public Offering Statement to decipher all of Defendant's fraudulent oral contradictions during the rushed closing/signing.

25.     Florida enacted the Florida Vacation Plan and Timesharing Act, ("Timeshare Act"), in order to "[e]stablish procedures for the creation, sale, exchange, promotion, and operation of timeshare plans" and to "[p]rovide full and fair disclosure to the purchasers and prospective purchasers of timeshare plans." *See* § 721.01 and § 721.02.

26.     The Timeshare Act imposes a statutory duty on Defendant to file a proposed Public Offering Statement, ("POS"), for approval with the Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares, and Mobile Homes, ("Division"). *See* Fla. Stat § 721.04, § 721.55, § 721.551, and Fla. Admin. Code R. 61B-39.002(4).

27.     The Timeshare Act also imposes a duty on Defendant to provide specific consumer protection information in the POS concerning the timeshare offering, financial information, owners association, managing entity, the reservation company, and other material information necessary to evaluate the purchase of a timeshare. *See* Fla. Stat § 721.04, § 721.55, § 721.551, and Fla. Admin. Code R. 61B-39.002(4).

28. Additionally, Florida Law requires that "[a]ny seller of a timeshare plan must be a licensed real estate broker, broker associate, or sales associate" in the State of Florida. §721.20, Fla. Stat. (2018).

29. As a licensed real estate broker, broker associate, or sales associate in the State of Florida, Defendant owed Plaintiffs the duties of:

    a. Dealing honestly and fairly;

    b. Using skill, care, and diligence in the transaction; and

    c. Disclosing all known facts that materially affect the value of the property. §475.278, Fla. Stat. (2018).

30. During the timeshare sales presentations, Defendant had an affirmative statutory duty to deliver the POS approved by the Division to prospective purchasers, such as Plaintiff, before or at the time of purchase of the timeshare interest. *See* Fla. Stat § 721.07, § 721.55, § 721.551, and Fla. Admin. Code R. 61B-39.002(4).

31. Florida Statute § 721.07 requires each approved amendment to the POS to be "delivered to a purchaser no later than 10 days prior to closing." See Fla. Stat §. 721.07(3)(a)(1).

32. The POS requires Defendant to provide written disclosure to prospective timeshare purchasers to **"not rely upon oral representations as being correct"**. *See* Fla. Stat § 721.55 and § 721.551. (Emphasis added).

33. The POS also requires Defendant to provide written disclosure to prospective purchasers that a timeshare:

    a. should "**not [be] considered for purposes of acquiring an appreciating investment**"

    b. **"or with an expectation that the interest may be resold"**.

*See* Fla. Stat § 721.55 and § 721.551. (Emphasis added).

34.     The POS also requires Defendant to provide written disclosure to prospective purchasers that **"[t]he seller is prohibited from making any representations other than those contained in the contract and this public offering statement."** *See* Fla. Stat. 721.07.

35.     At the timeshare presentation, Defendant knowingly, willfully, and intentionally concealed or withheld the POS from Plaintiff in violation of its duty and Florida Law. *See* Fla. Stat § 721.07, § 721.55, § 721.551, and Fla. Admin. Code R. 61B-39.002(4).

36.     Defendants knowingly concealed the POS from Plaintiffs to prevent Plaintiff's from conducting a proper review of the statutory warnings before buying a timeshare.

37.     Plaintiff did not receive a POS before purchasing her timeshare.

38.     During the presentation, Defendant failed to truthfully review or explain any material provisions of the purchase documents, and concealed portions of the purchase documents including but not limited to the successor liability clause, arbitration clause, and choice of law/venue clauses from Plaintiff.

39.     Furthermore, Defendant knowingly made false material statements to Plaintiff throughout the timeshare presentation in direct contradiction to statutory warnings and advisories the POS was required to provide, including but not limited to:

    a.   purchasing a timeshare interest is a "good investment";

    b.   a timeshare is an "asset" to pass on to their children;

    c.   a timeshare easy to resell;

    d.   purchasing a timeshare would save money on booking rooms;

    e.   purchasers could earn income renting out the timeshare;

    f.   a timeshare will appreciate in value

40.     Defendant knew these statements were false at the time the statements were made as evidenced by several sections of the Timeshare Act, an entire chapter of Florida Statutes, which requires disclosure of full, accurate, and truthful material information to prospective purchasers, regarding the prospective purchase of a timeshare. *See* Fla. Stat. § 721.07, § 721.55, § 721.551, and Fla. Admin. Code R. 61B-39.002(4).

41.     By knowingly concealing or withholding the POS from potential purchasers, Defendants knowingly, willingly, and intentionally withheld and concealed material statutory warnings and advisories about purchasing a timeshare, including but not limited to:

    a.  do <u>not</u> rely on any oral statements as true;

    b.  a timeshare is <u>not an appreciating investment</u>; and

    c.  a timeshare is <u>not easy to resell</u>.

    *See* Fla. Stat § 721.55 and § 721.551.

42.     Plaintiff detrimentally relied on Defendant's concealment of the POS because the POS would have, at a minimum, informed Plaintiffs **not to rely on any oral statements made by Defendant** during the 6-hour long the timeshare presentation. *See* Fla. Stat § 721.55 and § 721.551. (Emphasis added).

43.     Plaintiff detrimentally relied on Defendant's concealment of the POS because the POS would have also informed Plaintiffs that "**the <u>seller is prohibited</u> from making any representations other than those contained in the contract and this public offering statement**", during the 6-hour long the timeshare presentation. *See* Fla. Stat § 721.55 and § 721.551. (Emphasis added).

44.     Plaintiff detrimentally relied on Defendant's concealment of the POS because the POS would have also informed Plaintiff that a timeshare:

    a.    should "**not [be] considered for purposes of acquiring an appreciating investment**";

    b.    **"or with an expectation that the interest may be resold"**.

45.    Defendant knew that if Plaintiff had received the POS with the proper consumer protection information and advisories, Plaintiff would have understood the true risks associated with purchasing a timeshare by comparing the government mandated advisories and warnings of the POS to the false promises made by Defendant during the timeshare presentation, and Plaintiff would not have purchased the timeshare.

46.    Plaintiff's 10-year old daughter had to be left alone in the hotel room while Plaintiff attended what was promised to be a short presentation but turned out to last over 6 hours.

47.    Due to Defendant's high-pressure sales tactics during a 6-hour long sales presentation, Plaintiffs were physically worn down and mentally stressed out by the time they signed the timeshare contract.

48.    The actual time allowed to review and sign the closing documents to purchase the timeshare was approximately 30 minutes.

49.    The purchase and closing documents are at least 50 pages long.

50.    During the approximate 30 minutes spent signing the closing documents, Defendants' representative: (a) controlled the documents; (b) hid any portion of the contract it did not want Plaintiffs to see; and (c) would not allow Plaintiffs to review the entire contract/documents prior to signing.

51.    During the signing portion of the presentation, Defendant created a false sense of urgency, i.e. duress, in an effort to compel Plaintiffs to make an ill-advised purchase without the benefit of additional thought, reflection, or assistance.

52.     During the signing portion of the presentation, Defendant simply shoved documents in front of the Plaintiffs and told them to sign or initial and then took the document back prior to Plaintiffs being able to see what they were signing.

53.     During the signing portion of the presentation, Defendant only revealed the signature pages of the documents that needed to be signed, showed them where to sign/initial, and then took the documents back prior to Plaintiffs being able to locate and read the relevant pages. Multiple pages in the contract contained material information; however, there was no place to sign or initial on these pages.

54.     During the signing portion of the presentation, Defendant's concealed the Public Offering Statement from Plaintiffs and prevented Plaintiff's from reviewing the Public Offering Statement prior to signing the timeshare purchase documents.

55.     If, in the very large amount of transaction paperwork Plaintiff had to sign, there was a Public Offering Statement "Receipt" stating Plaintiff was provided a Public Offering Statement, Plaintiff was not aware of signing such a statement at the time because of Defendant's control of the contract documents, Plaintiff was prevented from reading the terms of the contract herself, and Plaintiff relied on Defendant's explanations and instructions where to sign.

56.     Defendants made materially false statements to Plaintiff throughout the timeshare presentation that are in direct contradiction to the mandatory statutory warnings, disclosures, and information the POS was intended to provide.

57.     Defendant cannot circumvent the requirements of providing the Public Offering Statement to prospect purchasers before signing the timeshare sale contract by weaving boilerplate clauses similar to the Public Offering Statement throughout Defendant's self-serving sales contract

and concealing the actual POS and actual contract terms from the prospect purchaser during the contract signing/closing, and then claim they met their duty and are absolved of liability.

58.     Had Plaintiff received the POS they would have known that the highly material statements made by Defendant and its agents about purchasing a timeshare during the timeshare presentation were in fact false when compared to the POS consumer advisories and warnings and risk associated with a timeshare and would not have purchased the timeshare.

59.     Defendant willfully concealed and failed to advise Plaintiff of the successor liability clause in the subject contract which bound Plaintiff's heirs in perpetuity to the financial obligations of the timeshare contract after Plaintiff's death.

60.     Furthermore, Defendant intentionally made false statements to Plaintiff during the timeshare presentation regarding successor liability, including but not limited to:

      a.   a Timeshare is an "Asset" that Plaintiffs can Will to their family; and/or

      b.   Plaintiff could easily resell the timeshare.

61.     Defendant knew that by willfully concealing the successor liability element of the timeshare, they were withholding important material information from Plaintiff while they were deciding to purchase a timeshare from Defendant.

62.     Plaintiff detrimentally relied on Defendant's concealment of the successor liability element, a material fact about a timeshare, and were misled by Defendant into purchasing a timeshare by thinking they had purchased an "asset" they could Will to their children, when in reality they had purchased a liability which bound Plaintiff's heirs to the financial obligations of timeshare contract in perpetuity after Plaintiff's death.

63.     Had Defendant not withheld the successor liability clause from Plaintiff, and had Plaintiff been properly advised that by signing the purchase contract for the timeshare her heirs

and successors would be bound to the contract in perpetuity, she would not have purchased the timeshare.

64.     Defendant concealed the arbitration, anti-class action, and choice of law/venue provisions in the contract from Plaintiff to cause Plaintiff to purchase a timeshare.

65.     Defendant intentionally concealed the mandatory arbitration clause and waiver of class action clause of the timeshare sales contract from Plaintiff in order to evade judicial review of Defendant's intentional fraudulent conduct and wrongdoings.

66.     The mandatory arbitration clause and waiver of class action clause is a material element of the timeshare sales contract as it endeavors to waive critically important rights such as: (1) the right of access to courts within Section 21 of the Florida Constitution; (2) the right to jury trial within the Seventh Amendment of the United States Constitution; (2) and due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

67.     Had Plaintiffs been properly advised that by signing the purchase contract for the timeshare they were waiving their constitutional right to access the courts and seek judicial review of the transaction and Defendant's conduct, they would not have purchased the timeshare.

68.     Plaintiffs signed the unlawful timeshare sales contracts which are void or voidable as a matter of law due to non-compliance with the Florida Timeshare Act, Florida Law, and Wisconsin Law.

69.     Defendant is engaged in "deceptive trade practices" in the course of their business. Defendant knowingly made one or more false representations and material omissions in the sale of Plaintiff's timeshare contract. Plaintiff would not have purchased the timeshare but for Defendants' deceptive trade practices.

**COUNT 1 – FRAUDULENT CONCEALMENT OF PUBLIC OFFERING STATEMENT**

70.     Plaintiff realleges and incorporates paragraphs 1-69 above as if fully set forth below.

71.     Florida enacted the Florida Vacation Plan and Timesharing Act, ("Timeshare Act"), in order to "[e]stablish procedures for the creation, sale, exchange, promotion, and operation of timeshare plans" and to "[p]rovide full and fair disclosure to the purchasers and prospective purchasers of timeshare plans." *See* § 721.01 and § 721.02.

72.     Defendant, as a corporation engaged in selling timeshare interests to the public, had a statutory duty under the Timeshare Act to disclose full, accurate, and truthful information to prospective purchasers such as Plaintiffs.

73.     The Timeshare Act imposes a statutory duty on Defendant to file a proposed Public Offering Statement, ("POS"), for approval with the Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares, and Mobile Homes, ("Division"). *See* Fla. Stat § 721.04, § 721.55, § 721.551, and Fla. Admin. Code R. 61B-39.002(4).

74.     The Timeshare Act imposes a duty on Defendant to provide certain required consumer protection information in the POS concerning the timeshare offering, financial information, owners association, managing entity, the reservation company, and other material information necessary to evaluate the purchase of a timeshare. *See* Fla. Stat § 721.04, § 721.55, § 721.551, and Fla. Admin. Code R. 61B-39.002(4).

75.     Additionally, Florida Law requires that "[a]ny seller of a timeshare plan must be a licensed real estate broker, broker associate, or sales associate" in the State of Florida. §721.20, Fla. Stat. (2018).

76.     As a licensed real estate broker, broker associate, or sales associate in the State of Florida, Defendant and Defendant's employees and agents owed Plaintiffs the duties of:

13

a.   Dealing honestly and fairly;

b.   Using skill, care, and diligence in the transaction; and

c.   Disclosing all known facts that materially affect the value of the property.

§475.278, Fla. Stat. (2018)

77.     Defendant had an affirmative statutory duty to deliver the POS approved by the

Division to prospective purchasers, such as Plaintiff, before or at the time of purchase of the

timeshare interest. *See* Fla. Stat § 721.07, § 721.55, § 721.551, and Fla. Admin. Code R. 61B-39.002(4).

78.     Defendant, as a corporation with its principal place of business in Florida, knew of

its statutory duty to deliver the approved POS to prospective timeshare purchasers before or at the

time of purchase of the timeshare interest.

79.     At the timeshare presentation, Defendant intentionally and willfully concealed the

POS from Plaintiff in violation of Florida Law. *See* Fla. Stat § 721.04, § 721.55, § 721.551, and

Fla. Admin. Code R. 61B-39.002(4).

80.     Plaintiff never received a POS before purchasing their timehsare.

81.     Defendant knew that by intentionally and willfully concealing the POS from

Plaintiffs, and thereby preventing Plaintiff from reviewing the material information and statutory

warnings about purchasing a timeshare would induce Plaintiffs into purchasing the timeshare.

82.     By knowingly concealing or withholding the POS from potential purchasers,

Defendants knowingly, willingly, and intentionally withheld and concealed material information,

including but not limited to:

a. **Section 721.55(1)(b), Florida Statutes-** states that a multistate timeshare public offering statement given to a purchaser must have a cover page that has the following in conspicuous type:

> This public offering statement contains important matters to be considered in acquiring an interest in a multisite timeshare plan. [. . .] The statements contained herein are only summary in nature. A prospective purchaser should refer to all references, accompanying exhibits, contract documents, and sales materials. **The prospective purchaser should not rely upon oral representations as being correct** and should refer to this document and accompanying exhibits for correct representations.

> (Emphasis Added)

b. **Section 721.55(4)(j), Florida Statutes-** states that a POS must contain the following statement in conspicuous type in substantially the following form:

> The purchase of an interest in a multisite timeshare plan (or multisite vacation ownership plan or multisite vacation plan or vacation club) should be based upon its value as a vacation experience or for spending leisure time, and **not considered for purposes of acquiring an appreciating investment or with an expectation that the interest may be resold.**

> (Emphasis Added)

83.     Defendant knew that had Plaintiff received the POS containing the proper consumer protection disclosures and warnings, Plaintiff would have known the risks and dangers associated with a timeshare and would not have purchased the timeshare.

84.     Plaintiff detrimentally relied on Defendant's concealment of the POS because the POS would have, at a minimum, informed Plaintiffs **not to rely on any oral statements made by Defendant** during the timeshare presentation. *See* Fla. Stat § 721.55 and § 721.551. (Emphasis added).

85.     Furthermore, Defendant made materially false statements to Plaintiff throughout the timeshare presentation that are in direct contradiction to the mandatory statutory warnings, disclosures, and information the POS was intended to provide, including but not limited to:

    a.   A timeshare is a "good investment";

    b.   A timeshare is an "appreciating asset" or "investment";

    c.   That a timeshare is easy to resell

86.     Defendant cannot circumvent the requirements of providing the Public Offering Statement to prospect purchasers <u>before</u> signing the timeshare sale contract by weaving boilerplate clauses similar to the Public Offering Statement throughout Defendant's self-serving sales contract and concealing the actual POS and actual contract terms from the prospect purchaser during the contract signing/closing, and then claim they met their duty and are absolved of liability.

87.     Had Plaintiff received the POS <u>before</u> signing the timeshare sales contract they would have known material information and risk associated with a timeshare, and Plaintiff would have had the opportunity to conduct a proper review of the sales contact and Public Offering Statement to decipher all of Defendant's fraudulent oral contradictions during the rushed closing and signing.

88.     Plaintiff detrimentally relied on Defendant's concealment of the POS and material facts about the timeshare, and was misled by Defendant into purchasing a timeshare, and have incurred substantial damages as a result of Defendant's conduct.

89.     Plaintiff signed the unlawful timeshare sales contracts which are void or voidable as a matter of law due to non-compliance with the Florida Timeshare Act, Florida Law, and Wisconsin Law.

90.     As a result, Defendant has been unjustly enriched.

16

91.     Plaintiffs are entitled to punitive damages for Defendant's intentional misconduct pursuant to Florida Statute § 768.72 (2), and/or any other applicable statute, law and/or rule.

92.     As a result of Defendant's fraudulent conduct, it has become necessary for Plaintiff to retain the services of the undersigned attorney and law firm.

93.     Plaintiff is obligated to pay reasonable attorney fees of the undersigned attorney and law firm for bringing this action, plus necessary costs.

94.     Plaintiffs are entitled to attorneys' fees pursuant to Florida Statutes § 721.21, and/or any other applicable statute, law and/or rule.

95.     Plaintiff seeks to recover all actual damages, punitive damages, civil penalties, and attorney's fees allowed by law arising out of Defendants' violation of law.

## COUNT 2 – FRAUDULENT MISREPRESENTATION

96.     Plaintiff realleges and incorporates paragraphs 1-94 above as if fully set forth below.

97.     Florida enacted the Florida Vacation Plan and Timesharing Act, ("Timeshare Act"), in order to "[e]stablish procedures for the creation, sale, exchange, promotion, and operation of timeshare plans" and to "[p]rovide full and fair disclosure to the purchasers and prospective purchasers of timeshare plans." *See* §721.01 and § 721.02.

98.     Defendant, as a corporation engaged in selling timeshare interests to the public, had a statutory duty under the Timeshare Act and Florida Law to disclose full, accurate, and truthful information to prospective purchasers of the timeshare, such as Plaintiff.

99.     Florida Law requires that "[a]ny seller of a timeshare plan must be a licensed real estate broker, broker associate, or sales associate" in the State of Florida. §721.20, Fla. Stat. (2018).

17

100.    As a licensed real estate broker, broker associate, or sales associate, Defendant owed Plaintiffs the duties of:

    a.   Dealing honestly and fairly;

    b.    Using skill, care, and diligence in the transaction; and

    c.   Disclosing all known facts that materially affect the value of the property.

    §475.278, Fla. Stat. (2018)

101.    During the timeshare presentation, Defendant knowingly made false material statements to Plaintiff throughout the timeshare presentation in direct contradiction to statutory warnings and advisories the POS was required to provide, including but not limited to:

    a.   purchasing a timeshare interest is a "good investment";

    b.   a timeshare is an "asset" to pass on to their children;

    c.   a timeshare easy to resell;

    d.   purchasing a timeshare would save money on booking rooms;

    e.   purchasers could earn income renting out the timeshare;

    f.   a timeshare will appreciate in value

102.    Defendant knew that these statements made during the timeshare presentation were false statements at the time the statements were made as evidenced by Fla. Stat. §721.55(4)(j), which requires the timeshare to inform a prospective timeshare purchaser that the purchase of a timeshare is:

    a.   "not considered for purposes of acquiring an appreciating investment",

    b.   "or with an expectation that the interest may be resold."

    (Emphasis added).

103.    Defendant knew that these statements that were made during the timeshare presentation were false statements at the time the statements were made as evidenced by several sections of the Timeshare Act, an entire chapter of Florida Statutes, which requires disclosure of full, accurate, and truthful material information to prospective purchasers, such as Plaintiff, regarding the prospective purchase of a timeshare. *See* Fla. Stat. § 721.07, § 721.55, § 721.551, and Fla. Admin. Code R. 61B-39.002(4).

104.    By knowingly concealing the consumer protection warnings contained in the POS from potential purchasers, and by knowingly making false material statements in direct contradiction to the mandatory consumer protection warnings, Defendant knowingly and fully intended for Plaintiff to rely on these false statements in order to induce Plaintiff to purchase a timeshare.

105.    Plaintiff justifiably relied on the aforementioned false statements made by Defendant because, among other things: (1) Plaintiff was at the Defendant's timeshare offices or facilities when the statements were made; (2) these false statements were made by multiple of Defendant's representatives, employees, and agents during the timeshare presentation; (3) Plaintiff had a right to believe the information provided by a licensed timeshare corporation's representatives, employees, and agents was complete, truthful, and accurate information concerning the timeshare purchase; and (4) Plaintiff relied on the information being given to them by individuals having a higher degree of timeshare knowledge then the average consumer because of their employment in the timeshare industry.

106.    Plaintiffs justifiably relied on the aforementioned false statements made by Defendant because Florida Law requires that any seller of a timeshare plan must be a licensed real

19

estate broker, broker associate, or sales associate; and as such, Defendant and its employees and agents owed Plaintiffs the duties of:

a. Dealing honestly and fairly;

b. Using skill, care, and diligence in the transaction; and

c. Disclosing all known facts that materially affect the value of the property.

§475.278, Fla. Stat. (2018)

107.     Defendant is engaged in the business of selling timeshares for profit, and Defendant had an economic incentive to induce Plaintiff to purchase a timeshare, fully intended for Plaintiffs to rely on these false material statements to deceive Plaintiff to purchase a timeshare.

108.     Plaintiff detrimentally relied on Defendant's false material statements about the benefits owning a timeshare, were intentionally misled by Defendant into purchasing a timeshare, and have incurred substantial damages as a direct and proximate result of Defendant's false statements and conduct.

109.     Had Plaintiff not been misled by Defendant that the timeshare purchase was a good investment, and had Plaintiffs been properly informed that a timeshare was not a good investment, they would not have purchased the timeshare.

110.     Had Plaintiff not been misled by Defendant that the timeshare purchase could be easily resold, and had Plaintiffs been properly informed that a timeshare could not be easily resold, they would not have purchased the timeshare.

111.     Had the Plaintiff not been misled by Defendant that a timeshare is an "Asset" they could will to their families, and had Plaintiffs been properly informed that a timeshare is not an "Asset" they could Will to their families; they would not have purchased the timeshare.

112.     Plaintiff signed the unlawful timeshare sales contracts which are void or voidable as a matter of law due to Defendant's fraudulent conduct and non-compliance with the Florida Timeshare Act, Florida Law, and Wisconsin Law.

113.     As a result, Defendant has been unjustly enriched.

114.     Plaintiff is entitled to punitive damages for Defendant's intentional misconduct pursuant to Florida Statute § 768.72 (2), and/or any other applicable statute, law and/or rule.

115.     As a result of Defendant's fraudulent conduct, it has become necessary that Plaintiff retain the services of the undersigned attorney and law firm.

116.     Plaintiff is obligated to pay reasonable attorney fees of the undersigned law firm for bringing this action, plus necessary costs.

117.     Plaintiffs are entitled to attorneys' fees pursuant to Florida Statutes § 721.21, and/or any other applicable statute, law and/or rule.

118.     Plaintiff seeks to recover all actual damages, punitive damages, civil penalties, and attorney's fees allowed by law arising out of Defendant's violation of law.

**COUNT 3 – FRAUDULENT CONCEALMENT OF SUCCESSOR LIABILITY**

119.     Plaintiff realleges and incorporates by reference Paragraphs #1-118, above, as if fully set forth below.

120.     Defendant, as a corporation engaged in selling timeshare interests to the public, had a statutory duty under the Timeshare Act and Florida Law to disclose full, accurate, and truthful information to prospective purchasers of the timeshare, such as Plaintiffs.

121.     Florida Law requires that any seller of a timeshare plan must be a licensed real estate broker, broker associate, or sales associate; and as such, Defendant and its employees and agents owed Plaintiffs the duties of:

      a.   Dealing honestly and fairly;

      b.   Using skill, care, and diligence in the transaction; and

      c.   Disclosing all known facts that materially affect the value of the property.

      §475.278, Fla. Stat. (2018)

122.    During the timeshare presentation, Defendant willfully, and intentionally concealed and failed to advise Plaintiffs of the successor liability clause in the subject contract which bound Plaintiffs' heirs to the timeshare contract after Plaintiffs' respective deaths.

123.    Defendant knew or should have known that by deliberately, willfully, and intentionally concealing the successor liability element of timeshare "ownership", it prevented Plaintiff from making an informed decision on whether to purchase the subject timeshare.

124.    Defendant is engaged in the business of selling timeshares for profit, and Defendant had an economic incentive to induce Plaintiff to purchase a timeshare, and fully intended for Plaintiffs to rely on the concealment of the successor liability element in order to deceive and coerce Plaintiff to purchase a timeshare.

125.    Plaintiff detrimentally relied on Defendant's concealment of the successor liability element, a material fact about a timeshare, and were misled by Defendant into purchasing a timeshare, and have incurred substantial damages as a result of Defendant's conduct.

126.    Had Plaintiff been properly informed that by signing the purchase contract for the timeshare, their heirs would be bound to the contract, in perpetuity, they would not have purchased the timeshare.

127.    Plaintiff signed the unlawful timeshare sales contracts which are void or voidable as a matter of law due to Defendant's fraudulent conduct and non-compliance with the Florida Timeshare Act, Florida Law, and Wisconsin Law.

128.     As a result, Defendant has been unjustly enriched.

129.     Plaintiff is entitled to punitive damages for Defendant's intentional misconduct pursuant to Florida Statute § 768.72 (2), and/or any other applicable statute, law and/or rule.

130.     As a result of Defendant's fraudulent conduct, it has become necessary that Plaintiff retain the services of the undersigned attorney and law firm.

131.     Plaintiff is obligated to pay reasonable attorney fees of the undersigned law firm for bringing this action, plus necessary costs.

132.     Plaintiff is entitled to attorneys' fees pursuant to Florida Statutes § 721.21, and/or any other applicable statute, law and/or rule.

133.     Plaintiff seeks to recover all actual damages, punitive damages, civil penalties, and attorney's fees allowed by law arising out of Defendants' violation of law.

## COUNT 4 – FRAUDULENT CONCEALMENT OF ARBITRATION CLAUSE AND ANTI-CLASS ACTION CLAUSE

134.     Plaintiff realleges and incorporates by reference Paragraphs #1-133 above, as if fully set forth below.

135.     As stated above, Florida enacted the Florida Vacation Plan and Timesharing Act, ("Timeshare Act"), in order to "[e]stablish procedures for the creation, sale, exchange, promotion, and operation of timeshare plans" and to "[p]rovide full and fair disclosure to the purchasers and prospective purchasers of timeshare plans." *See* §721.01 and § 721.02.

136.     Defendant, as a corporation engaged in selling timeshare interests to the public, had a statutory duty under the Timeshare Act and Florida Law to disclose complete, accurate, and truthful information to prospective purchasers of the timeshare, such as Plaintiffs.

137.     Additionally, Florida Law requires that "[a]ny seller of a timeshare plan must be a licensed real estate broker, broker associate, or sales associate" in the State of Florida. §721.20, Fla. Stat. (2018).

138.     As a licensed real estate broker, broker associate, or sales associate in the State of Florida, Defendant and Defendant's employees and agents owed Plaintiffs the duties of:

  a.   Dealing honestly and fairly;

  b.   Using skill, care, and diligence in the transaction; and

  c.   Disclosing all known facts that materially affect the value of the property.

  §475.278, Fla. Stat. (2018

139.     Defendant had an affirmative duty to provide full disclosure of all material information affecting the value of the property, to deal fairly and honestly, and to use skill, care, and diligence in the transaction and <u>not conceal</u> from prospective purchasers, such as Plaintiff, the mandatory arbitration clause and waiver of class action clause of the timeshare sales contract.

140.     Moreover, Defendant had an affirmative duty to provide full disclosure of all material information to prospective purchasers, such as Plaintiff, regarding the mandatory arbitration clause and waiver of class action clause of the timeshare sales contract.

141.     During the timeshare presentation, Defendant deliberately, willfully, and intentionally concealed or withheld the mandatory arbitration clause and waiver of class action clause of the timeshare sales contract from Plaintiff to induce Plaintiff into purchasing a timeshare.

142.     Defendant deliberately Defendant deliberately, willfully, and intentionally concealed or withheld the mandatory arbitration clause and waiver of class action clause of the timeshare sales contract from Plaintiff to evade judicial review of Defendant's intentional fraudulent conduct and wrongdoings.

24

143.    The mandatory arbitration clause and waiver of class action clause is a material element of the timeshare sales contract as it endeavors to waive critically important rights such as (1) right of access to courts within Section 21 of the Florida Constitution; (2) right to jury trial within the Seventh Amendment of the United States Constitution; (2) and due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

144.    Defendant knew that by deliberately, willfully, and intentionally concealing the mandatory arbitration clause and waiver of class action clause of the timeshare sales contract, it thereby prevented Plaintiff from making an informed decision on whether to purchase the subject timeshare.

145.    Defendant is engaged in the business of selling timeshares for profit, and Defendant had an economic incentive to induce Plaintiff to purchase a timeshare, and Defendant therefore fully intended for Plaintiffs to rely on the concealment of the mandatory arbitration clause and waiver of class action clause in order to deceive Plaintiff to purchase a timeshare.

146.    Plaintiff detrimentally relied on Defendant's concealment of the mandatory arbitration clause and waiver of class action clause, a material fact about a timeshare purchase, and were misled by Defendant into purchasing a timeshare by thinking they could still access to the courts to protect their rights and seek judicial review of the timeshare transaction.

147.    Had Plaintiffs been properly advised that by signing the purchase contract for the timeshare they were waiving their constitutional right to access the courts and seek judicial review of the transaction and Defendant's conduct, they would not have purchased the timeshare.

148.    Plaintiffs signed the unlawful timeshare sales contracts which are void or voidable as a matter of law due to Defendant's fraudulent conduct and non-compliance with the Florida Timeshare Act, Florida Law, and Wisconsin Law.

149.    As a result, Defendant has been unjustly enriched.

150.    Plaintiff is entitled to punitive damages for Defendant's intentional misconduct pursuant to Florida Statute § 768.72 (2), and/or any other applicable statute, law and/or rule.

151.    As a result of Defendant's fraudulent conduct, it has become necessary that Plaintiff retain the services of the undersigned attorney and law firm.

152.    Plaintiff is obligated to pay reasonable attorney fees of the undersigned law firm for bringing this action, plus necessary costs.

153.    Plaintiff entitled to attorneys' fees pursuant to Florida Statutes § 721.21, and/or any other applicable statute, law and/or rule.

154.    Plaintiff seeks to recover all actual damages, punitive damages, civil penalties, and attorney's fees allowed by law arising out of Defendants' violation of law.

### COUNT 5 – FRAUDULENT CONCEALMENT OF CONTRACT TERMS

155.    Plaintiff realleges and incorporates by reference Paragraphs #1-154 above, as if fully set forth below.

156.    As stated above, Florida enacted the Florida Vacation Plan and Timesharing Act, ("Timeshare Act"), in order to "[e]stablish procedures for the creation, sale, exchange, promotion, and operation of timeshare plans" and to "[p]rovide full and fair disclosure to the purchasers and prospective purchasers of timeshare plans." *See* §721.01 and § 721.02.

157.    Defendant, as a corporation engaged in selling timeshare interests to the public, had a statutory duty under the Timeshare Act and Florida Law to disclose complete, accurate, and truthful information to prospective purchasers of the timeshare, such as Plaintiff.

158.    Additionally, Florida Law requires that "[a]ny seller of a timeshare plan must be a licensed real estate broker, broker associate, or sales associate" in the State of Florida. §721.20, Fla. Stat. (2018).

159.    As a licensed real estate broker, broker associate, or sales associate, Defendant owed Plaintiff the duties of:

d.   Dealing honestly and fairly;

e.    Using skill, care, and diligence in the transaction; and

f.   Disclosing all known facts that materially affect the value of the property.

§475.278, Fla. Stat. (2018

160.    Defendant had an affirmative duty to provide full disclosure of all material information affecting the value of the property, to deal fairly and honestly, and to use skill, care, and diligence in the transaction and not conceal from prospective purchasers, such as Plaintiff, the full contractual terms of the timeshare sales contract.

161.    During the 6-hour long timeshare presentation, Defendant makes any and all representations necessary to induce a sale, regardless of the validity or truthfulness of the assertions, and then relying on contradictory terms within its self-serving documents in hopes of absolution from any and all liability for its false assertions, which is all unknown to the potential purchaser.

162.    During the approximately 30 minutes spent signing the closing documents, Defendants' representative: (a) controlled the documents; (b) hid any portion of the contract it did not want Plaintiffs to see; and (c) would not allow Plaintiffs to review the entire contract/documents prior to signing.

163.     During the signing portion of the presentation, Defendant created a false sense of urgency, i.e. duress, in an effort to compel Plaintiffs to make an ill-advised purchase without the benefit of additional thought, reflection, or assistance.

164.     Defendant then controls what portions of the sales agreement the potential purchasers are allowed to review during the contract closing/signing, and Defendant knowingly conceals material provisions of the sales agreement and Public Offering Statement, thereby preventing the potential purchaser from conducting a proper and adequate review of the sales contact and Public Offering Statement to decipher all of Defendant's fraudulent oral contradictions during the rushed closing/signing.

165.     During the signing portion of the presentation, Defendant simply shoved documents in front of the Plaintiffs and told them to sign or initial and then took the document back prior to Plaintiffs being able to see what they were signing.

166.     During the signing portion of the presentation, Defendant only revealed the signature pages of the documents that needed to be signed, showed them where to sign/initial, and then took the documents back prior to Plaintiffs being able to locate and read the relevant pages. Multiple pages in the contract contained material information; however, there was no place to sign or initial on these pages.

167.     Defendant cannot circumvent the requirements of providing the Public Offering Statement to prospect purchasers before signing the timeshare sale contract by weaving certain similar clauses of the Public Offering Statement throughout Defendant's self-serving sales contract, and prevent consumers from reviewing the full terms of the timeshare sales contract, and then claim they met their duty and are absolved of liability.

168.    Had Plaintiff been allowed to review the full timeshare sales contract and known the true terms of the agreement and purchasing a timeshare before signing the timeshare sales agreement, Plaintiff would not have purchased the timeshare.

169.    Plaintiff detrimentally relied on Defendant's concealment of the timeshare sales contract terms and material facts about the timeshare, and were misled by Defendant into purchasing a timeshare, and have incurred substantial damages as a result of Defendant's conduct.

170.    Plaintiff signed the unlawful timeshare sales contracts which are void or voidable as a matter of law due to non-compliance with the Florida Timeshare Act, Florida Law, and Wisconsin Law.

171.    As a result, Defendant has been unjustly enriched.

172.    Plaintiff is entitled to punitive damages for Defendant's intentional misconduct pursuant to Florida Statute § 768.72 (2), and/or any other applicable statute, law and/or rule.

173.    As a result of Defendant's fraudulent conduct, it has become necessary that Plaintiff retain the services of the undersigned attorney and law firm.

174.    Plaintiff is obligated to pay reasonable attorney fees of the undersigned law firm for bringing this action, plus necessary costs.

175.    Plaintiffs are entitled to attorneys' fees pursuant to Florida Statutes § 721.21, and/or any other applicable statute, law and/or rule.

176.    Plaintiff seeks to recover all actual damages, punitive damages, civil penalties, and attorney's fees allowed by law arising out of Defendants' violation of law.

### COUNT 6 – VIOLATION OF FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

177.    Plaintiff realleges and incorporates by reference Paragraphs #1-176, above, as if fully set forth below.

178.    Florida enacted the Florida Deceptive and Unfair Trade Practices Act, ("Unfair Trade Act"), in order "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.." § 501.202, Fla. Stat. (2011).

179.    Section 501.204(1), of the Unfair Trade Act states, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." § 501.204, Fla. Stat. (2011).

180.    The Unfair Trade Act provides that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission, ("FTC), and the federal courts relating to [. . .] the federal Trade Commission Act. § 501.204, Fla. Stat.

181.    The FTC has found an act or practice to be "deceptive" where a representation, omission, or practice is likely to mislead a consumer acting reasonably under the circumstances and is likely to affect a consumer's conduct or decision regarding a product or service.

182.    Defendant engaged in a "deceptive trade practice" by repeatedly or continuously conducting its sales presentations in a manner that would be considered by a reasonable person to be annoying, abusive, or harassing. Defendant's conduct caused damages to Plaintiff because Plaintiff would not have purchased the timeshare but for Defendants' deceptive trade practices.

183.    Defendant engaged in a "deceptive trade practice" when, in the course of their business, Defendant failed to disclose one or more of the material facts identified above in connection with the sale or lease of goods and services to Plaintiff. Defendant's conduct caused damages to Plaintiff because Plaintiff would not have purchased the timeshare from Defendant but for Defendant's deceptive trade practices.

30

184.    Defendant engaged in a "deceptive trade practice" when, in the course of their business, Defendant made false or misleading statements of fact through omission concerning the price of goods or services for sale or lease. Defendants' conduct caused damages to Plaintiff because Plaintiff would not have purchased the timeshare from Defendant but for Defendant's deceptive trade practices.

185.    Defendant engaged in a "deceptive trade practice" in the course of their business. Defendant knowingly made one or more false representation(s) and/or material omission(s) in the sale of the contract. Defendant's conduct caused damages to Plaintiff because Plaintiffs would not have purchased the timeshare from Defendant but for Defendants' deceptive trade practices.

186.    Plaintiffs signed the unlawful timeshare sales contracts which are void or voidable as a matter of law due to non-compliance with the Florida Timeshare Act, Florida Law, and Wisconsin Law.

187.    As a result, Defendant has been unjustly enriched.

188.    Plaintiffs are entitled to punitive damages for Defendant's intentional misconduct pursuant to Florida Statute § 768.72 (2), and/or any other applicable statute, law and/or rule.

189.    As a result of Defendant's fraudulent conduct, it has become necessary that Plaintiff retain the services of the undersigned attorney and law firm.

190.    Plaintiff is obligated to pay reasonable attorney fees of the undersigned law firm for bringing this action, plus necessary costs.

191.    Plaintiffs are entitled to attorneys' fees pursuant to Florida Statutes § 721.21, and/or any other applicable statute, law and/or rule.

192.    Plaintiffs are entitled to attorneys' fees and costs pursuant to § 501.2105, Fla. Stat.

193.    Plaintiff seeks to recover all actual damages, punitive damages, civil penalties, and attorney's fees allowed by law arising out of Defendants' violation of law.

<b><u>COUNT 7 – DECLARATORY RELIEF</u></b>

194.    Plaintiffs specifically re-allege and restate paragraphs 1 through 193 above, as if fully set forth herein.

195.    The declaratory relief sought in this action is consistent with the declaratory judgment statutes authorizing an action to declare the underlying issues of fact in determining the existence or nonexistence of any right, or of "any fact upon which the existence or nonexistence of such ... right does or may depend, and whether such right ... now exists or will arise in the future. §86.011, Fla. Stat. (2019).

196.    Plaintiff has an actual, present, adverse interest in the subject matter whether the timeshare contract is declared null and void for Defendant's fraudulent conduct as stated within the complaint above.

197.    Plaintiff is asking the court, pursuant to §86.011, Fla. Stat., to declare the timeshare sales contracts to be unlawful contracts because of noncompliance with Florida Law, Florida Timeshare Act, and Wisconsin Law and thus the contract signed was void or voidable as a matter of law. The legislature has given this Court the authority to do so pursuant to §86.011, Fla. Stat.

198.    Plaintiff seeks relief from the Court to declare the Contract was void or voidable pursuant to Florida Law, Florida Timeshare Act, and Wisconsin Law, as referenced above, and therefore Defendants were unjustly enriched as a result.

199.    It has been necessary for Plaintiffs to incur attorney's fees, costs, and other expenses in prosecuting these claims and seeks recovery of reasonable attorney's fees and costs, including

32

all pre-judgment or post-judgment interest, and such other and further relief the court deems proper resulting from this action as allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to enter judgment in favor of Plaintiff against Defendants as follows:

1)   Enter an Order for Declaratory Relief in the form of a declaration that the executed timeshare contract between Plaintiff and Defendant is a void or voidable contract.

2)   Enter an Order finding the aforementioned contract void or voidable as a matter of law and/or otherwise granting rescission and restitution in favor of Plaintiffs and recoupment of any and all moneys paid by Plaintiffs to date as a result of the acts, omissions, and violations of law of Defendant;

3)   Enter judgment in favor of Plaintiff against Defendants for any and all actual damages sustained by Plaintiff;

4)   Enter judgment in favor of Plaintiff against Defendant for any and all punitive damages for Defendant's intentional misconduct pursuant to Florida Statute § 768.72 (2), and/or any other applicable statute, law and/or rule;

5)   Enter judgment in favor of Plaintiff against Defendant to pay reasonable attorneys' fees and costs pursuant to Florida Statutes § 721.21, and/or any other applicable statute, law and/or rule

6)   Enter judgment in favor of Plaintiff against Defendant to pay reasonable attorneys' fees and cost pursuant to Florida Statutes § 501.2105, Fla. Stat.

7)   Enter judgment awarding to Plaintiff all pre-judgment and post judgment interest allowed by law; and

8)   Enter and award for any and all other relief this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Demands Trial by Jury of all Issues so Triable as matter of right by a jury.

Respectfully Submitted,

33

THE TIMESHARE LAW FIRM, PLLC

*/s/* Tyler Stiglich

Tyler Stiglich, Esq.
Florida Bar No. 0119969
The Timeshare Law Firm, PLLC
3270 HWY A1A
Melbourne Beach, FL  32951
321-224-1111
info@thetimesharelawfirm.com
litigation@thetimesharelawfirm.com
*Attorneys for Plaintiffs*

# <u>EXHIBIT A</u>

.

NOT A CERTIFIED COPY

**Closing Settlement Statement**

| | |
|---|---|
| **Name and Address of Seller:**<br>Cibola Vista Resort & Spa, LLC. c/o Bluegreen Vacations Unlimited, Inc.<br>4960 Conference Way N., Ste. 100<br>Boca Raton, FL 33431 | **Name of Buyer:**<br>DIAMOND A WHITE |
| **Contract Settlement Date:** April 22, 2019 | **Buyer Address:**<br>6602 29th Ave, Upper<br>Kenosha WI 53143 United States of America |
| **Contract Number:** 2622656 | **Buyer Phone:** 847 513 2431 |

**Property: CIBOLA VISTA RESORT & SPA, 27501 N. LAKE PLEASANT ROAD, PEORIA AZ 85383**

Time-Share(s) consisting of: Time-Share Unit No. / Unit Week or Time-Share Period No. [together with "F" (Annual Time-Share) or "E" or "O" (Biennial Time-Share/Even or Odd)]:  **4323L/17E**

| Buyer(s) Column | | Seller(s) Column | |
|---|---|---|---|
| 1a. Purchase Price | $9,300.00 | 1b. Purchase Price | $9,300.00 |
| 2a. Down-payment | $ 9,300.00 | 2b. Down-payment | $ 9,300.00 |
| 2c. Administrative Processing fee to Seller | $ 430.00 | 2d. Administrative Processing fee from Buyer | $ 430.00 |
| 3a. Balance | $9,730.00 | 3b. Balance | $9,730.00 |
| 4a. Expenses | | 4b. Expenses | |
| 5a.  State and local sales tax | $0.00 | 5b.  Settlement Closing fees to Resort Title Agency | $410.00 |
| 6a.  Recording Fees | | 6b.  Recording Fees | |
| 7a.  Title Insurance | | 7b.  Title Insurance | |
| 8a.  Attorney Fees | | 8b.  Attorney Fees | |
| 9a.  Title Search | | 9b.  Title Search | |
| 10a. | | 10b. | |
| 20a. Total Expenses | $0.00 | 20b. Total Expenses | $410.00 |
| 21a. Gross Amount Due from Buyer | $9,730.00 | 21b. Gross Amount Due to Seller | $9,320.00 |
| 22a. Other Adjustments | | 22b. Other Adjustments | |
| 23a. County Tax Pro-ration | | 23b. County Tax Pro-ration | |
| 24a. City Tax Pro-ration | | 24b. County Tax Pro-ration | |
| 25a. Special Assessment Pro-ration | | 25b. Special Assessment Pro-ration | |
| 26a. | | 26b. | |
| 30a. Total Adjustments | | 30b. Total Adjustments | |
| 31a. Balance Due from Buyer | $9,730.00 | 31b. Balance Due to Seller | |
| 32a. Total Due from  Buyer(s) | $9,730.00 | 32b. Total Due to/from Seller(s) | $9,320.00 |

I/We certify that the contents hereof are true and correct.
Buyer(s)::

DIAMOND A WHITE

**DATE:** April 22, 2019

IOTA A CERTIFIED COPY

Form **W-9**
(Rev. August 2013)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give Form to the
requester. Do not
send to the IRS.

Name (as shown on your income tax return)
**DIAMOND A WHITE**

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

☑ Individual/sole proprietor  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust / Estate

☐ Limited Liability company. Enter the tax classification (C= C corporation, S=S corporation, P=partnership) ▶ ____

☐ Other (see instructions) ▶

Exemptions (see instructions):

Exempt payee code (if any) _____

Exemption from FATCA reporting
code (if any) _____

Address (number, street, and apt. or suite no.)
**6602 29TH AVE, UPPER**

Requester's name and address (optional)

City, state, and ZIP code
**KENOSHA, WI 53143**

List account number(s) here (optional)

*Print or type*
*See Specific Instructions on page 2.*

---

**Part I**    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

**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**

Employer Identification Number

---

**Part II**    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below), and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

Sign Here

Signature of
U.S. person: 

Date: 04/22/2019

---

### General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** The IRS has created a page on IRS.gov for information about Form W-9, at *www.irs.gov/w9*. Information about any future developments affecting Form W-9 (such as legislation enacted after we release it) will be posted on that page.

### Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, payments made to you in settlement of payment card and third party network transactions, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the

withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct.

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United
States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

## ENHANCED/TRAVELER PLUS™ MEMBERSHIP ENROLLMENT AGREEMENT

This Bluegreen Vacations Unlimited, Inc. Enhanced/Traveler Plus™ Membership Enrollment Agreement (hereinafter referred to as the "Agreement") is made and entered into on this **22 day of April, 2019** by and between Bluegreen Vacations Unlimited, Inc., a Florida corporation (hereinafter referred to as "**Bluegreen**"), whose address is 4960 Conference Way North, Suite 100, Boca Raton, Florida 33431 and **DIAMOND A WHITE** (hereinafter "**Owner**"), whose address is 6602 29TH AVE, UPPER, KENOSHA, WI 53143  UNITED STATES OF AMERICA.

Home Phone: **847 513 2431**          Work Phone:          E-mail: **diamond.a.white.87@gmail.com**

TERMS AND CONDITIONS OF ENROLLMENT

1. **Program Administrator.** Bluegreen Vacations Unlimited, Inc., a Florida corporation ("Bluegreen"), administers the Enhanced/Traveler Plus™ Membership program ("Program"). Bluegreen's address is 4960 Conference Way North, suite 100, Boca Raton, Florida 33431.

2. **Enrollment.** Owner's enrollment in and access to the benefits and services of the Program shall commence on the "Effective Date". The Effective Date is the first day of the month immediately following the date set forth above and enrollment shall continue for twelve (12) months thereafter (the "Term"). Owner must be in compliance with all of Owner's Owner Beneficiary Obligations (as defined in the Bluegreen Vacation Club Multi-Site Public Offering Statement), including without limitation, current payment of all Common Assessment Fees and Club Dues owed relating to their Owner Beneficiary Rights, to utilize the Program's benefits and services.

3. **Enrollment Fee and First Year Dues.** Bluegreen may, in its sole discretion, waive such enrollment fee and dues for certain purchasers. Thereafter, annual dues are currently estimated to be $59.00 (plus applicable taxes) per year. If you elect Pre-Authorized Checking/Credit Card Withdrawal ("PAC") as your method of payment, your Annual Dues will be reduced by $10.00.

4. **Voluntary Continuation of Enrollment after Expiration of Term.** After expiration of the Term, Owner may voluntarily continue enrollment in the Program for additional twelve (12) month periods (any such additional period is an "Additional Term") by payment to Bluegreen of the then current annual dues, currently estimated to be $59.00 (plus applicable taxes) for each Additional Term (the "Continuation Fee"). So long as Bluegreen continues to offer the Program and Owners membership in the Program has not lapsed more than 12 months, Bluegreen will provide Owner with notice and a statement for an upcoming Additional Term at least ten (10) days prior to the transfer of funds if the amount of the dues is greater than the prior year's dues. If the dues do not increase, owner will not receive notice. If Bluegreen does not receive the Continuation Fee from Owner due to inability to process an automatic payment as provided on the Membership Application, Bluegreen shall send owner written notice. If within thirty (30) days from the date of the notice of non-payment Bluegreen does not receive payment in full, then such may result in termination of enrollment in the Program. Payment of a Re-Instatement Fee (in an amount equal to the then current enrollment fee), in addition to the Continuation Fee, may then be required to continue enrollment in the Program. Owner's continued enrollment in the Program during any Additional Term(s) shall be governed by the terms and conditions contained herein.

5. **Enhanced/Traveler Plus™ Program Membership Benefits.** The Enhanced/Traveler Plus Membership Program entitles all Owner Beneficiaries who acquired their Owner Beneficiary Rights from Bluegreen and are in compliance with their Owner Beneficiary Obligations, inclusive of being current in their payment of all Common Assessment Fees and Club Dues owed relating to their Owner Beneficiary Rights, with the Enhanced/Travel Plus Benefits of Membership in the Bluegreen VIP Program. The Enhanced/Traveler Plus benefits and services include the right to participate in the Enhanced/Traveler Plus Membership Program, which provides the right to (i) obtain Bluegreen Traveler Plus Network Reservations and access to an unlimited number of wholesale-priced resort vacations and cruises; (ii) receive discounts at hotels; restaurants; golf courses; and other retail, service, recreation and leisure establishments; (iii) use Vacation Points to obtain services and benefits other than Accommodations within the Trust Estate, such as a hotel accommodations, cruises, vacation tour packages/experiential vacations, and other travel related products and services; (iv) rent Vacation Points from Bluegreen on a non-recurring basis; (v) membership in the Grand Yacht Club Program; (vi) access to exclusive experiential travel opportunities via Outdoor Traveler Experiences; (vii) participation in the Select Connections exchange program; (viii) receive 24 hour access to the Enhanced/Travel Plus website (www.bluegreenonline.com) for all travel needs; and (ix) receive such other related services and benefits as may be offered within the Bluegreen Enhanced/Traveler Plus Program from time to time. Each of the foregoing Enhanced/Traveler Plus benefits and services are subject to availability, may be changed from time to time, and Bluegreen provides no guaranty or assurance that any specific benefit or service will be available.

6. **Benefit Providers.** Certain Program benefits are provided by independent third party providers that are not partners or affiliated with Bluegreen or any of its affiliates. Choice Hotel International, Inc. is such a third party provider, and is not partner, joint venturer or affiliate of Bluegreen or any of its affiliates and any inferences to the contrary shall be expressly negated.

7. **Owner's Representations.** Owner represents that (i) he/she is of legal age and capacity to participate in and to use the benefits and privileges of the Program, (ii) enrollment in the Program is solely for personal enjoyment and consumption and not for resale or profit, (iii) no aspect of the Program has been represented to Owner as an investment opportunity, and (iv) no representations have been made concerning rentals, rental pools, returns, tax advantages, depreciation or investment potential.

8. **Bluegreen Vacations Unlimited, Inc.** Bluegreen Vacations Unlimited, Inc., a Florida corporation, administers the Program. Bluegreen Vacations Unlimited, Inc. is registered with the State of Florida as a Seller of Travel. Registration No. ST36225. Bluegreen Vacations Unlimited, Inc.'s address is 4960 Conference Way North, Suite 100, Boca Raton, Florida 33431. Owner's participation in the Program is subject to the Terms and Conditions Relating to Participants Enhanced/Traveler Plus, separately provided to Owners, and incorporated herein by reference.

9. **Oral Representations.** This instrument, along with any documents referred to herein, are the only instruments relative to the subject matter herein and no representations, oral or written, may otherwise be relied upon.

10. **Assignment.** The benefits, services, privileges or obligations of enrollment in the Program are personal to Owner and are not assignable or transferable, in whole or in part, by Owner. Bluegreen may assign all or any part of its right, title and interest under the Program to a third party determined by Bluegreen, including, without limitation, the right of assignment to an alternative supplier of the benefits, services, and privileges to be provided hereunder; provided that no such assignment shall materially and adversely affect any rights of Owner to receive the benefits and privileges of the Program. Upon assignment to a third party, Bluegreen shall be released from all duties, claims, demands, or causes of action arising from or relating to the Program occurring after the date of assignment.

11. **Applicable Law.** This Agreement shall be interpreted in accordance with the laws of the State of Florida. Any terms not defined herein shall be defined in the Multi-Site Public Offering Statement.

**IN WITNESS WHEREOF, this Enrollment Agreement has been executed as of the above date.**

**BLUEGREEN VACATIONS UNLIMITED, INC.**          **OWNER(S):**

By: _____          _____
Authorized Representative                              DIAMOND A WHITE

# bluegreen vacations®

## MEMBERSHIP APPLICATION

Congratulations on joining Bluegreen Vacation Club® with the opportunity to enjoy a complimentary 1-year membership in the Bluegreen Enhanced/Traveler Plus Membership Program. With the Program, you'll have unlimited access to a full service travel agency, access to a diverse variety of travel experiences designed to enhance your vacation opportunities and discounts that can be used every day or while on vacation. Your initiation fee has been waived and your membership dues have been paid for the first year. To provide uninterrupted membership in this exciting program, including the ability to use your Bluegreen Vacation Points for Resort accommodations, cruising and other members-only benefits, we ask you to pre-authorize automatic payment of your subsequent year's membership dues for the Program. Annual Dues are currently estimated to be $59* (plus any applicable taxes) and may be transferred either from your savings/checking account or credit / bank card account. If the amount of the Annual Dues increases from the amount of the prior year's Annual Dues, you will receive notice at least ten (10) days prior to transfer of funds, alerting you to the expiration of your membership and the automatic payment of Annual Dues owed as outlined below. If the Annual Dues do not increase, you will not receive prior notice of the automatic payment of dues. If, for any reason, you would like to cancel your Program benefits, you may do so by sending a written request to the Traveler Plus Special Services Manager, 4960 Conference Way North, Suite 100, Boca Raton FL 33431, at least thirty (30) days before your renewal date. Please note you may incur a reinstatement fee should you let your membership lapse. Reinstatement is available within 12 months of the membership lapse date.

Resort Submitted By: **CHRISTMAS MOUNTAIN VILLAGE**
Contract Number: **2622656**
Member(s):                                                      Date: **April 22, 2019**
    **DIAMOND A WHITE**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Home Address | **6602 29TH AVE** | | | | | | |
| | **UPPER** | | | | | | |
| Suite/Apt. # | | | | | | | |
| City | **KENOSHA** | State | **WI** | Zip | **53143** | Country | **UNITED STATES OF AMERICA** |

☒ **1-Year Complimentary Membership in Bluegreen Traveler Plus**

If you elect Pre-Authorized Checking/Credit Card Withdrawal ("PAC") as your method of payment your Annual Dues will be reduced by $10.00.

**Step 1:**    **Method of Payment (please check preferred form of payment)**

☒    Automatic Credit Card Payment

By indicating Automatic Credit Card Payment and signing below, I (we) hereby pre-authorize Bluegreen Vacations Unlimited, Inc. or its designee to initiate debit entries to my (our) credit card account indicated below in Step 3, to pay membership dues associated with the Enhanced/Traveler Plus Membership Program.

This authority is to remain in full force and effect until Bluegreen Vacations Unlimited, Inc., has received written notification from me (or either of us) of its termination in such time and in such manner as to afford Bluegreen Vacations Unlimited, Inc. a reasonable opportunity to act on it.

☐    Pre-Authorized Checking Withdrawal (PAC) From Bank Account (☐ Checking or ☐ Savings)

By indicating Pre-Authorized Checking Withdrawal and signing below, I (we) hereby pre-authorize Bluegreen Vacations Unlimited, Inc., or its designee, to initiate electronic funds transfers from my (our) checking/ savings account, as indicated in Step 3, and Depository, named below in Step 3, to transfer the same from such account to Bluegreen Vacations Unlimited, Inc., or its designees, to pay membership dues associated with the Enhanced/Traveler Plus Membership Program.

This authority is to remain in full force and effect until Bluegreen Vacations Unlimited, Inc. has received written notification from me (or either of us) of its termination in such time and in such manner as to afford Bluegreen Vacations Unlimited, Inc. a reasonable opportunity to act on it.

**Step 2:**    **Depository and Credit / Bank Card Information For Automatic Payment Processing**

DEPOSITORY (please attach a voided check)        CREDIT /BANK CARD

Bank Name: _____

Branch: _____

City: _____

State: _____ Zip: _____

Transit / ABA Number: _____

Account Number: _____

☐ American Express    ☐ Discover Card
☒ MasterCard       ☐ Visa
Account Number: XXXX 4324
Expiration Date (mm/yy): 04/24
Name on credit/bank card: Diamond A White

> **IF YOU ARE USING YOUR BANK FOR AUTOMATIC PAYMENT PLEASE TAPE A VOIDED CHECK TO THIS AREA (DO NOT USE STAPLES)**
>
> If mailing Membership Application post-purchase, send to the Special Services Manager, 4960 Conference Way North, Suite 100, Boca Raton, Florida 33431

Subsequent years' fees may or may not increase. **You may always decline to participate by sending written notice to the address written above.** If you elect Pre-Authorized Checking/Credit Card Withdrawal ("PAC") as your method of payment your Annual Dues will be reduced by $10.00.

## AUTHORIZATION AND SIGNATURE(S) FOLLOWED ON THE NEXT PAGE

NOT A CERTIFIED COPY

BG Traveler Plus Member Application
Rev. 08/2017

2622656/WHITE

AUTOMATIC PAYMENT INFORMATION ON PAGE 1

<u>Step 3:</u>       <u>Authorization</u>

Pre-authorization for automatic payment.  Please print names of Depositor, as shown on bank or credit company records.

Name (s) __DIAMOND A WHITE__          Signature_____          04/22/2019



# Quorum

This credit union is federally insured by the National Credit Union Administration (NCUA).

As a vacation interest owner you are eligible for membership at Quorum Federal Credit Union (Quorum FCU or the Credit Union) through the American Consumer Council (ACC). The ACC is a not-for-profit, consumer advocacy association and Quorum FCU offers a wide range of financial products and services to its members. This form allows you to apply for membership to both Quorum FCU and the American Consumer Council.

**PRIMARY MEMBER INFO**

| FULL NAME (first, middle, last)<br>Diamond A White | | SOCIAL SECURITY OR TAX IDENTIFICATION #<br>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 | BIRTHDATE<br>(mm/dd/yy)<br>04/13/1987 |
|---|---|---|---|
| STREET ADDRESS (permanent residence address; no P.O. Box #)<br>6602 29th Ave, Upper | CITY, STATE & ZIP<br>Kenosha, WI 53143 | | COUNTRY<br>United States of America |
| MAILING ADDRESS (if different from above)<br>8651 22nd Ave | CITY, STATE & ZIP<br>Kenosha, WI 53143 | | COUNTRY<br>United States of America |
| EVENING PHONE<br>847 513 2431 | DAYTIME PHONE | | CELL PHONE<br>847 513 2431 |
| E-MAIL ADDRESS<br>diamond.a.white.87@gmail.com | | | |

**DISCLOSURES AND AGREEMENTS**

**USA Patriot Act:** Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other ID.

**Membership Application Agreement:** I hereby apply for membership to Quorum FCU, agree to conform to its bylaws and amendments thereto and subscribe for at least one share. By signing this form, I agree to be bound by the terms of agreement for all services, now and in the future, including the Online Services/Mobile Banking Disclosures, and to the conditions stated within the Truth-In-Savings Disclosure, which has been or will be supplied to me and is also available online at quorumfcu.org/Bluegreen.

**Electronic Statements and Notices:** I affirmatively consent and agree to permit the Credit Union to provide disclosures, statements and notices in electronic form instead of written form. Notices include but are not limited to: Insufficient Funds (NSF), Overdraft, Courtesy Pay, Negative Balance, Tax Notice or Term Account Maturity Notice. Statements will be maintained on a site that can be accessed to obtain, review, print and otherwise copy/download periodic statements and other notices. Statements and Notices are not available through Online Banking indefinitely. I understand I can request statement copies if necessary for the applicable fee (refer to the Credit Union Fee Schedule).

**Consumer Reports:** I authorize the Credit Union to obtain consumer reports, verify employment information and/or furnish information concerning my consumer affairs in connection with any application, update, renewal or extension of credit, or closure of accounts. A "consumer report" may contain information about my personal and credit characteristics and general reputation. If I request, the Credit Union will tell me the name and address of any consumer reporting agency from which it received a consumer report on me. I understand that it is a federal crime to willfully and deliberately provide incomplete or incorrect information on any applications made to federal credit unions insured by the NCUA. I understand that a Credit Union representative may inform me at the time I open my account or after regarding my eligibility for pre-approved credit. I may consent to any pre-approved credit verbally at a Credit Union location or over the phone.

**VoiceConnect (Automated Telephone Service) Agreement:** I request access to VoiceConnect so that I can make inquiries and perform applicable transactions on my account.

**Important:** By signing this application, I certify that I am an owner or borrower on each deposit or loan account that can be accessed using the Authorization Code generated for me; and agree that, if I use the Authorization Code number to access accounts through VoiceConnect, I will be bound by all of the terms and conditions of the IVR Service Agreement and Disclosure Statement within the Truth-In-Savings Disclosure.

**Security Interest:** I grant the Credit Union a security interest and/or right of offset in all individual or joint accounts I have with the Credit Union both now and in the future unless the funds have a statutory protection or are otherwise protected by law.

**My signature** confirms that I have read and understand the disclosure above and that all the information I have supplied on this application is valid and may be verified by the Credit Union.

By submitting this application I certify under penalties of perjury: (1) the Social Security Number or Tax Identification Number on my application is correct; (2) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding due to failure to report interest or dividend income, or the IRS has notified me that I am no longer subject to backup withholding; (3) I am a US person (including a US resident alien). If I am a non-resident alien, I agree to complete a W-8BEN form or be subject to backup withholding. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

I understand that: (1) I am eligible for Quorum FCU membership through the American Consumer Council; (2) my American Consumer Council and Quorum FCU memberships will become active either (a) if/when the Credit Union approves my account and finances my vacation ownership loan (if any) or (b) I directly apply for membership with Quorum FCU online at quorumfcu.org/Bluegreen; 3) I must qualify for membership to the Credit Union; (4) membership to the Credit Union is required if it finances my loan. If I become a member of Quorum FCU due to the direct financing of my vacation ownership loan, Quorum will deposit the $5 minimum required balance into my account. Note: A new membership will not be opened if any borrower is already a primary member at Quorum.

| PRIMARY MEMBER SIGNATURE | DATE<br>04/22/2019 |
|---|---|
| CITIZENSHIP<br>☑ US CITIZEN    ☐ RESIDENT ALIEN    ☐ NON-RESIDENT ALIEN | |

BLUEGREEN OWNER BENEFICIARY AGREEMENT
BLUEGREEN VACATION CLUB
[CHRISTMAS MOUNTAIN VILLAGE SELLING CIBOLA VISTA RESORT & SPA INVENTORY]

MULTI-SITE TIMESHARE PLAN: BLUEGREEN VACATION CLUB
FACILITATOR: CIBOLA VISTA RESORT & SPA L.L.C.
15150 N. HAYDEN ROAD, SUITE 210, SCOTTSDALE, ARIZONA 85260
CLUB DEVELOPER: BLUEGREEN VACATIONS UNLIMITED, INC.
4960 CONFERENCE WAY N, STE 100, BOCA RATON, FLORIDA 33431-3311

Contract Reference #: **2622656**

Purchaser(s)   **DIAMOND A WHITE**                    Social Security No.    **xxx-xx-6457**

Street Address **6602 29TH AVE , UPPER**      Phone(Home) **847 513 2431**      Phone(Bus)
City            **KENOSHA**                   State **WI**          Zip **53143**    Country **UNITED STATES OF AMERICA**

Facilitator (being the owner and seller of the Property), together with Club Developer, agree to sell, and the Purchaser agrees to purchase a timeshare estate, being the Property described below. The Property shall be acquired and accepted by the Purchaser upon the following terms and conditions and, in connection therewith, Club Developer shall designate Purchaser as an Owner Beneficiary and allocate Vacation Points to Purchaser as set out below. By execution of this Bluegreen Owner Beneficiary Agreement, Purchaser voluntarily appoints and designates the Trustee as his/her lawful agent to be delivered the deed or other instrument to the Property described below.

By execution hereof, Purchaser is designated an Owner Beneficiary under the Bluegreen Vacation Club Trust Agreement, which was made and entered into as of the 18th day of May 1994, as amended and restated, by and between Club Developer and Vacation Trust, Inc., a Florida corporation, as Trustee (the "Trust Agreement"). Each Owner Beneficiary is entitled to exercise Owner Beneficiary Rights. Owner Beneficiary Rights include as an appurtenance thereto an allocation of the below-described Vacation Points and the right to be conveyed, subject to the terms of the Trust Agreement, the below-described Property upon termination of the Trust Agreement. The Vacation Points represent the opportunity to use and enjoy Accommodations and Facilities subject to the Trust Agreement and have been determined in relation to current occupancy demand for the below described Property.

**The Property is defined as:**

Resort or Project Name: **CIBOLA VISTA RESORT & SPA**   Resort Address:   **27501 N. LAKE PLEASANT ROAD, PEORIA, AZ 85383**

Time-Share(s) consisting of: Time-Share Unit No. / Unit Week or Time-Share Period No. [together with "F" (Annual Time-Share) or "E" or "O" (Biennial Time-Share/Even or Odd)]:    **4323L/17E**

The Time-Share, above set forth, and the Vacation Points associated therewith, are either designated as Annual (by use of the letter "F", indicating a full Timeshare Interest) or Biennial (by use of the letter "E" or "O", indicating Even Numbered or Odd Numbered Years and one half of a Timeshare Interest). An Annual Time-Share with Annual Vacation Points means the period of time during which the owner thereof is afforded the opportunity to use the Accommodations of the Plan on an annual recurring basis. A Biennial Time-Share with Biennial Vacation Points means the period of time during which the owner thereof is afforded the opportunity to use the Accommodations of the timeshare Plan on a biennial recurring basis. A Time-Share created initially as an Annual Time-Share or a Biennial Time-Share shall remain so. For purposes of this Agreement, the following definitions shall be controlling:

"Biennial" means every other year and the same shall be determinative on a calendar year basis, except as otherwise provided herein.
"Odd Numbered Years" means those years ending in 1, 3, 5, 7 or 9 and the same shall be determinative on a calendar year basis.
"Even Numbered Years" means those years ending in 2, 4, 6, 8 or 0 and the same shall be determinative on a calendar year basis.

The number of Vacation Points allocated to the Property and the Owner Beneficiary Rights and the designation as "F," "E" or "O" as described below is: **6,000 E.**

Allocated Vacation Points are used to determine occupancy of Accommodations and Facilities during an Owner's Use Year, although no additional consideration is paid for occupancy allowed by Vacation Points allocated to a respective Owner Beneficiary. The Owner's Use Year commences the first day of the month following execution of this Agreement by Purchaser and Club Developer, terminates upon expiration of twelve (12) months following such commencement, and recurs for each succeeding twelve (12) months thereafter. Biennial Vacation Points allow occupancy and use of accommodations only during alternate Owner Use Years, beginning with the initial Owner Use Year following the purchase of the Property, except as otherwise provided herein. Such uses are also subject to provisions for saving and borrowing of Vacation Points, as explained elsewhere herein.

Purchaser shall be obligated to pay Common Assessment Fees and Club Dues in accordance with Part E of the Trust Fund Budget as set forth in Paragraph 4 hereof.

FBS Owner Beneficiary Agreement (OBA) -  Vacation Club
Rev. 11/2018
Agreement drafted by Bluegreen Vacations Unlimited, Inc., Legal Department
4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.
2622656/WHITE                                                        CM04/22/2019

**FBS Cibola Vista Facilitator Contract**

- As specifically required by subpoena or court order or in order to comply with Federal, state, and local laws and regulations; and
- To attorneys, accountants, and auditors when necessary to effect, administer, or enforce your account, or in the case of the proposed or actual sale, merger, transfer or exchange of all or part of the company.

If you prefer that we not disclose nonpublic personal information about you to nonaffiliated third parties (other than as permitted by law), you may opt out of those disclosures, that is, you may direct us not to make those disclosures (other than disclosures permitted by law). If you wish to opt out of disclosures to nonaffiliated third parties (other than disclosures permitted by law), you may do so by (a) completing the opt out form below and returning it to your sales person during or following the timeshare interest sales presentation; or (b) by completing the opt out form below and returning it to us by mail to the address shown on the opt out form.

### Confidentiality and Security

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you or to nonaffiliated companies governed by confidentiality agreements. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

### Privacy Opt Out Form

To:  Cibola Vista Resort & Spa, L.L.C. and its affiliates

Please do not disclose nonpublic personal information about me/us to nonaffiliated third parties other than disclosures permitted by law.

Name (print): _____     Name (print): _____

Address: _____

City: _____     State: _____     Zip: _____

Phone: (_____) _____ - _____

Complete this form and give it to your sales person during or at the conclusion of the sales presentation or complete this form and mail it to the address below:

CIBOLA VISTA RESORT & SPA, L.L.C.
15150 N Hayden Road
Suite 210
Scottsdale, AZ  85260

1.  It will take approximately 30 - 45 days from the time you complete your down payment for your new ownership to be entered into the Bluegreen Vacation Club system and the exchange company system. Currently, you do not have a confirmed reservation with either system and accommodations at certain resorts may not be available within the initial 12 months of your ownership. You can make a reservation of Club Accommodations no more than 11 months to as little as 48 hours in advance of the date you wish to travel. Additional information is in the Bluegreen Vacation Club owner kit. Use of all accommodations is based on space availability and reservations are not guaranteed until confirmed.



2.  All **6,000** of your Vacation Points will be deposited every other year into your account. The deposit date will be the first day of the month following your original purchase date also known as your anniversary date. You may use all of your points the first year. Alternatively, 50% of your points (**3,000**) will be available for use in the second year without any seasonal restrictions. Any Points over the 50% may be saved into the second year by paying an administrative fee of $60 by phone or $50 online before the end of your Use Year. Saved Points are subject to seasonal use restrictions. The Saved Points policy is subject to change. All Points expire at the end of the second year. A new set of Vacation Points will be deposited in to your account every other year. You can allow family and friends to use your Points.



3.  Each accommodation in the Club is assigned nightly and weekly point values as indicated in the vacation point schedules in the Bluegreen Vacation Club Public Offering Statement. These values vary depending on the day of the week, size of the unit, resort location and season. Some resorts require a minimum seven-night stay.



4.  'Bonus Time', a reservation without using vacation points, can be reserved for accommodations as much as 45 days or as few as 2 days in advance. Bonus Time may not be offered at all component sites and accommodations are subject to space availability. A two-night minimum fee is required for Bonus Time use and is only available for use by the Club owner, although guests may accompany the owner. Rates for Bonus Time use currently range from $59 to $399 per night depending on the resort, unit type and if booked telephonically or online.



5.  To vacation outside of the Club through the exchange company, you will contact RCI. RCI is a separate company from Bluegreen and exchanges are available in nightly and weekly increments with fees associated with each transaction. Saved points can be used for stays within 180 days of confirmed check-in date. In order to have access to the RCI Nightly program, you must be a current member of Traveler Plus.



6.  You understand that a.) membership in Traveler Plus is optional and may be renewed yearly, certain restrictions apply; b.) additional fees are required to use the benefits and services of Traveler Plus; c.) all benefits and services of Traveler Plus are subject to availability and may be changed from time to time and you are not purchasing based upon the continued availability of Traveler Plus.



7.  Except for service animals, pets are not permitted at any Bluegreen resorts, or at most exchange company resorts.



8.  You are obligated to pay a prorated Maintenance Fee and Club Dues in connection with your purchase. Maintenance Fees are calculated based on the number of vacation points allocated to your purchase. Maintenance Fees and Club Dues will be billed annually one month prior to your Owner Use Year. Both of these fees must both be current in order to reserve and use Club Accommodations. You have taken into account both of these fees when making the decision to purchase.



9.  Initial (a) or (b), **not both**

    (a) You understand that you have elected pre-authorized checking (PAC/ Auto Withdraw) and that your payment (s) will be automatically withdrawn from an account specified by you. The first withdrawal will be on or within 15 days after the first due date.

    **N/A**

    (b) You understand that you have NOT elected pre-authorized checking (PAC/ Auto Withdraw). You will send your payment (s) to: Bluegreen Vacations Corp/Cibola Vista, P.O. Box 415798, Boston, MA 02241-5798. You were given a temporary coupon to include with your first payment.




10. You can pay off your mortgage without interest or loan payoff processing fee as long as the payoff funds are received within thirty (30) days following receipt of your full down payment. To utilize this option  you will use the 30 day same as cash payment coupon provided or call Mortgage Research at 800-330-1367. Credit cards can only be used for pay off within thirty (30) days following receipt of your full down payment.



credit card will bear a monthly payment and will begin accruing interest after the promotional period has ended. The income you listed on the application is the income which you are comfortable using to make the monthly payment.

12. You have indicated that you can afford to make all payments connected with this purchase and that this purchase will not pose an undue financial burden for your family. If you made a previous Vacation Club purchase, all payment obligations for that purchase are independent and will continue.

13. You understand that you have been given, among other documents, an executed Owner Beneficiary Agreement and a Bluegreen Vacation Club Public Offering Statement, which together contain all of the conditions of this purchase. Salespersons are not authorized to make oral representations, promises, or offers that modify such documents. Your purchase is for personal use and enjoyment only. Please list promises or commitments, if any, that were important to your decision to purchase that have not been covered in writing. (If none, indicate 'None').

_None_.

14. Your purchase is for personal use and enjoyment only. You understand that you may not reserve or use the Accommodations of any Component Site of the Bluegreen Vacation Club or use your membership or your Vacation Points for any commercial purpose whatsoever. You are not making this purchase as a financial investment or with an intent or expectation of receiving a financial return on an investment or with an expectation of profit or income from any commercial activity whatsoever including resale or commercial rental; such activity is strictly forbidden. You may one day choose to sell your Bluegreen Vacation Club ownership interest. At that time, certain benefits including but not limited to; Bonus time, Traveler Plus, and the opportunity to qualify for the Bluegreen Premier Program may not be transferred or assigned unless a Bluegreen authorized agent is used for that transaction. No one is authorized to guarantee that Bluegreen Vacations Unlimited, Inc. or any of its affiliated companies will repurchase, rent or resell your timeshare interest, or that you will be able to locate potential renters or purchasers.

15. For a fee, you may add or change the names in which you hold Bluegreen ownership; however, the original owner names may not be removed from the account, or other names added, if there is an outstanding mortgage or any unpaid balance due on the account.

16. The reason for my purchase is

_quality time w/ family_

Owner: _____  Witness: _____
DIAMOND A WHITE

**PURCHASE TERMS**

| | | |
|---|---|---:|
| 1. | Purchase Price of Property payable by Purchaser. | $9,300.00 |
| 2. | Down Payment (**100.00%** of Line 1). | $ 9,300.00 |
| 3. | Administrative Processing Fee. | $ 430.00 |
| 4. | State/Local Sales Tax (**0.0000000** of Line 1). | $ 0.00 |
| 5. | Total Due from Purchaser (U.S. Funds) (Add lines 1, 3, and 4). | $ 9,730.00 |
| 6. | Total Deposit (Add lines 2, 3, and 4). | $ 9,730.00 |
| 7. | Initial Deposit Received **$ 9,730.00** (CK, MO, MC/VISA, AMEX, DISC). | $ 9,730.00 |
| 8. | Balance of Deposit Required on or before **N/A**. | $ 0.00 |

9. Amount Financed  **N/A**  for  **N/A**  months at  **N/A**  (Line 1 minus line 2).

10. Monthly Payments of:  **N/A**  beginning on  **N/A** .

Seller pays all Closing Costs including Recording Fees, Transfer Tax, Title Search, Title Insurance, Settlement Fee and other fees related to transfer of the Property to Trustee.

Purchaser agrees to have **Resort Title Agency, Inc. or its underwriter.** issue lender's title insurance policy:

Pre-Authorized Check Plan Accepted (Initial if "Yes"):                            **N/A**

I have reviewed and agree to the **Purchase Terms** above:

### REQUIRED DISCLOSURES AND SIGNATURES ON THE NEXT PAGE

NOT A CERTIFIED COPY

FBS Owner Beneficiary Agreement (OBA) – Vacation Club
Rev. 11/2018
Agreement drafted by Bluegreen Vacations Unlimited, Inc., Legal Department
4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.
2622656/WHITE                                                                                    CM04/22/2019

**FBS Cibola Vista Facilitator Contract**

1.   **TRUST AGREEMENT.**  The Bluegreen Vacation Club multi-site ownership plan has been established pursuant to the Trust Agreement (timeshare instrument) and related documents.  Vacation Trust, Inc., a Florida corporation, currently acts as the Trustee of the Trust Agreement.  The address of Vacation Trust, Inc. is 4950 Communication Avenue, Suite 900, Boca Raton, FL 33431.  Each Purchaser pursuant to an Owner Beneficiary Agreement is designated as an Owner Beneficiary pursuant to the terms of the Trust Agreement.  The interest of each Owner Beneficiary under the Trust Agreement consists of and is identified as the right to performance by the Trustee of its obligations as set forth in the Trust Agreement.  Each Owner Beneficiary's right to performance by the Trustee includes the Trustee holding title or Occupancy Rights relating to the Accommodations and Facilities within the Bluegreen Vacation Club Trust Estate as agent for each Owner Beneficiary and for the beneficial use and enjoyment of each Owner Beneficiary and the right, subject to the terms of the Trust Agreement, to have the Property conveyed to the Owner Beneficiary named herein upon termination of the Trust Agreement.  The Owner Beneficiaries are entitled to use, occupy and enjoy the Property (including Occupancy Rights related to the Property) within the Bluegreen Vacation Club Trust Estate, subject to availability and to the terms of the Trust Agreement and related instruments.

(a)  The timeshare interest being sold and acquired hereunder consists of the Property described above and, in connection therewith, Purchaser is designated as an Owner Beneficiary entitled to the Owner Beneficiary Rights and appurtenant Vacation Points referred to above.  Owner Beneficiary Rights include the right to use, occupy and enjoy the Accommodations and Facilities within the Bluegreen Vacation Club Trust Estate coupled with the freehold estate conveyed to the Trustee by Facilitator on behalf of the Purchaser upon Purchaser becoming an Owner Beneficiary under the Trust Agreement.  Owner Beneficiary Rights are an interest in the Bluegreen Vacation Club Trust, which interest is defined as a "timeshare estate" under F.S. Ch. 721.  The duration of this timeshare interest is intended to be perpetual, so long as the Trust Agreement continues.  The term of the Vacation Plan is intended to be perpetual; provided, however, that the Resort Interests at each Component Site included within the Vacation Plan are fee simple property interests and either (1) continue until such time as indicated in the Component Site Underlying Declaration at which time the timeshare plans may be extended for one or more additional periods; or (2) are intended to be perpetual pursuant to the Component Site Underlying Declaration.  The Trust Agreement is irrevocable, so long as any Owner Beneficiary has a right to occupy any portion of the Trust Estate.  Upon termination of the Trust, the Trustee is obligated under the Trust Agreement and as part of the Owner Beneficiary Rights to convey the Property to Purchaser by quitclaim deed or other instrument if title to the Property is held by the Trustee, so long as Purchaser is not in default of his or her Owner Beneficiary Obligations.  Such transfer shall be subject to the rights of a holder of any outstanding loan or mortgage related to the Property created by the Purchaser and related to the Property to request conveyance of the Property to it.

(b)  The Property and other Accommodations and Facilities comprising the Trust Estate (and subject to the Trust Agreement) are owned in fee simple (or leasehold title, if within the Club Pono Kai Component Site Resort) by Club Developer, its affiliates, Facilitator or other third party facilitators at the time of Purchaser's execution hereof and are to be or have been conveyed to the Trustee by deed or other instrument from Club Developer, its affiliates, Facilitator or other third party facilitator.  The Trustee's obligation, pursuant to the Trust Agreement, is to make such Property and other Accommodations and Facilities within the Bluegreen Vacation Club Trust Estate available for the use, occupancy and enjoyment of the Owner Beneficiaries.  Purchaser, by the acquisition hereunder, shall be an Owner Beneficiary pursuant to the Trust Agreement.  Facilitator's interest in the Property is that Facilitator presently owns such.  Facilitator is not a developer of the Bluegreen Vacation Club Plan and is not involved in the management or operation of the Plan.  Facilitator is a party to this Agreement for the sole purpose of affecting a transfer of the Property to the Trustee for the benefit of the Purchaser.  Club Developer is entitled to designate Owner Beneficiary Rights with appurtenant Vacation Points to Purchasers pursuant to the terms of the Trust Agreement.  After conveyance of the Property to the Trustee as set forth herein, neither Club Developer nor Facilitator will have any actual interest, including any interest to control, the Accommodations or Facilities conveyed to the Trustee.  Prior to Facilitator issuing a deed or other instrument of the Property to the Trustee as agent for Purchaser, the Property (timeshare interest) shall be released from any lien as may exist encumbering the Property by payment of release fees to the lender thereof or by full satisfaction of said mortgage or lien instrument.  Upon such conveyance of the Property, Purchaser directs and authorizes Trustee, if the balance of the purchase price above referred to is not paid in full in cash or certified check, to establish a mortgage or other collateral security instrument against the Property in favor of Facilitator or a third party lender ("Lender") or their designees pursuant to the terms herein to secure the Purchaser's payment therefore.

2.   **DEPOSITS.**  The initial deposit or subsequent payments made pursuant to this Bluegreen Owner Agreement by Purchaser to Club Developer shall, prior to closing, be held in escrow pursuant to the provisions of Section 707.49, Wisconsin Statutes, with Stephen Chiquoine, Esq., E8366 South Ave., Reedsburg, WI 53959 ("Escrow Agent").  The Escrow Agent shall furnish Purchaser with a written receipt for the initial deposit and subsequent payments.  Escrow Funds held by the Escrow Agent may be invested in securities of the United States Government, or any agency thereof, or in savings of time deposits in institutions insured by an agency of the United States Government.  Club Developer shall retain the interest generated by any such investment.  All monetary amounts recited in this Agreement shall be paid in U.S. Funds.

3.   **THE PROPERTY.**  The Property is the Timeshare Interest at the Project identified above, which has been allotted a number of Vacation Points determinative of occupancy rights and equivalent to the Vacation Points set out hereinabove provided to Purchaser hereunder.  The Property is a Resort Interest under the Trust Agreement.  By execution hereof, Purchaser directs and authorizes conveyance of the Property to the Trustee.  For each Owner Beneficiary provided the Owner Beneficiary Rights and appurtenant Vacation Points from Club Developer, Club Developer shall convey to Trustee a Resort Interest or cause its affiliates, Facilitator or other third party facilitator to convey to Trustee a Resort Interest, which has been established as requiring for occupancy Vacation Points equivalent to the Vacation Points appurtenant to the Owner Beneficiary Rights of the respective Owner Beneficiary.  The Property and all other property conveyed to the Trustee pursuant to this Agreement and any other Bluegreen Owner Beneficiary Agreement is considered the Trust Estate and property available for personal use and occupancy by all Owner Beneficiaries, subject to the Trust Agreement and established reservation procedures.  The Property conveyed to the Trustee pursuant to this Agreement is intended to remain in title to the Trustee perpetually, subject to deletion rights as set forth hereinafter and as otherwise provided for in the Trust Agreement.  The Property is subject to the applicable Underlying Declaration identified in Exhibit 9 of the Bluegreen Vacation Club Public Offering Statement.

4.   **COMMON ASSESSMENT FEES AND CLUB DUES.**  Purchaser, as an Owner Beneficiary, agrees to pay Common Assessment Fees and Club Dues as set forth in the Bluegreen Vacation Club Public Offering Statement, Trust Agreement, the related documents, including the Club By-Laws, and this paragraph.  Purchaser, as an Owner Beneficiary, agrees to pay common expense assessments, as set forth in the Underlying Declaration related to the Property, to the extent they are not included in the Common Assessment Fees.  Such obligation to pay the foregoing amounts shall continue regardless of the conveyance of the Property to the Trustee.  Purchaser shall pay to the Vacation Club Managing Entity (as hereafter defined) such foregoing amounts related to the Property at the time that the same are due and payable.  Such obligation shall include the obligation to pay any special assessments related to the Property, as well as any real estate taxes attributable to the Property that are not otherwise included in the Common Assessment Fees.

The annual Common Assessment Fees, inclusive of ad valorem real estate taxes, currently payable by Purchaser acquiring Annual Vacation Points and an Annual Timeshare Interest hereunder shall equal a base amount of Three Hundred Sixty Dollars ($360.00) plus an added amount equal to $0.0613 times the number of Vacation Points appurtenant to the Owner Beneficiary Rights herein allocated to the Purchaser; provided, however, the Annual Common Assessment Fees, inclusive of taxes, currently payable by a Purchaser acquiring Biennial Vacation Points and a Biennial Timeshare Interest shall equal a base amount of Three Hundred Sixty Dollars ($360.00)  plus an added amount equal to

FBS Owner Beneficiary Agreement (OBA) - Vacation Club
Rev. 11/2018
Agreement drafted by Bluegreen Vacations Unlimited, Inc., Legal Department
4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.
2622656/WHITE                                                                                    CM04/22/2019

\$0.0307 times the number of Vacation Points appurtenant to the Owner Beneficiary Rights herein allocated to the Purchaser. Each Purchaser/Owner Beneficiary shall only be assessed the based upon only the proportionate share of the number of Vacation Points allocated to such Purchaser/Owner Beneficiary. The calculation of Common Assessment Fees is set forth in Part E to the Trust Fund Budget attached in Exhibit 8 of the Public Offering Statement and is calculated by comparison of the number of Vacation Points appurtenant to the Owner Beneficiary Rights allocated Purchaser as forth herein compared to the total number of Vacation Points allocated to all Owner Beneficiaries within Purchaser's respective Common Assessment Fee method group. This allocation may alter if additional or less Common Assessment Fees are needed because, for example, Component Site fees or taxes increase or decrease. Bluegreen Vacation Club, Inc. has the right, pursuant to the Club By-Laws, to increase or decrease such Common Assessment Fees from time to time.

In the event Purchaser is already an Owner Beneficiary at the time of execution of this Agreement, Purchaser agrees to have the Annual Common Assessment Fees determined in this same manner as to all of the Vacation Points allocated to Purchaser, whether allocated previously or hereunder. The Annual Common Assessment Fees are due annually on the first day of the respective Purchaser's Owner Use Year. Purchaser will be billed a few days after closing for the Annual Common Assessment Fees for the current year, and the month prior to the start of the Purchaser's Owner Use Year each year thereafter. If the foregoing Annual Common Assessment Fees are not paid when due, default interest plus a late fee may be charged by the Trustee, which default interest is 1.5% of the unpaid balance per month and which late fee shall be in an amount of 5% of the amount due or \$25.00, whichever is greater.

Purchaser understands and agrees that Purchaser shall be responsible for the payment of Club Dues, in addition to common expenses and Common Assessment Fees. Club Dues are assessments resulting from the implementation of the Bluegreen Vacation Club plan and are representative of a common expense attributable to such implementation. Club Dues are established pursuant to the Estimated Operating Budget and Line Item Analysis attached in Exhibit 8 of the Public Offering Statement, which describes the various revenues and expenses associated with the operation of Bluegreen Vacation Club. Club Dues for the first year of participation within the Bluegreen Vacation Club will be billed to Purchaser a few days after closing. Thereafter, Club Dues for all Owner Beneficiaries, including Biennial Owner Beneficiaries, are due annually on the first day of the respective Purchaser's Owner Use Year. Each Purchaser/Owner Beneficiary shall only be assessed one Club Dues amount annually without regard to the number of Vacation Points allocated to such Purchaser/Owner Beneficiary. Club Dues are payable without a late fee, within 15 days after the due date. If Club Dues are not paid within 15 days after the due date, default interest in the amount of 1.5% of the unpaid balance per month and a late fee in the amount of 5% of the amount due or \$25.00, whichever is greater, may be charged by the Trustee. Club Dues are currently \$139.00 per year (plus tax, if applicable) and automatically include Purchaser's membership in the external exchange program then affiliated with Bluegreen Vacation Club (which includes the exchange program's annual renewal fee). Unless otherwise permitted by the Florida Vacation Club Act, as may be amended from time to time, in no event shall Club Dues in a given year exceed one hundred twenty five percent (125%) of the Club Dues for the previous year. Purchasers will only be assessed a special assessment in accordance with the Club By-laws. Failure to pay Common Assessment Fees or Club Dues when due shall cause a lien to be filed against the Property pursuant to the Trust Agreement and Club By-Laws.

5.   **PURCHASER'S ACKNOWLEDGMENTS.** Purchaser acknowledges by execution of this Agreement that, prior to the execution of this Agreement, Purchaser has received and had an opportunity to read a copy of the Bluegreen Vacation Club Multi-Site Public Offering Statement and the Exhibits attached thereto relating to the Bluegreen Vacation Club and the Property, as well as a copy of any applicable exchange program documents. Purchaser further acknowledges and agrees that Purchaser's reservation and/or use of the Accommodations and Facilities is subject to the Trust Agreement and the reservation procedures and that each Owner Beneficiary shall have rights to reserve use of the Accommodations and Facilities on a first-come-first-serve basis, subject to the home resort priority reservation right held by Purchaser and certain other Owner Beneficiaries. Purchaser further acknowledges, agrees and represents that the Property and the rights and appurtenances described herein (in particular the allocated appurtenant Vacation Points) and membership in the Bluegreen Vacation Club are being purchased only for Purchaser's personal use and not for any investment potential or any possible rent returns, tax advantages, depreciation, guaranteed buy-back, as Purchaser's principal residence, or for any commercial purpose whatsoever ("commercial purpose" includes, but is not limited to, a use or purpose that the Club Developer or the Board of the Association, in its discretion, could reasonably conclude constitutes a commercial enterprise or which otherwise suggests an intent or expectation to derive profit), all of which Purchaser acknowledges and agrees are prohibited and not part of the subject transaction. Purchaser acknowledges that the Property as hereinabove designated, and other real property has been or will be submitted to a timeshare regime in accordance with the applicable Underlying Declaration. The Property shall be allocated voting rights, assessments and other obligations as set forth within the applicable Underlying Declaration and related legal documentation. Transfer to the Trustee of the Property as specified herein by Purchaser constitutes Trustee's membership in the owners' association existing in respect to the Property.

6.   **MODIFICATIONS AND CHANGES.** Purchaser hereby authorizes the Club Developer and/or Facilitator, as the Club Developer may deem necessary, to record among the public records of the counties in which the Accommodations and Facilities contained within the Trust Estate may be located, such documents, instruments and exhibits as are required to be filed under the laws of the State of Florida, or other applicable state, in order to create and maintain the Accommodations and Facilities pursuant to Florida law, or other applicable state law, including but not limited to the Florida Timeshare Act. Club Developer and Facilitator reserve the right to make changes themselves, or through any of their designees, to any such documents, instruments and exhibits as aforesaid, or as Club Developer, Facilitator, governmental authorities having jurisdiction over any of the Accommodations and Facilities, or the title insurance company may require or deem necessary, provided the changes do not materially and adversely alter Purchaser's rights as an Owner Beneficiary.

7.   **FINANCED PURCHASE.** If Purchaser desires purchase money financing in connection with the transaction contemplated hereunder, a loan application will be completed and submitted by Purchaser as part of this Agreement. In such event, this Agreement shall be contingent upon Purchaser obtaining a loan equivalent to a commitment for the amount specified in the face of this Agreement. If the Purchaser fails to qualify for purchase money financing, this Agreement is null and void and all moneys paid by Purchaser will be refunded. Purchaser acknowledges any such loan shall require Trustee to execute, grant, and deliver a mortgage or other collateral security instrument encumbering the Property (the "Mortgage") to Facilitator or Lender or their designee on behalf of Purchaser, which Mortgage shall provide the Property as collateral for such loan, and to the extent that the Trustee is required by Facilitator or Lender to execute such Mortgage, Purchaser hereby directs and authorizes the Trustee to execute, grant, and deliver such Mortgage. Purchaser shall deliver to Facilitator or Lender a promissory note (the "Note") (together with the Mortgage executed by Trustee and such security instruments requested by Facilitator or Lender) for the balance of the Purchase Price if such is not paid for fully, at closing, in cash or certified funds. Purchaser agrees to provide a security instrument, including a UCC financing statement, to Facilitator, Lender, or their designee and their respective assignees, respecting Purchaser's Owner Beneficiary Rights, including appurtenant Vacation Points, if requested to do so in connection with any such purchase money financing. Trustee shall not be liable or responsible for payment of the Note or any Mortgage executed by Trustee on behalf of Purchaser nor shall Trustee assume any such Note or Mortgage upon its acceptance of title to the Property. Facilitator and Lender reserve the right to charge Purchaser a reasonable fee for services performed by or on behalf of Facilitator or Lender in connection with this loan, including but not limited to services such as providing a payment history or copies of statements to Purchaser, etc. Upon repayment in full of such purchase money loan, Purchaser shall pay to Facilitator or Lender the stipulated cost of \$25 for a loan payoff processing fee. In no event shall the interest rate charged in connection with the purchase money financing exceed the maximum interest rate permitted by applicable law.

8.   **CLOSING AND TITLE.** If Purchaser desires purchase money financing in connection with the transaction contemplated hereunder, a loan application will be completed and submitted by Purchaser as part of this Agreement. In such event, this Agreement shall be contingent upon

FBS Owner Beneficiary Agreement (OBA) - Vacation Club
Rev. 11/2018
Agreement drafted by Bluegreen Vacations Unlimited, Inc., Legal Department
4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.
2622656/WHITE                                                                                                    CM04/22/2019

**FBS Cibola Vista Facilitator Contract**

Purchaser obtaining a loan equivalent to a commitment for the amount specified in the face of this Agreement. If the Purchaser fails to qualify for a purchase money loan, including, the government and veteran administration failure to fund the loan, or in the event the Purchaser fails to qualify, any such loan shall require Trustee to execute, grant, and deliver a mortgage or other collateral security instrument encumbering the Property (the "Mortgage") to Facilitator or Lender or their designee on behalf of Purchaser, which Mortgage shall provide the Property as collateral for such loan, and to the extent that the Trustee is required by Facilitator or Lender to execute such Mortgage, Purchaser hereby directs and authorizes the Trustee to execute, grant, and deliver such Mortgage. Purchaser shall deliver to Facilitator or Lender a promissory note (the "Note") (together with the Mortgage executed by Trustee and such security instruments requested by Facilitator or Lender) for the balance of the Purchase Price if such is not paid for fully, at closing, in cash or certified funds. Purchaser agrees to provide a security instrument, including a UCC financing statement, to Facilitator, Lender, or their designee and their respective assignees, respecting Purchaser's Owner Beneficiary Rights, including appurtenant Vacation Points, if requested to do so in connection with any such purchase money financing. Trustee shall not be liable or responsible for payment of the Note or any Mortgage executed by Trustee on behalf of Purchaser nor shall Trustee assume any such Note or Mortgage upon its acceptance of title to the Property. Facilitator and Lender reserve the right to charge Purchaser a reasonable fee for services performed by or on behalf of Facilitator or Lender in connection with this loan, including but not limited to services such as providing a payment history or copies of statements to Purchaser, etc. Upon repayment in full of such purchase money loan, Purchaser shall pay to Facilitator or Lender the stipulated cost of $25 for a loan payoff processing fee. In no event shall the interest rate charged in connection with the purchase money financing exceed the maximum interest rate permitted by applicable law.

9. **REFUND PRIVILEGES**. In the event Purchaser cancels this Agreement during the applicable cancellation period, Facilitator, or Club Developer or Lender acting on behalf of Facilitator, will refund to the Purchaser the total amount of all payments made by the Purchaser under this Agreement, reduced by the proportion of any Contract Benefits the Purchaser has actually received prior to the effective date of the cancellation. Such Contract Benefits shall include, but not be limited to, (a) the value of the materials delivered to Purchaser-hereby stipulated to be no more than seventy-five dollars ($75.00)-exclusive of the Multi-Site Public Offering Statement and other documents required to be provided to Purchaser under applicable Florida law, and not returned by the Purchaser to the Club Developer in satisfactory condition, reasonable wear and tear excepted and (b) if the Purchaser has used or occupied any Bluegreen Vacation Club Component Site resort for more than 12 hours prior to delivering a notice of cancellation in accordance with the provisions hereof, a reasonable occupancy charge equal to the fair market nightly rental rate-hereby stipulated to be not less than one hundred fifty dollars ($150.00) per night plus the cost for damages, if any, to the applicable Component Site resort directly attributable to the Purchaser's use or occupancy thereof. The refund shall be made within twenty (20) days after Club Developer's receipt and acceptance of the notice of cancellation, or within five (5) days of receipt of funds from the Purchaser's cleared check, whichever is later.

10. **PURCHASER'S BREACH/DEFAULT**. Time is of the essence of this Agreement, except where otherwise specifically provided for herein. After expiration of the applicable cancellation period, failure to close after demand or to make payments within the time provided for herein, or failure to comply with any of the provisions of this Agreement, shall be considered a breach of this Agreement and all sums paid by Purchaser hereunder shall be retained by the Club Developer, Facilitator, and/or Lender (as applicable) as liquidated and agreed damages and not as a penalty. In addition, any termination of this Agreement as a result of Purchaser's breach/default of any provisions herein shall not relieve Purchaser of any obligations as may be owed to Club Developer, Facilitator, and/or Lender (as applicable) or Bluegreen Vacation Club, Inc. hereby, including without limitation, obligations relating to payment of the remaining balance of the Purchase Price and outstanding Club Dues and Common Assessment Fees. Purchaser shall be liable for Club Developer's, Facilitator, and/or Lender's reasonable attorney's fees and costs incurred by it by virtue of any litigation as to the parties' rights hereunder if any of the Club Developer, Facilitator, and/or Lender (as applicable) is the prevailing party. Purchaser acknowledges and agrees that in the event Bluegreen Vacation Club, Inc. (or the Vacation Club Managing Entity), refers Purchaser's outstanding Club Dues and/or Common Assessment Fees account(s) for collection, Purchaser shall also be obligated to pay, in addition to the principal amount owed by Purchaser hereunder in respect thereto, costs and collection fees in the maximum amount permitted by law. Purchaser agrees to defend and indemnify Club Developer, Facilitator, and Lender against all claims of real estate brokers or sales personnel due to acts of Purchaser or Purchaser's representatives, other than brokers or sales personnel employed by the Club Developer, Facilitator, and/or Lender.

11. **RADON GAS**. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over a period of time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida and other states. Additional information regarding radon and radon testing may be obtained from your County Public Health Unit. The foregoing notice is provided in order to comply with state law and is for informational purposes only. Neither Club Developer nor Facilitator conducts radon testing with respect to any Accommodations in any Component Site resort and specifically disclaims any and all representations or warranties as to the absence of radon gas or radon producing conditions in connection with any Component Site resort.

12. **BLUEGREEN VACATION CLUB MEMBERSHIP**. Purchaser acknowledges that as an Owner Beneficiary, he/she will be a Class A Member of the Bluegreen Vacation Club, Inc., a Florida non-profit corporation. Purchaser agrees to be bound by the Articles of Incorporation and By-Laws, together with all rules and regulations as may be adopted from time to time by Bluegreen Vacation Club. Class A Membership and the votes related thereto are not separable from Owner Beneficiary Rights.

13. **INCORPORATION OF TRUST AGREEMENT**. The parties hereto agree that the terms of the Trust Agreement are incorporated herein by this reference. The parties hereto further agree that the Trust Agreement may be amended, from time to time, pursuant to the terms of paragraph 10.4 of such Trust Agreement.

14. **ADDITIONS TO, DELETIONS FROM, AND SUBSTITUTIONS OF TRUST ESTATE**. Club Developer is authorized and empowered to add to the Trust Estate additional Accommodations and Facilities, as it may, in its sole discretion, determine from time to time. Any such additions shall be made pursuant to the terms of the Trust Agreement. Deletions of Accommodations and Facilities comprising the Trust Estate may occur as a result of deletion by casualty, deletion by eminent domain, or automatic deletion, all as further set forth in the Trust Agreement. Deletions of Component Sites may occur as a result of automatic deletion as further set forth in the Trust Agreement. In the event all or any portion of the Trust Estate is deleted from the Trust, a sufficient number of Owner Beneficiaries of the Trust will also be deleted so as to maintain no greater than a One-to-One Owner Beneficiary to Accommodation Ratio. Deletions shall comply with the terms of the Trust Agreement. Upon an Owner Beneficiary defaulting on his or her Owner Beneficiary Obligations, the Trustee may delete and cancel such Owner Beneficiary as a Beneficiary under the Trust Agreement subject to the terms of the Trust Agreement and compliance with the lockout rules of F.S. §721.13(6). Upon such deletion, the Trustee shall perform pursuant to the terms of the Trust Agreement. Neither the Trustee nor any Beneficiary shall be authorized to make any substitutions to any of the Trust Estate, except for replacements as provided above or except as may otherwise be permitted pursuant to F.S. Ch. 721.

15. **DELETION, CANCELLATION OR SUSPENSION OF PURCHASER**. If Purchaser defaults in his or her Owner Beneficiary Obligations, the Purchaser may be deleted, suspended or cancelled as a Beneficiary under the Trust Agreement pursuant to the terms of the Trust Agreement, the By-Laws of the Club and subject to compliance with the lock-out rules of F.S. §721.13(6); provided, however, before any such deletion, cancellation or suspension, Purchaser shall be entitled to the rights as set forth in the Trust Agreement, and By-Laws of the Club, including the right to cure such default.

FBS Owner Beneficiary Agreement (OBA) - Vacation Club
Rev. 11/2018
Agreement drafted by Bluegreen Vacations Unlimited, Inc., Legal Department
4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.
2622656/WHITE

CM04/22/2019

FBS Cibola Vista Facilitator Contract

THIS AGREEMENT IS SUBJECT TO ALL TERMS AND CONDITIONS HEREAFTER SET FORTH, OR ATTACHED HERETO, WHICH ARE INCORPORATED HEREIN BY REFERENCE. BY SIGNING BELOW, PURCHASER ACKNOWLEDGES HAVING READ AND AGREED TO ALL SUCH TERMS AND CONDITIONS AND FURTHER ACKNOWLEDGES RECEIPT OF THE BLUEGREEN VACATION CLUB MULTI-SITE PUBLIC OFFERING STATEMENT AND ANY APPLICABLE EXCHANGE COMPANY DISCLOSURE STATEMENT.

**NO PURCHASER SHOULD RELY UPON REPRESENTATIONS OTHER THAN THOSE INCLUDED IN THIS AGREEMENT AND IN THE DOCUMENTS REFERRED TO HEREIN.**

**THE CLUB DEVELOPER SHALL GIVE PROSPECTIVE PURCHASER A COPY OF THE BLUEGREEN VACATION CLUB MULTI SITE PUBLIC OFFERING STATEMENT AND ANY APPLICABLE EXCHANGE COMPANY DISCLOSURE STATEMENT AND AN OPPORTUNITY TO READ AND REVIEW THEM BEFORE THE PURCHASER SIGNS THIS AGREEMENT. BY EXECUTION BELOW, THE PURCHASER ACKNOWLEDGES THAT THE REQUIREMENTS OF THE FOREGOING SENTENCE HAS BEEN SATISFIED.**

**IF YOU EXECUTE THIS AGREEMENT IN WISCONSIN, YOUR CANCELLATION RIGHTS ARE SUBJECT TO AND PROTECTED BY WISCONSIN LAW. THE REFERENCES TO THE TEN (10) DAY CANCELLATION PERIOD PURSUANT TO FLORIDA STATUTES, CHAPTER 721, CONTAINED IN THE TEXT OF THE PUBLIC OFFERING STATEMENT ARE NOT APPLICABLE TO YOU, AS THEY ONLY APPLY TO CONTRACTS EXECUTED IN THE STATE OF FLORIDA. WISCONSIN LAW PROVIDES YOU WITH THE FOLLOWING CANCELLATION RIGHTS:**

**YOU MAY CANCEL THIS CONTRACT WITHOUT ANY PENALTY OR OBLIGATION WITHIN 5 BUSINESS DAYS FROM THE DATE YOU SIGN THIS CONTRACT OR UNTIL 5 BUSINESS DAYS AFTER YOU RECEIVE THE APPROVED PUBLIC OFFERING STATEMENT, WHICHEVER IS LATER. IF YOU DECIDE TO CANCEL, YOU MUST NOTIFY THE DEVELOPER, IN WRITING, OF YOUR INTENT TO CANCEL. YOUR NOTICE OF CANCELLATION SHALL BE EFFECTIVE UPON THE DATE SENT AND SHALL BE SENT TO: BLUEGREEN VACATIONS UNLIMITED, INC., ATTN: CORPORATE SALES ACCOUNTING DEPT., 4960 CONFERENCE WAY N STE 100, BOCA RATON FL 33431-3311. ANY ATTEMPT TO OBTAIN A WAIVER OF YOUR CANCELLATION RIGHTS IS UNLAWFUL. WHILE YOU MAY EXECUTE ALL CLOSING DOCUMENTS IN ADVANCE, THE CLOSING, AS EVIDENCED BY DELIVERY OF THE DEED OR OTHER DOCUMENT TO THE TRUSTEE, BEFORE EXPIRATION OF YOUR 5 BUSINESS DAY CANCELLATION PERIOD, IS PROHIBITED.**

**In addition, if the Purchaser has used or occupied any Bluegreen Vacation Club Component Site resort for more than 12 hours prior to delivering a notice of cancellation, the funds to be returned to the Purchaser may be reduced by a reasonable charge to cover the length of stay, plus the cost for damages, if any, to the resort directly attributable to the Purchaser's use or occupancy.**

PURCHASER(S):

DIAMOND A WHITE          04/22/2019 (Date)

FACILITATOR:
CIBOLA VISTA RESORT & SPA L.L.C.

By: _____  04/22/2019 (Date)
Authorized Agent

CLUB DEVELOPER:
BLUEGREEN VACATIONS UNLIMITED, INC.

_____  04/22/2019 (Date)
Authorized Agent

'Notify' shall mean that a written notice of cancellation is delivered by any means, which may include certified mail, return receipt requested, to Bluegreen Vacations Unlimited, Inc. It is a violation of F.S. Ch. 721 for any person to interfere with the delivery of a notice of cancellation by a purchaser.

FBS Owner Beneficiary Agreement (OBA) - Vacation Club
Rev. 11/2018
Agreement drafted by Bluegreen Vacations Unlimited, Inc., Legal Department
4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.
2622656/WHITE                                                    CM04/22/2019

**FBS Cibola Vista Facilitator Contract**

**16. VACATION POINTS.** The number of Vacation Points authorizing the personal, non-commercial use of Accommodations and Facilities of the Bluegreen Vacation Club and made available from time to time by the Trustee to individual purchasers of Vacation Points shall (a) be and correspond equally to (or an amount less than) the actual Vacation Point value of Accommodations and Facilities owned/held by the Trustee. Each time an Owner Beneficiary is added (through issuance of Owner Beneficiary Rights and appurtenant Vacation Points pursuant to a Bluegreen Owner Beneficiary Agreement entered into by Club Developer), (i) Club Developer, Facilitator or their affiliate shall convey to the Trustee an additional Resort Interest equivalent in Vacation Points value as has been provided to the incoming Purchaser or (ii) the incoming Purchaser shall convey to the Trustee his or her Resort Interest equivalent in Vacation Points as has been provided to the incoming Purchaser. Vacation Points and Class A Membership in the Club are not separable from Owner Beneficiary Rights and may not be used for any commercial purpose.

**17. ESTABLISHMENT OF VACATION POINT VALUE.** Occupancy of Accommodations within the Bluegreen Vacation Club Trust is based upon Vacation Points. The minimum number of Vacation Points presently required to be allocated to any one Purchaser is 3,000. The allotted use allocation of each Vacation Point was initially established at a $1.00 use valuation per Vacation Point, which allocation relates to a balancing of demand for requested occupancy with a determined number of Vacation Points equating to a daily use. Such valuation is for demonstrative use purposes only and Vacation Points have no independent cash or other monetary value. Club Developer reserves the right to increase or decrease such use allocation, from time to time, as determined by Club Developer in its sole discretion. Each Resort Interest made a part of the Bluegreen Vacation Club will be assigned a Vacation Point use value. The number of Vacation Points allocated to a Purchaser will determine which Accommodations or Facilities, and at which times of the year, such may be reserved and occupied by Purchaser or any other Owner Beneficiary. In establishing the Vacation Point value of each Accommodation, Club Developer will take into account the nature and anticipated relative use demand at each Component Site that the Club Developer intends to offer to the Trustee as a part of the Bluegreen Vacation Club Trust, and Club Developer shall use its best efforts, in good faith and based upon all reasonably available evidence under the circumstances, to further the best interests of all Purchasers of the Bluegreen Vacation Club as a whole with respect to the opportunity to use and enjoy the Accommodations and Facilities of the Bluegreen Vacation Club Trust. The Vacation Point value may be periodically adjusted from time to time in order to respond to actual Purchaser use pattern and changes in Purchaser use demands for the Accommodations existing at that time within the Bluegreen Vacation Club Trust.

**18. SAVING AND BORROWING OF VACATION POINTS.** Purchasers will be allowed to save Vacation Points from their current Owner Use Year for use in the next succeeding Owner Use Year and borrow Vacation Points from the next succeeding Owner Use Year for use in the current Owner Use Year in accordance with the Club rules on saving and borrowing, as such may exist from time to time, including the following: if required by the Vacation Club Managing Entity, Purchasers must pay all Club Dues and Common Assessment Fees attributable to all saved or borrowed Vacation Points. The rules on saving and borrowing may require that Purchasers notify the Vacation Club Managing Entity in writing prior to the termination of the Owner Use Year for which Purchaser desires to save Vacation Points. If Purchaser fails to provide any such required notice all unused Vacation Points for that Owner Use Year shall expire upon expiration of such Owner Use Year. Vacation Points that are properly borrowed but not used in the current Owner Use Year may be saved if permitted by the Vacation Club Managing Entity. The rules on saving and borrowing may also require that Purchasers notify the Vacation Club Managing Entity in writing prior to the commencement of the Owner Use Year for which Purchaser desires to borrow Vacation Points. Vacation Points that are properly borrowed but not used in the current Owner Use Year shall expire upon expiration of the current Owner Use Year and cannot be re-borrowed or saved. Saving and borrowing may be limited, on an annual basis, to a percentage determined, from time to time, by the Vacation Club Managing Entity, whose decision to authorize saving and borrowing will be based upon anticipated relative use demand of each Component Site. The rules regarding saving and borrowing will be exercised by the Vacation Club Managing Entity in good faith and based upon all reasonably available evidence under the circumstances with the objective to further the best interest of the Purchasers of the Bluegreen Vacation Club Trust as a whole with respect to their opportunity to use and enjoy the Accommodations and Facilities of the Plan. The rules may provide that any saving and borrowing may be subject to a charge.

**19. NON-TRANSFERABILITY OF OWNER BENEFICIARY RIGHTS WITH VACATION POINTS.** Vacation Points are not separable from Owner Beneficiary Rights and will not be transferable from one Owner Beneficiary to another so as to authorize increased year to year usage. All Owner Beneficiaries are subject to the By-Laws of the Club. In addition, as further set forth in the text of the Multi-site Public Offering Statement and the Club By-Laws, certain benefits and facilities of the Plan including, without limitation, membership in the Bluegreen VIP Program, whether Basic or Enhanced/Traveler Plus Membership, are personal to each Owner Beneficiary and are not assignable or transferable, unless such transfer is facilitated by the Club Developer or its authorized agents.

**20. RESERVATION GUIDELINES.** The Vacation Club Managing Entity shall establish, from time to time, reservation guidelines and rules and regulations which shall be binding upon the Purchaser and all other Owner Beneficiaries. Such reservation guidelines and rules and regulations may establish the nightly minimum basis for use of Accommodations and Facilities, weekend and holiday use of Accommodations and Facilities, split-week reservations regarding Accommodations and Facilities, and bonus time use of Accommodations and Facilities.

**21. CONVERTING MEMBER RIGHTS.** Purchaser acknowledges that the Club includes Converting Owner Beneficiaries (Converting Members) who are those who held title to a Resort Interest prior to their converting into membership within the Bluegreen Vacation Club. Rights of Converting Members are set forth in the Bylaws of the Club.

**22. PRE-AUTHORIZED CHECK PLAN.** Purchasers who enroll in the Pre-Authorized Check Plan ("PAC Plan") (a) authorize the withdrawal, by debit entry or otherwise, from a depository account specified by Purchaser (the "Account"), amounts on the recurring dates each month sufficient to make payments required under this Agreement and/or the Note contemplated hereunder and (b) acknowledge and agree that the terms and conditions respecting the PAC Plan as set forth in the Note and the PAC Plan Agreement are incorporated herein by this reference.

**23. CONSTRUCTION OF SUBJECT PROPERTY AND AMENITIES.** If the subject Property is not complete, it is anticipated that it will be complete by the date estimated for initial possible occupancy; provided, however, in any event Facilitator shall complete the subject Property within two (2) years of the date this Agreement is signed by Purchaser, subject only to delays caused by Acts of God, strikes, material shortages or other conditions beyond the Facilitator's control which constitute impossibility of Facilitator's performance under the law of the state in which the Property is located. As of the date of this Agreement, certain amenities to be completed by the Facilitator and/or Club Developer may not have been completed. To the extent such amenities are identified in the current Bluegreen Vacation Club Multi-Site Public Offering Statement as being not yet completed, the Club Developer and Facilitator estimate that such amenities will be completed within two (2) years of the date this Agreement is signed by Purchaser, subject to delays caused by acts of God or other conditions or circumstances beyond the reasonable control of Club Developer and/or Facilitator. Otherwise, the recreational facilities and amenities located in the Bluegreen Vacation Club Component Site Resorts are complete and available for use.

**24. NO ORAL OR WRITTEN REPRESENTATIONS, WARRANTIES.** The parties hereto agree that this Agreement, along with the documents referred to herein, are the only agreements and disclosures between them. Purchaser should not rely upon any representations, oral or written, which are not herein set forth. This Agreement will become effective and binding upon the parties hereto when signed by Purchaser in the space provided herein and received and accepted by Club Developer and Facilitator. Except as otherwise provided by law, Club Developer and Facilitator make no warranties, express or implied, whatsoever, regarding the Property, Units, Common Elements or Common Furnishings including but not limited to warranties of merchantability or fitness for a particular purpose. The Multi-site Public Offering Statement, which

FBS Owner Beneficiary Agreement (OBA) - Vacation Club
Rev. 11/2018
Agreement drafted by Bluegreen Vacations Unlimited, Inc., Legal Department
4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.
2622656/WHITE
CM04/22/2019

**FBS Cibola Vista Facilitator Contract**

should be reviewed by each Purchaser, provides additional specificity and explanations regarding the information set out herein and shall control over any interpretation of any provisions hereof.

25. **FURNISHINGS.** Although all model units are for display purposes only, the Property described herein shall have furniture, appliances, equipment and all accent furnishings substantially similar to or of equal quality to those shown or used in the model. Such furnishings shall be provided by Club Developer or by Bluegreen Interiors, LLC, a wholly-owned subsidiary of the Club Developer. The stipulated retail value of the furnishings will vary between resorts, but is between approximately 2% and 4% of the purchase price of the Property, and is subject to any applicable sales tax. The owners association at the respective component site resort shall own such furnishings or such shall be part of the common elements of the condominium, and in each case the owners association shall be responsible for maintaining and replacing such furnishings within the Property.

26. **CERTAIN LITIGATION MATTERS.**

(a) **MANDATORY ARBITRATION.** All disputes, claims, actions, questions or differences, whether based in or upon contract, tort, statute, fraud, deception, misrepresentation or any other legal theory, brought by or on behalf of Purchaser against any one or more of Club Developer, Facilitator or other third party facilitator, Trustee, Bluegreen Vacation Club, Inc., Bluegreen Resorts Management, Inc., Resort Title Agency, Inc., Escrow Agent, any Lender, or any of their respective affiliates, parents, subsidiaries, officers, directors, shareholders, managers, members, or employees (collectively, the "**Bluegreen Parties**", each of whom may rely upon and/or enforce the terms of this sub-Section 26(a)), which in any way whatsoever relates to or arises out of this Bluegreen Owner Beneficiary Agreement, the Property, the Bluegreen Vacation Club multi-site timeshare plan, membership in Bluegreen Vacation Club, Inc., the Trust Agreement, and specifically including the marketing, offering, acquisition, sale, use, or occupancy of the Property or Accommodations or Facilities (and related Owner Beneficiary Rights and appurtenant Vacation Points) in connection with the Bluegreen Vacation Club multi-site timeshare plan or the function, form, or operation of the Bluegreen Vacation Club multi-site timeshare plan (collectively, "**Disputes**"), shall be resolved through binding and final arbitration in Broward County, Florida, before a single arbitrator (the "**Arbitrator**"), in accordance with the Commercial Arbitration Rules (the "**Rules**") of the American Arbitration Association ("**AAA**") then in effect, except as those Rules may be modified in this Section 26. Notwithstanding the foregoing, any dispute, claim or controversy solely relating to any purchase money financing obtained by Purchaser to acquire the Property in connection with the Bluegreen Vacation Club multi-site timeshare plan shall be exclusively governed by the terms of the applicable lien debt instrument and shall not be subject to this sub-Section 26(a).

Unless the parties to the arbitration otherwise agree in writing or the AAA determines otherwise, (i) the Expedited Procedures of the Rules shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest, attorneys' fees, and arbitration fees and costs, and (ii) the Procedures for Large, Complex Commercial Disputes of the Rules shall apply in any case in which any disclosed claim or counterclaim is for at least $500,000, exclusive of interest, attorneys' fees, and arbitration fees and costs. Except as may be required by law, neither Purchaser nor an arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of the Club Developer.

Except as to the applicability and validity of sub-Section 26(b), the Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to this sub-Section 26(a), including as to the jurisdiction of the Arbitrator or relating to the existence, scope, validity, enforceability, or performance of this sub-Section 26(a) or any of its provisions. Any dispute or issue as to the applicability or validity of sub-Section 26(b) shall be determined by a court of competent jurisdiction. Moreover, nothing in this sub-Section 26(a) shall preclude the Bluegreen Parties from seeking interim or provisional relief or remedies in aid of arbitration from a court of competent jurisdiction.

(b) **WAIVER OF CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION CLAIMS.** Except as otherwise required by law, (i) class, collective, and representative action procedures shall not be asserted, and shall not apply, in any arbitration pursuant to sub-Section 26(a); (ii) no class, collective, or representative action claims shall be asserted against the Bluegreen Parties (each of whom may rely upon and/or enforce the terms of this sub-Section 26(b)) in arbitration or otherwise, by or on behalf of Purchaser; and (iii) Purchaser shall not seek to represent the interests of any other purchaser or Owner Beneficiary (except in a derivative action) as to any claims asserted against the Bluegreen Parties, in arbitration or otherwise. Further, any claims of Purchaser, as Purchaser or as Owner Beneficiary, against the Bluegreen Parties shall not be joined, consolidated, or heard together with any such claims of another purchaser or Owner Beneficiary. The Arbitrator shall have no jurisdiction or authority to compel or permit any class, collective, or representative claim in arbitration, to consolidate different arbitration proceedings, or to join any other party to any arbitration, pursuant to sub-Sections 26(a) or 26(b).

(c) **WAIVER OF JURY TRIAL.** Purchaser understands and agrees that, pursuant to sub-Sections 26(a) and 26(b), Purchaser is giving up any rights (i) to a trial by jury with respect to all Disputes; and (ii) to appeal or otherwise to seek judicial review of the Arbitrator's award except as provided in sub-Section 26(b) and applicable law.

(d) **DISCOVERY.** Except for good cause shown, discovery in any arbitration pursuant to this Section 26 shall be limited per side to no more than (i) twenty (20) requests for the production of documents and (ii) five (5) depositions.

(e) **DISPOSITIVE MOTIONS.** The Arbitrator shall allow, and timely consider and rule on, dispositive motions in any arbitration pursuant to this Section 26. In doing so, the Arbitrator shall apply the standards of review of such motions under the Federal Rules of Civil Procedure.

(f) **APPLICABLE LAW.** This Section 26 shall be governed and enforced under the Federal Arbitration Act (the "**FAA**"), 9 U.S.C. § 1, et seq., and, to the extent that it does not conflict with the FAA, the Revised Florida Arbitration Code, Fla. Stat. § 682.01, et seq.

(g) **AWARDS.** Any award in any arbitration pursuant to this Section 26 ("**Award**") shall be in writing and, on the request of any party to the arbitration, shall be a reasoned award. An Award will be final and binding upon the parties, and will be the sole and exclusive remedy between the parties relating to the Dispute, including any claims, counterclaims, issues or accounting presented to the Arbitrator. Judgment upon the Award may be entered in any court having jurisdiction. To the fullest extent permitted by law, no application or appeal to any court of competent jurisdiction may be made in connection with any question of law arising in the course of arbitration pursuant to this Section 26 or with respect to any Award, except for actions relating to enforcement of this Section 26 or any Award or seeking interim or other provisional relief or remedies in aid of arbitration.

(h) **COSTS AND EXPENSES.** Except as otherwise set forth in this Agreement, each party involved in a Dispute shall bear its own costs and expenses (including attorneys' fees) in connection with any arbitration pursuant to this Section 26. However, if any party prevails on a statutory claim that entitles the prevailing party to attorneys' fees and costs, or if there is a written agreement between the parties providing for attorneys' fees and costs, the Arbitrator may award reasonable attorneys' fees and costs in accordance with the applicable statute or written agreement. In that event, the Arbitrator shall resolve any dispute as to the reasonableness of any fee or cost that may be awarded.

FBS Owner Beneficiary Agreement (OBA) - Vacation Club
Rev. 11/2018
Agreement drafted by Bluegreen Vacations Unlimited, Inc., Legal Department
4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.
2622656/WHITE
CM04/22

**FBS Cibola Vista Facilitator Contract**

**(i) SEVERABILITY.** Except as to sub-Section 26(b), if any provision of this Section 26 is adjudged to be void or otherwise unenforceable, in whole or in part, then such provision shall be severed and such adjudication shall not affect the validity of this Agreement or the remainder of this Section 26. If sub-Section 26(b) is adjudged to be void or otherwise unenforceable by a court of competent jurisdiction, the affected class, collective, or representative action claim(s) shall not be subject to arbitration pursuant to this Section 26.

**(j) SURVIVAL.** The provisions of this Section 26 shall survive any termination or cancelation of this Agreement, and shall survive any termination cancelation or deletion of the Purchaser's membership in Bluegreen Vacation Club, Inc. as may occur in accordance with the terms of this Agreement, the Bluegreen Vacation Club, Inc. Bylaws and the Trust Agreement for a period of time equal to the applicable statute of limitations of any Dispute.

**(k) NON-EXCLUSIVITY.** The rights and obligations of any person or entity under this Section 26 shall be in addition to and not exclusive of any other rights or obligations to which any such person or entity may be entitled or subject by applicable law, the Articles of Incorporation or Bylaws of Bluegreen Vacation Club, Inc., the Trust Agreement, or any other agreement or instrument. Except as otherwise provided in Section 26(a), to the extent a provision of this Section 26 conflicts with any provision of the Articles of Incorporation or Bylaws of Bluegreen Vacation Club, Inc., the Trust Agreement, or any other agreement or instrument, the provision of this Section 26 shall control to the extent of the conflict.

**(l) THIRD PARTY BENEFICIARIES.** The parties hereby designate Bluegreen Vacation Club, Inc., Bluegreen Resorts Management, Inc., Trustee, Resort Title Agency, Inc., Escrow Agent, any Lender and each of their respective affiliates, parents, subsidiaries, officers, directors, shareholders, managers, members, and employees, as intended third-party beneficiaries of this Section 26, and each shall have the right to enforce this Section 26.

**27. INSULATION.** Pursuant to the FTC Regulations, notice is hereby given that each Unit will have blown, rigid or batt insulation installed in all exterior walls to a minimum thickness of six (6) inches, according to the manufacturer, will yield an average insulation value of at least R-19. Further, each Unit with a roofed ceiling will have blown, rigid or batt insulation installed in the ceiling to a minimum thickness of twelve (12) inches, which, according to the manufacturer, will yield an average insulation value of at least R-38. Purchaser understands and acknowledges that insulation thickness may be greater and may vary, depending upon local conditions and construction factors, including, but not limited to, such items as wall openings and plumbing or other structures or obstructions within the walls or ceiling which displace the insulation. Purchaser understands and agrees that the foregoing information regarding the R-Value of the insulation is based upon information supplied by the insulation installer, and Club Developer and Facilitator make no representations or warranty regarding same.

**28. MISCELLANEOUS.** The terms and provisions hereof shall be deemed independent and severable, and the invalidity of any one provision or portion thereof shall not affect the validity or enforceability of any other provision hereof.

**(a) BINDING EFFECT; GOVERNING LAW.** This Agreement is binding upon the parties hereto and their heirs, legal representatives, successors and assigns. This Agreement represents the entire agreement between the parties hereto and may only be amended or modified by an instrument in writing between the parties. This Agreement shall be construed in accordance with the laws of the State of Florida; excepting, however, the provisions relating to the Purchaser's right to cancel this Agreement and the escrow of Purchaser deposit payments made prior to closing, which provisions shall be construed, interpreted and enforced in accordance with laws of the state where Purchaser executes this Agreement. This Agreement shall not be recorded. The recording of this Agreement by the Purchaser shall be considered a breach of this Agreement and, if Purchaser records this Agreement, it may terminate at Club Developer's option.

**(b) DEFINITIONS.** The capitalized terms used herein shall be given the meanings as prescribed to them within the Bluegreen Vacation Club Multi-Site Public Offering Statement, the Trust Agreement and the Underlying Declaration and, if not defined therein, shall be given the meanings as provided for in F.S. Chapter 721. If a term used herein is not defined as aforesaid, then the term shall be given its normal and customary meaning.

**(c) NOTICES.** Any notice to be given under this Agreement shall be duly given to the last known address of the Purchaser by regular certified mail, return receipt requested, and will be effective three (3) days after placing the same in the U.S. Mail, postage prepaid. Any notice to be given under this Agreement to the Club Developer or Facilitator shall be given by certified mail, return receipt requested, at the address set forth hereinabove for Club Developer or Facilitator, unless the Purchaser is notified in writing of an alternative address. By execution of this Agreement, Purchaser agrees to receive future solicitations at the address/phone number(s) given above from Club Developer, Facilitator, and their affiliates (including, without limitation, Encore Rewards, Inc. and Great Vacation Destinations, Inc.) for their products and services, including without limitation, solicitation by mail, email, fax and telephone (including by automatic dialing equipment and/or pre-recorded messages).

**(d) FURTHER DESCRIPTION OF PROPERTY.** The parties hereto acknowledge and agree that the Property to be conveyed hereunder is more specifically set forth in the warranty deed or other instrument conveying the Property to the Trustee, a copy of which will be provided to the Purchaser and terms of which are incorporated herein by this reference.

**(e) OFAC COMPLIANCE.** Purchaser warrants and represents to Club Developer and Facilitator that Purchaser is not, and shall not become, a person or entity with whom Club Developer is restricted from doing business with under regulations of the Department of Treasury Office of Foreign Asset Control ("OFAC"). Such representation shall include, but not be limited to persons or entities named on OFAC's Specially Designated list and/or Blocked Persons list, or under any statute, executive order (including, but not limited to, the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism); or, other governmental action. Purchaser further warrants and represents that it is not and shall not engage in any dealings or transaction or be otherwise associated with such persons or entities prohibited by OFAC regulations.

**(f) Americans with Disabilities Act.** Certain Accommodations located within the Component Site resorts will be designed for and equipped with handicapped facilities, as set forth and depicted more particularly in the Underlying Declaration and the exhibits thereto. Club Developer has advised Purchaser whether the Property that Purchaser is acquiring hereunder is or will be equipped with such facilities.

**(g) Mold Disclaimer.** Mold is found both indoors and outdoors. The presence of mold may cause property damage or health problems. Additional information regarding mold and a mold inspection may be obtained from your county public health unit or a professional trained in that field. The foregoing notice is provided in order to comply with state law and is for informational purposes only. Club Developer does not conduct mold inspection with respect to any Accommodations in any Component Site resort, and specifically disclaims any and all representations or warranties as to the absence of mold in connection therewith.

**(h) Florida Construction Disclosure.** CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR UNIT, CONDOMINIUM, OR INTEREST THEREIN. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE CLUB DEVELOPER, A WRITTEN NOTICE REFERRING TO CHAPTER 558 OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE

FBS Owner Beneficiary Agreement (OBA) - Vacation Club
Rev. 11/2018
Agreement drafted by Bluegreen Vacations Unlimited, Inc., Legal Department
4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.
2622656/WHITE

CM04/22/2019

**FBS Cibola Vista Facilitator Contract**

DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER, WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

29. **MANAGEMENT AGREEMENT**. Bluegreen Vacation Club, Inc. has entered into a Management Agreement with Bluegreen Resorts Management, Inc. (the "Vacation Club Managing Entity") for the management of the Bluegreen Vacation Club Multi-Site timeshare plan. The initial term of the Club Management Agreement was three (3) years commencing May 18, 1994. The Club Management Agreement will continue to be automatically renewed for successive three (3) year terms unless terminated by law or by either party pursuant to its terms. Purchaser understands that the Vacation Club Managing Entity is an affiliate of the Club Developer and that management fees are paid to the Vacation Club Managing Entity for management of the Plan pursuant to the Club Management Agreement.

30. **COMPLIANCE.** Purchaser covenants to fully and promptly cooperate in the execution and delivery of any and all documentation related in any way to this Agreement or Purchaser's membership in the Bluegreen Vacation Club deemed necessary or desirable by Club Developer, Vacation Club Managing Entity, Bluegreen Vacation Club, Inc., Lender or their lawful successors and assigns in interest.

**31. For the purpose of Ad Valorem Assessment, Taxation and Special Assessments, the Vacation Club Managing Entity will be considered the taxpayer as your agent pursuant to F.S. §192.037.**

**32. Accommodations and Facilities may be added to this Multi-Site Vacation Plan without the consent of the Purchasers. The addition of Accommodations and Facilities to this Plan may result in the addition of new Purchasers who will compete with existing Purchasers in making reservations for the use of available Accommodations and Facilities within the Plan, and may also result in an increase in the Annual Assessment against Purchasers for Common Expenses. For more complete details, please refer to Section III.A.6 of the Text of the Multi-Site Public Offering Statement.**

**33. The Developer is required to provide the Vacation Club Managing Entity with a copy of the approved Multi-Site Public Offering Statement Text and Exhibits filed with the Division and any approved amendments thereto, and any other Component Site documents as described in F.S. §§721.07 or 721.55, that are not required to be filed with the Division, to be maintained by the Vacation Club Managing Entity for inspection as part of the books and records of the Bluegreen Vacation Club Multi-site Vacation Plan.**

**34. Any resale of this Timeshare Interest must be accompanied by certain disclosures in accordance with F.S. §721.065.**

NOT A CERTIFIED COPY

FBS Owner Beneficiary Agreement (OBA) - Vacation Club
Rev. 11/2018
Agreement drafted by Bluegreen Vacations Unlimited, Inc., Legal Department
4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.
2622656/WHITE

CM04/22/2019

**FBS Cibola Vista Facilitator Contract**

<u>AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT</u>

TO: **DIAMOND A WHITE**
   Purchaser

FROM: CIBOLA VISTA RESORT & SPA, L.L.C.
    Lender

PROPERTY: **CIBOLA VISTA RESORT & SPA**

DATE: April 22, 2019

  This is to give you notice that Bluegreen Vacations Corporation has a business relationship with Resort Title Agency, Inc. The nature of this relationship is described as follows: Resort Title Agency, Inc. is a wholly-owned subsidiary of Bluegreen Vacations Corporation. Because of this relationship, this referral may provide Bluegreen Vacations Corporation a financial or other benefit.

  Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use Resort Title Agency, Inc. as a condition for settlement of your loan or purchase or sale of the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| **PROVIDER AND SETTLEMENT SERVICE** | **CLOSING SETTLEMENT STATEMENT** | **CHARGE OR RANGE OF CHARGES** |
|---|---|---|
| Title - Settlement Fee | Section 5b | $50.00-$500.00 |

ACKNOWLEDGMENT

  I/We have read this disclosure form, and understand that Bluegreen Vacations Corporation is referring me/us to purchase the above-described settlement services paid for by the Facilitator or Club Developer and may receive a financial or other benefit as a result of this referral.

<u>           </u>  04/22/2019
**DIAMOND A WHITE**      Date

NOT A CERTIFIED COPY

**BLUEGREEN VACATION CLUB**
**MULTI-LOCATION DEVELOPER**
**SUPPLEMENT TO DISCLOSURE STATEMENT**
**WISCONSIN USE ONLY**

Wisconsin law (Section 707.43, WI Stats.) requires certain disclosures be made by multi-location developers. Bluegreen Vacations Unlimited, Inc. ("Bluegreen") is a multi-location developer as it is the developer/seller of the Bluegreen Vacation Club timeshare plan. Bluegreen Vacation Club is a multi-location development, also known as a multi-site timeshare plan or vacation club. Many of these required disclosures are contained in the Bluegreen Vacation Club Multi-Site Public Offering Statement (the "Florida POS"), which has been registered under the laws of the State of Florida and which has been provided to you. This Supplemental Disclosure identifies the portions of the Florida POS that contain those disclosures and makes certain other disclosures required by Wisconsin law.

1.      The procedures for qualifying for and effectuating rights in time-share units in the Bluegreen Vacation Club are contained in Sections III.1.B and III.7 of the Florida POS text.

2.      The limitations, restrictions and priorities employed in operation of the Bluegreen Vacation Club, including limitations on reservations, use or entitlement rights, are contained in Sections III.1.B and III.7 of the Florida POS text. All limitations, restrictions or priorities employed in the operation of the Bluegreen Vacation Club, including limitations on reservations, use, or entitlement rights, are based upon the Demand Balancing System, as defined in the Florida POS. The Demand Balancing System is premised upon the usage value placed upon a nightly or weekly occupancy, which usage value is expressed in terms of Vacation Points. Please review Sections III.1.B and III.7 of the Florida POS text for further information.

3.      Use is arranged on a space-available basis. The Developer does not guarantee fulfilling specific requests for use; subject, however, to the home resort priority reservation right provided to owners as set forth in the Florida Public Offering Statement text.

4       The name and address of the site of each time-share property ("Component Site") in the Bluegreen Vacation Club is contained in Section III.1.A of the Florida POS text.

5       The numbers of time-share interests in each Component Site available for occupancy is contained in Exhibit 3 of the Florida POS.

5.(a)   As further set forth in Section III.9.C of the Florida Public Offering Statement text, title to the unsold timeshare interests within the units in the Club Component Sites are owned by the Developer, its parent, or affiliate, as the case may be.

5.(b)   Timeshare Units (accommodations) may be withdrawn from the Bluegreen
        Vacation Club only under the circumstances and conditions set forth in Section
        III.6.C of the Florida POS text and Section 7.02 of the Bluegreen Vacation Club
        Amended and Restated Trust Agreement (Florida POS-Exhibit 14).

6.(a)   Number of time-share owners in the Bluegreen Vacation Club as of **November 1,
        2017**:   **254,959**

6.(b)   Number of properly made requests for use of time-share units in each property in
        the Bluegreen Vacation Club during its last fiscal year (from **November 1, 2016 to
        October 31, 2017**): <u>(See Column B Below)</u>

6.(c)   The number of time-share owners who received the right to use a unit, expressed
        as a percentage of the time-share owners who properly requested such use during
        the last fiscal year (from **November 1, 2016 to October 31, 2017**): <u>(See Column C
        Below)</u>

|     |                                                       | **(B)** | **(C)** |
|-----|-------------------------------------------------------|---------|---------|
| 1.  | BG Fountains Condominium                              | 24,026  | 99%     |
| 2.  | BG Carolina Grande Horizontal Property Regime        | 4,869   | 99%     |
| 3.  | BG Club 36                                            | 11,931  | 100%    |
| 4.  | BG Patrick Henry Square                              | 4,814   | 100%    |
| 5.  | Big Cedar Wilderness Club                            | 24,059  | 91%     |
| 6.  | BG SeaGlass Tower Horizontal Property Regime        | 7,889   | 99%     |
| 7.  | The Blake Timeshare Plan                            | 4,051   | 100%    |
| 8.  | Blue Ridge Village                                   | -       | 0%      |
| 9.  | Bluegreen Odyssey Dells and BG Pirate's Lodge       | 4,592   | 100%    |
| 10. | Bluegreen Wilderness Club at Long Creek Ranch       | 1,778   | 95%     |
| 11. | Bluegreen Wilderness Traveler at Shenandoah         | 4,205   | 100%    |
| 12. | Blue Water Resort                                   | -       | 0%      |
| 13. | Breakers Resort                                     | 771     | 94%     |
| 14. | Breckenridge Beach Villas Condominium              | 8,873   | 99%     |
| 15. | Casa del Mar Beach Resort                          | 3,725   | 97%     |
| 16. | Christmas Mountain Campground at Christmas Mountain Village | 4,291 | 100% |
| 17. | Christmas Mountain-Timbers                          | 7,187   | 100%    |
| 18. | Christmas Mountain-The Villas                       | 4,956   | 98%     |
| 19. | Cibola Vista Resort & Spa                          | 8,180   | 100%    |
| 20. | Club at Big Bear Village                           | 1,064   | 99%     |
| 21. | Club La Pension                                    | 2,063   | 70%     |
| 22. | Club Lodges at Trillium, a Condominium             | 1,332   | 93%     |
| 23. | Club Pono Kai Interval Ownership Program           | 639     | 35%     |
| 24. | Daytona SeaBreeze                                  | 3,898   | 93%     |
| 25. | Dolphin Beach Club                                 | 632     | 88%     |
| 26. | Eilan Hotel & Spa, a Condominium                  | -       | 0%      |
| 26. | Falls Village Resort                              | 14,329  | 100%    |
| 27. | Fantasy Island Resort II                          | 1,056   | 82%     |

| | | | |
|---|---|---|---|
| 28. | FoxRun Townhomes | 545 | 92% |
| 29. | Golf Club Villas | 100 | 88% |
| 30. | Grande Villas at World Golf Village | 7,116 | 100% |
| 31. | Gulfstream Manor | 488 | 66% |
| 32. | Hammocks at Marathon Condominium | 2,872 | 79% |
| 33. | Harbour Lights Resort | 15,242 | 100% |
| 34. | Hemlock Interval Ownership Program | 582 | 100% |
| 35. | Horizons At 77th Timeshare Ownership Plan | 4,370 | 100% |
| 36. | Suites at Hershey | 4,341 | 99% |
| 37. | Intervals at the Atlantic Palace | 1,843 | 97% |
| 38. | The Innsbruck, A Condominium | 876 | 88% |
| 39. | La Cabana Beach and Racquet Club | 6,718 | 87% |
| 40. | Lake Condominiums-Big Sky | 540 | 48% |
| 41. | Lake Eve Resort Condominium | 886 | 100% |
| 42. | Landmark Holiday Beach Resort | 650 | 42% |
| 43. | Laurel Crest Resort | 15,350 | 100% |
| 44. | Lodge Alley Inn | 8,475 | 100% |
| 45. | King 583 Horizontal Property Regime | 1,047 | 100% |
| 46. | Manhattan Club | 1,900 | 98% |
| 47. | Mariners' Boathouse and Beach Resort | 7 | 4% |
| 48. | The Marquee, a Condominium | - | 0% |
| 49. | MountainLoft Resort | 12,588 | 100% |
| 50. | MountainLoft Resort II | 4,347 | 100% |
| 51. | Mountain Run at Boyne | 10,587 | 98% |
| 52. | Oasis Lakes Resort | 2,887 | 100% |
| 53. | Ocean Towers Beach Club | 1,178 | 51% |
| 54. | Orlando's Sunshine Resort | 1,108 | 99% |
| 55. | Orlando's Sunshine Resort II | 2,611 | 100% |
| 56. | Outrigger Beach Club | 337 | 85% |
| 57. | Panama City Resort and Club | 171 | 61% |
| 58. | Paradise Isle Resort | 55 | 14% |
| 59. | Paradise Point | 7,412 | 100% |
| 60. | Parkside Vacation Ownership Program | 3,561 | 100% |
| 61. | Petit Crest Villas at Big Canoe | 279 | 89% |
| 62. | Player's Club at Hilton Head Island | 490 | 77% |
| 63. | Resort Sixty-Six | 795 | 65% |
| 64. | Resort at World Golf Village Condominium | 2,595 | 100% |
| 65. | Sand Castle Village II | 87 | 82% |
| 66. | Shenandoah Crossing Resort & Country Club | 4,968 | 99% |
| 67. | Shore Crest Vacation Villas | 5,780 | 86% |
| 68. | Shore Crest Vacation Villas II | 6,254 | 100% |
| 69. | Shoreline Towers Condominium | 47 | 4% |
| 70. | Solara Surfside Condominium | 3,725 | 99% |
| 71. | Soundings Seaside Resort | 2,375 | 99% |
| 72. | South Mountain Resort | 3,291 | 100% |
| 73. | The Studio Homes at Ellis Square | 2,080 | 96% |
| 74. | Surfrider Beach Club | 36 | 3% |
| 75. | Tierra Verde Yacht and Racquet Club I & II | - | 0% |
| 76. | Tropical Sands Resort | 163 | 44% |
| 77. | Via Roma Beach Resort | 880 | 42% |
| 78. | Waterwood Townhomes | 23 | 98% |
| 79. | Windward Passage Resort Condominium | 142 | 6% |
| 80. | Yachtsman Tower Horizontal Property Regime | | 100% |
| | **Totals:** | **309,699** | **94%** |

The percentage of time share owners who received the right to use a unit in the time share property does not indicate a Purchaser's probabilities of being able to use any time share unit, since availability at individual locations may vary.

NOT A CERTIFIED COPY

## CONSENT TO BE CONTACTED

I UNDERSTAND THAT BLUEGREEN VACATIONS CORPORATION AND ITS SUBSIDIARIES WILL NOT CONTACT BLUEGREEN RESORTS OWNERS OR OTHERS WITHOUT THE EXPRESS CONSENT TO DO SO AS REQUIRED BY APPLICABLE LAW. THEREFORE IN ORDER TO PERMIT BLUEGREEN VACATIONS CORPORATION, ITS SUBSIDIARIES AND AFFILIATES TO CONTACT ME BY TELEPHONE (INCLUDING BY PRE-RECORDED MESSAGE) ABOUT SPECIAL OFFERS, PROMOTIONS AND OTHER ITEMS WITHOUT VIOLATING VARIOUS CONSUMER PROTECTION LAWS INCLUDING APPLICABLE DO NOT CALL LAWS, I HEREBY EXPRESSLY CONSENT AND AGREE TO BE CONTACTED BY BLUEGREEN VACATIONS CORPORATION, ITS SUBSIDIARIES AND AFFILIATES ("COLLECTIVELY, BLUEGREEN") AND EACH OF THEIR RESPECTIVE CONTRACTORS AND AGENTS REGARDING BENEFITS TO WHICH I MAY BE ENTITLED TO AND/OR REGARDING THEIR PROMOTIONS, PRODUCTS AND SERVICES VIA TELEPHONE (INCLUDING THROUGH THE USE OF AN AUTOMATED TELEPHONE DIALER, WHICH MAY INCLUDE A PRE-RECORDED MESSAGE LEFT ON MY VOICEMAIL OR ANSWERING MACHINE), TEXT, FACSIMILE, MAIL & EMAIL AT THE NUMBER(S) & ADDRESS(ES) PROVIDED. I UNDERSTAND THAT THIS CONSENT AND AGREEMENT CONSTITUTES A WAIVER OF MY RIGHTS UNDER THE TELEPHONE CONSUMER PROTECTION ACT, THE TELEMARKETING SALES RULE, AND FEDERAL & STATE DO NOT CALL LAWS. I FURTHER UNDERSTAND THAT I AM NOT REQUIRED TO PROVIDE THIS CONSENT AS A CONDITION TO PURCHASE ANY GOODS OR SERVICES FROM BLUEGREEN.

**PURCHASER(S):**

_____          04/22/2019
**DIAMOND A WHITE**                    Date

Consent to be Contacted
Rev. 10/2017
WHITE   CONTRACT # 2622656

**BLUEGREEN VACATION CLUB**
**RECEIPT FOR TIME-SHARE DOCUMENTS**
**CIBOLA VISTA RESORT & SPA - WISCONSIN**

### MULTI-SITE TIME-SHARE PLAN:

Name of Multi-Site Time-Share Plan:          BLUEGREEN VACATION CLUB
Address of Multi-Site Time-Share Plan:       4960 Conference Way North, Suite 100
                                             Boca Raton, Florida 33431

Name of Club Developer:                      Bluegreen Vacations Unlimited, Inc.
Address of Club Developer:                    4960 Conference Way North, Suite 100
                                             Boca Raton, Florida 33431

### COMPONENT-SITE TIME-SHARE PLAN:

Name of Component-Site Time-Share Plan:      **Cibola Vista Resort & Spa**
Address of Component -Site Time-Share Plan:   27501 N. Lake Pleasant Road
                                             Peoria, AZ 85383

Name of Developer/Facilitator:               **Cibola Vista Resort & Spa L.L.C.**
Address of Developer/Facilitator:             27501 N. Lake Pleasant Road
                                             Peoria, Arizona 85383

### BLUEGREEN VACATION CLUB
### MULTI-SITE TIME-SHARE PLAN PURCHASER PUBLIC OFFERING STATEMENT

Multi-site Public Offering Statement Text and Grid          Amended and Restated Trust Agreement
Exhibits 2 – 7, and 9

November 2018 Supplement to the August 2018 Multi-Site     Articles of Incorporation and Second Amended and
Public Offering Statement                                   Restated By-Laws for Bluegreen Vacation Club, Inc.

List and Description of Exhibits Not Provided to Purchasers  Alternative Media Disclosure Statement (For Purchasers
                                                            who desire to receive the Multi-Site Public Offering
Estimated Operating Budget for Multi-site Timeshare Plan and Statement in CD-ROM format in lieu of receiving the
Schedule of Required Purchasers' Expenses                   same in conventional written format)

Copies of the Sale and Purchase documents, including the    Bluegreen Privacy Policy
Bluegreen Owner Beneficiary Agreement (Contract), have been
received by the undersigned purchaser (s) in the following  Cibola Vista Resort & Spa Privacy Policy
format:
                                                            Customer Preference Information
_____ CD -ROM
 X  Standard Photo Copy

Wisconsin Receipt for Timeshare Documents

By execution below, the undersigned acknowledges receipt of copies of the documents listed above.

Executed this 22 of April, 2019.

I/we desire to receive the Multi-Site Public Offering Statement in CD-ROM alternative media format in lieu of receiving the
same in conventional written format: _____ X _____ yes _____ no

I/we understand that the alternative media format should not be selected unless the alternative media can be viewed prior
to expiration of applicable rescission period as provided in the Owner Beneficiary Agreement: ___ X ___ yes _____ no

*The documents listed in this Receipt and received by the purchaser constitute a subset of the Public Offering Statement
filed with the Division of Florida Condominiums, Timeshares and Mobile Homes, in accordance with Chapter 721, Florida
Statutes.

Purchaser: _____
DIAMOND A WHITE

# **bluegreen**vacations®

January 1, 2019

### PRIVACY NOTICE

Bluegreen Vacations Corporation, on behalf of itself, its subsidiaries, and its affiliates (collectively "Bluegreen") recognizes the growing concern that our owners who have received a financial product or service from us have about the privacy and security of their nonpublic personal financial information ("Information"). We are determined to keep you informed regarding how we may use or share the Information that you provide to us, and how we keep this Information secure. Pursuant to United States federal law, and the General Data Protection Regulation ("GDPR"), effective in the European Union as of May 25, 2018, this notice explains how we protect, disclose, and may share your Information. This notice also explains how you may instruct us to limit the disclosure of Information about you.

**I. Information We Collect and May Share.** The Information we collect about you comes from the following sources: (i) Information we receive from you on applications for financing or other forms or when you show your driver's license or government-issued ID, such as your name, address, Social Security Number, telephone number, occupation, assets and income, marital status, email address and credit card information; (ii) Information about your transactions with us, our affiliates, or nonaffiliated third parties, such as account balances, payment history and account activity; (iii) Information we receive from consumer reporting agencies, such as your credit history, credit scores and other information relating to your credit worthiness; and (iv) Information we receive about you from other sources, such as your employer and other third parties.

    **A. Website – BluegreenVacations.com.** We operate two websites, www.bluegreenvacations.com, and www.bluegreenowner.com, through which you may share Information with us. When you register for the owner portal at www.bluegreenvacations.com, we ask you to provide us with: Email address, a password that you create to use our portal, your first and last name, your address, phone number(s), marital status, your spouse's first and last name, your age range, whether you own or rent your home, your preferred credit card for vacation, your billing address, credit card number and its expiration date. When you register for the owner portal at www.bluegreenowner.com, we ask you to provide us with: Email address, a password that you create to use the portal, the last four (4) digits of your Social Security Number (SSN), your Owner Number that we assign to you. Upon registration confirmation, we will also ask you to confirm your address.

    **A. Hyperlinks.** Our website may contain hyperlinks to other websites, including those of other select organizations, which are beyond Bluegreen's control. Bluegreen is not responsible for the privacy practices, data security, or the content of any other such websites not in Bluegreen's control. Our visitors are responsible for reviewing the privacy policies for such other websites.

**II. Sensitive Personal Information.** To the extent that the Information that we collect constitutes sensitive personal information under any applicable law(s), including where such laws promote a substantial public interest, Bluegreen will collect and process this sensitive personal information within the limits provided by applicable law(s). Some examples of this type of information include: (a) You have provided medical information to us to request specific accommodations at our resorts, such as the provision of an ADA-accessible unit; (b) You or someone else in your party has a medical condition that requires certain specific accommodations to use amenities at resorts; (iii) you have otherwise chosen to provide that information to us, or that information has been passed on to us by a third party or affiliate, as we define that term below. Additionally, you may have provided information to us that is not "Sensitive Personal Information," but may otherwise imply or suggest your religion, health or other information. We do not use any such data to infer any "Sensitive Personal Information" about you.

**III. How We Use the Information That We Collect.** We may use the Information that we collect from you to communicate with you regarding special offers, to update information, to offer you new services, or for marketing purposes. We may also register you as an owner to allow you to purchase additional services from us, subscriptions, memberships, or merchandise, and to customize our website content. If you provide us with your e-mail address, mailing address, or telephone number, we may use that Information to contact you, from time to time, regarding our products and services.

**IV. Minors.** We ask that minors not submit any Information to us. We do not knowingly collect personal Information directly from minors. If you are a minor, you may use our services only with the permission of your parent or guardian. If you are the parent or guardian of a minor who has provided personal Information without your knowledge or consent, you may request that we remove the minor's Information by submitting that request via our secure contact form found on our website at: https://www.bluegreenvacations.com/contact-us/.

**V. Sharing Your Information.** We may share any of the above Information that we collect with our affiliates, third party service providers, and nonaffiliated third parties as described below. If you are a new customer, we can begin sharing your Information 30 days from the date we provide you with this notice. We can provide you with a list of the third party service providers with whom we may share your information upon written request. When you are no longer our customer, we continue to share your Information with the parties described in paragraph V.A through V.D below as described in this notice. However, you can contact us at any time to limit our sharing, or, when provided by applicable law, require that we cease sharing your Information, return your Information to you, or delete it from our files, and from those of our Affiliates or Third Party Service Providers, by following the procedures we set forth in Section X below.

    **A. Sharing Information with Affiliates.** Affiliates are companies related to us by common ownership or control. They can be financial and nonfinancial companies. We may share your Information, in whole or in part, with our affiliates as permitted by law for our affiliates' everyday business purposes and to market to you. The law allows us to share with our affiliates any information about our transactions or experiences with you or your creditworthiness.

    **B. Sharing Information with Third Party Service Providers.** We may share your Information, in whole or in part, with the following third party service providers: (i) companies that provide marketing and sales services on our behalf; (ii) companies that process and service your accounts; and (iii) companies that help us to protect and secure your Information and the confidentiality of our records. They can be financial and nonfinancial companies. All of these third party service providers have contractual obligations with us to maintain the confidentiality of your Information. Additionally, these third party service providers are only permitted to use your Information for the purposes specified by us, or our affiliates, or as allowed by law.

    **C. Disclosing Information to Nonaffiliated Third Parties.** We may disclose your Information, in whole or in part, to the following types of nonaffiliated third parties to market to you: (i) companies with whom we have joint marketing agreements; (ii) non-financial organizations, such as direct marketing companies and consumer reporting agencies; (iii) financial service providers, such as companies engaged in banking, credit card business and consumer finance; and (iv) others, such as non-profit organizations. They can be financial and nonfinancial companies.

    **D. Other circumstances in which we may share your Information.** We may share your Information when you specifically request it or give us permission to do so. We may also share your Information when we suspect criminal or fraudulent activity, and when we are required by law, such as when we receive a subpoena or a court order. We may also share your Information in the event that we sell a particular line of business or a portion thereof.

1

**VI. Safeguarding Information.** We maintain physical, electronic and procedural safeguards that comply with federal standards to protect your Information. These safeguards include computer safeguards and secured files and buildings. We also restrict access to your Information to only those Bluegreen employees, affiliates and service providers that need to know such information in order to provide products or services to you or to us. We permit access to the websites and owner portal only with a unique username and password. We encrypt your password. Access to the websites is secure, using SSL encryption. Only authenticated users can access the websites. No logged in user is permitted to access any other user's information. Third parties who have access to Information must agree to follow appropriate standards of security and confidentiality. We train people who work for us on how to properly handle Information and we restrict access to it. For example, to the extent that we store any data, such as your credit card or other financial information, that data is encrypted and tokenized. We only allow certain employees access to the complete and masked credit card and financial institution numbers

Please note that, while we make every effort to safeguard your Information, no method of transmitting or storing electronic information is ever completely secure, and thus, we make no warranties, express or implied, or otherwise, that your information will never be accessed, used or released in a manner that is inconsistent with this Privacy Policy. IN NO EVENT SHALL WE BE LIABLE FOR ANY DAMAGES (WHETHER CONSEQUENTIAL, DIRECT, INCIDENTAL, INDIRECT, PUNITIVE, SPECIAL OR OTHERWISE) ARISING OUT OF, OR IN ANY WAY CONNECTED WITH, A THIRD PARTY'S UNAUTHORIZED ACCESS TO YOUR INFORMATION, REGARDLESS OF WHETHER SUCH DAMAGES ARE BASED ON CONTRACT, STRICT LIABILITY, TORT OR OTHER THEORIES OF LIABILITY, AND ALSO REGARDLESS OF WHETHER WE ARE GIVEN ACTUAL OR CONSTRUCTIVE NOTICE THAT DAMAGES WERE POSSIBLE, EXCEPT AS PROVIDED UNDER APPLICABLE LAWS.

**VII. Maintaining Accurate Information.** We work hard to maintain accurate records, and welcome the opportunity to make appropriate changes when asked. Please let us know if there is incorrect information in any statement or other communication that you receive from us.

**VIII. Miscellaneous.** We reserve the right to change this notice at any time, and we will inform you of any material changes as required by law. This notice is being provided in accordance with applicable federal law. It is neither intended to be, nor should it be deemed to constitute, an offer of agreement of any kind on our part, or impose any duty or obligation of any kind upon us, except as, and to the extent expressly required, by law.

**IX. Website Content and Cookies.** Like most websites, Bluegreen's website uses "Cookies." A Cookie is a text file, invoked by standard browser software, which we store on your computer's hard drive. Our Cookies do not contain any information, but enable us to record session information and track transactions.

    **A. Information Collected Through Cookies.** When you use Bluegreen's website, we may receive technical information such as your browser type, the type of operating system that you use, your geolocation, the name of your internet service provider, mobile advertising identifiers, and pages that you visit on our services. We get this information, not to compromise your privacy, but to simplify our site administration by recording commonly used data. For example, we may want to know how long you spend on our services, and what features get your attention.

    **A. Changing Your Settings.** You can change your Cookies settings. Some browsers may permit you to control whether or not it will accept or reject Cookies, or notify you each time a Cookie is sent. Please consult your browser settings. We do not permit you to opt out of our websites' use of cookies. However, you may reject Cookies by adjusting your browser settings. Doing so may limit the range of features that our Website provides to you by doing so.

    **B. The Types of Cookies We Use.** We use three types of Cookies on our website.

1.   Essential Cookies – These Cookies enable you to use our website. They are essential to enable you to browse our website. If you disable these essential Cookies, that may prevent you from using parts of our website. These Cookies also help us keep our website safe and secure.

1.   Temporary Cookies – We use two temporary cookies, one for authentication and the other for active session information that expires once your user session terminates. The expiring session cookie is used to connect your browser's session with other information that is saved on our server throughout that browser session.

2.   Preference, Persistent and Analytics Cookies – These Cookies store information such as your preferred accommodations or amenities at our resorts. Without these Cookies, our website may not be able to remember certain choices that you have previously made, or personalize your browsing experience. These Cookies can also be used to recognize your device so that you do not have to provide us with the same information more than once. These long-term cookies are saved on your browser for analytics to allow the websites to recognize you as the same visitor on your return visits. We use cookies from Sitecore Analytics and Google Analytics.

**X. How to Update or Control the Information We Maintain or Share About You.** You may direct us to limit the disclosure of Information about you that we share by filling out the attached Bluegreen Privacy Notice Opt-Out Request Form and checking either or both boxes. If you select either choice, however, we may still disclose your Information to third parties: (i) that perform marketing or other services on our behalf; (ii) as permitted by law, such as to service providers and consumer credit reporting agencies; and (iii) to protect against fraud, and to protect the security or confidentiality of our records.

Once you have filled out the Request Form, please detach it at the dotted line, place it into an envelope, attach proper postage, and mail it to:

    Bluegreen Vacations Corporation
    Attn: Mortgage Operations
    4960 Conference Way North, Suite 100
    Boca Raton, Florida 33431-3311

Please allow approximately 30 to 60 days from our receipt of your Privacy Notice Opt-Out Request Form for it to become effective. Your privacy instructions and any previous privacy instructions will remain in effect until you request a change. Please also note that if you limit sharing Information for an account you hold jointly with someone else, your choices will apply to everyone on the account.

**XI. Data Retention.** We will retain your Information for only so long as is reasonably necessary for the purposes we have described above, considering the criteria such as applicable rules on statutes of limitations and other legal requirements of the various jurisdictions that govern Bluegreen, and the duration of your use of our website and other services, if applicable.

**XII. Your California Privacy Rights**

California Civil Code Section 1798.83 permits Bluegreen customers who are California residents to request certain information regarding our disclosure of personal information to third parties for their direct marketing purposes. To make such a request, please write to us at:

    Bluegreen Vacations Corporation
    Attention: California Privacy Rights Information Request
    4960 Conference Way North, Suite 100
    Boca Raton, Florida 33431-3311

2

> **IMPORTANT INFORMATION ABOUT CREDIT REPORTING**
>
> We may report information about your account to credit reporting companies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**XIII. For Our Customers from the European Union or Switzerland**

This section of the Privacy Policy applies only if you use our website or any other services that may be covered by this Privacy Policy from a country that is a Member State of the European Union or Switzerland, and supplements the other information in this Privacy Policy.

To the extent that Bluegreen is subject to the laws of the European Union when processing personal data ("Personal Data"), it shall be the "data controller" under such laws.

    **A.   Legal Basis for Data Processing.**   We process Personal Data for the purposes set out in this Privacy Policy, as described above. Our legal basis to process Personal Data includes processing that is:

        1.   Necessary for our performance of our services to you (for example, to provide you with notices regarding the accommodations you purchase, or to resolve billing or customer service inquiries);

        1.   Necessary to comply with legal requirements (for example, to comply with applicable accounting rules or make mandatory disclosures to law enforcement);

        2.   Necessary for our legitimate interests (for example, to manage our relationship with you and to improve the website and any other services);

        3.   Necessary to protect the vital interests of you and another person (for example, if we connect Sensitive Personal Information from you to provide you with special accommodations);

        4.   When legally required, and we have no other valid legal basis to process Personal Data, we will use consent by our customers (for example, to provide you with marketing information or share information with third parties), which may subsequently be withdrawn at any time, by submitting that request via our secure contact form found on our website at: https://www.bluegreenvacations.com/contact-us/ without affecting the lawfulness of processing based on consent before its withdrawal.

In some instances, you may be required to provide us with Personal Data for processing as described above, in order for us to be able to provide you with all of our services, and for you to use all the features of our website.

    **A.   International Transfers of Personal Data.**   The nature of Bluegreen's business means that Personal Data that we collect through our website or otherwise through our services, from citizens of the EU and Switzerland, will be transferred to the United States. We take appropriate steps to ensure that recipients of your Personal Data are bound to duties of confidentiality, and we implement measures to ensure that any transferred Personal Data, remains protected and secure.

    **B.   Your Rights.**   Under data protection laws in the European Union and Switzerland, you have certain rights related to your Personal Data. You may be entitled to exercise the right to:

        1.   Object to the processing of your Personal Data (for instance, where the basis of our processing is our legitimate interests, see section above for "Legal Basis for Data Processing")

        1.   Request to restrict the processing of your Personal Data

        2.   Request that we update your Personal Data, if you believe that it is not accurate, or is incomplete

        3.   Request access to your Personal Data, if you want to retrieve a copy of it, or to receive confirmation from us that we are processing your information, and how You may request access to your Personal Data, but we cannot provide you with information relating to others that you did not provide to us, or information from others who have not consented to our disclosing their information to you.

        4.   Request erasure of your Personal Data. We cannot erase certain data, for example, if we must retain it for legal purposes.

    **C.   Requests to Exercise Your Rights.**   When we receive a request from you to exercise one of the rights enumerated above, we will indicate the Personal Data that we need from you to validate your identity, and provide you with information on what actions, if any, we intend to take on your request. We will respond to your request as quickly as possible, but no later than 30 days after we receive your request. In certain circumstances, we might have to extend the time by an additional two months, if your request is particularly complex. If you consider that our processing of your data infringes upon applicable law, you may submit a complaint to a supervisory authority as provided in the applicable laws.

NOT A CERTIFIED COPY

**BLUEGREEN PRIVACY NOTICE OPT-OUT MAIL-IN FORM**

☐ Please do not disclose non-public personal financial information about me to any nonaffiliated third parties, except as permitted or required by law.

☐ Please do not disclose information about my creditworthiness with your affiliates for their everyday business purposes.

Name: _____

Address: _____

_____

_____

Bluegreen Resorts Owner No.: _____

Mail to:        Bluegreen Vacations Corporation
               Attn:  Mortgage Operations
               4960 Conference Way North, Suite 100
               Boca Raton, Florida 33431-3311

4

Cibola Vista Resort & Spa

PRIVACY NOTICE

Cibola Vista Resort & Spa, L.L. C. ("Cibola Vista") is the developer and seller of timeshare interests in Cibola Vista Resort & Spa (recorded as CV Condominiums). By providing seller financing on some timeshare interest purchases, Cibola Vista may be deemed to be a financial institution under federal financial privacy laws. Your privacy is important to Cibola Vista, and Cibola Vista wants you to be fully informed regarding its use of your personal information.

While collecting information about you is a part of the timeshare interest purchase and finance process and is necessary in order for us to serve you, we are committed to maintaining your personal and account information in a secure manner. To give you opportunities to access products and services that may enhance your timeshare ownership experience, Cibola Vista shares nonpublic information about you within the company and its affiliates and outside of the company with non-affiliated companies or organizations. We want you to understand the information we collect, what information we may share, and your rights with regard to that process.

**Information We Collect about You**

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms or from your written, oral, or electronic communications with us, such as your name, address, social security number, assets, and income;
- Information about your transactions with us, our affiliates, or others, such as your account balance and payment history; and
- Information we receive from a consumer credit or other reporting agency, such as your creditworthiness and credit history.

**Disclosure of Nonpublic Personal Information About You**

We may disclose all of the information that we collect, as described above, to the following types of third parties:

- Financial service providers, such as credit card companies;
- Non-financial companies, such as retailers, direct marketers, airlines, hotels, cruise lines, travel agencies and providers, rental car companies, and vacation exchange companies; and
- Others, such as trade associations and non profit organizations.

We also may disclose nonpublic personal information about you to nonaffiliated third parties, as permitted by law, for the following types of purposes:

- To companies that work for us in the process of effecting your timeshare purchase transaction, providing product fulfillment, or servicing your account;
- To companies with which we have joint marketing agreements, subject to requirements that such parties maintain the privacy of your nonpublic personal information and restrict their use of that information to the purposes set forth in our contractual agreement;

# **bluegreen**vacations®

### MAINTENANCE FEE AND CLUB DUES WAIVER
### CERTIFICATE

**THIS MAINTENANCE FEE AND CLUB DUES WAIVER CERTIFICATE is** provided in connection with your purchase today. Club Developer offers to waive your obligation to pay the first six months of Maintenance Fees and Club Dues.

In order to take advantage of this offer you _only_ need to do one of the following:

1. Pay your first six monthly payments of principal and interest in connection with your purchase money promissory note in a timely manner; or

2. Pay the purchase price of the Property in full; or

3. Pay off your purchase money promissory note in full within six (6) months from today.

BY SIGNING BELOW, PURCHASER ACKNOWLEDGES READING AND UNDERSTANDING THE TERMS AND CONDITIONS OF THIS CERTIFICATE.

**PURCHASER:**

_____     04/22/2019
DIAMOND A WHITE                              Date

**CLUB DEVELOPER:**
**BLUEGREEN VACATIONS UNLIMITED, INC.,**
a Florida corporation

By: _____     04/22/2019
        Authorized Agent                      Date

Maintenance Fees and Club Dues are billed based on Owner Use Year. The Bluegreen Vacation Club is on a fiscal year beginning November 1st. All terms not defined herein have the same meanings ascribed to them in the Bluegreen Vacation Club Owner Beneficiary Agreement and the Bluegreen Vacation Club Multi-Site Public Offering Statement, and related documents.

Copyright    ©    2005    -    2019    Bluegreen    Vacations    Corporation.    All    rights    reserved.

FBS MF& CD Waiver Certificate
WHITE  CONTRACT # 2622656



*Bonus Certificate*

Bluegreen Vacations® is pleased to award

Diamond A White

4,000 Bluegreen Vacation Points
for your use in Blue or White Vacation Seasons only

To redeem this Bonus Certificate and the use rights associated herewith, you must sign in to bluegreenvacations.com and activate this offer any time between your first and second owner anniversary date. (Note: Your owner anniversary date is the first day of the month following purchase), and you must be a member in good standing of the Bluegreen Vacation Club, including, but not limited to, having made timely and prompt payment of club dues, maintenance fees, and, if applicable, timeshare loan payments from and after the date of purchase. The use rights associated with this certificate are valid from the time of activation until your second owner anniversary date. This offer is subject to availability. Vacation Point requirements at the time of reservation, and reservation rules. Minimum stay requirements may vary. Available inventory and participating resorts may change without notice. This offer is not transferable and may not be redeemed for cash. Unused Vacation Points associated with this certificate cannot be saved.

BLUEGREEN VACATIONS UNLIMITED, INC.

**Michael Sarazin**

AUTHORIZED REPRESENTATIVE

**bluegreen**vacations®

**April 22, 2019**

DATE OF ISSUE

NASAMAA1 4/4 Promo Code J

CM-04/22/2019

4000 Point Bonus Cert.
05/2014



**bluegreen**vacations™

share happiness

## AIRLINE CERTIFICATE BENEFIT

### ACKNOWLEDGEMENT OF RECEIPT

I acknowledge that I have received my Airline Certificate and the Terms and Conditions thereof. After reviewing these documents, my signature below indicates, I acknowledge, understand and agree to the Terms and Conditions that must be met in order to utilize the Airline Certificate.

_____    04/22/2019
Purchaser                                         Date
**DIAMOND A WHITE**

Incentive – Airline Cert Acknowledgement

# JOSEPH ABRUZZO
### CLERK OF THE CIRCUIT COURT & COMPTROLLER
PALM BEACH COUNTY

**CASE NUMBER: 50-2023-CA-010711-XXXX-MB**
**CASE STYLE: WHITE, DIAMOND V BLUEGREEN VACATION UNLIMITED INC**

| Search Criteria | Search Results | Case Info | Party Names | Dockets & Documents | Case Fees | Court Events |

View documents and order certified copies*. See our eCaseView FAQ for step-by-step guidance and information about what documents are available online.

**Document Icons**

- 🗎 Document available. Click icon to view.
- 🛒 Add a certified copy of the document to your shopping cart.
- 🔒 Document is Viewable on Request (VOR). Click to request.
- ⏯ VOR document is being reviewed. Click to be notified when available.

🛒 ✅ 🗎

Public = 🗎          VOR = 🔒          In Process = ⏯          Page Size: All

| | | DIN | Effective Date | Description | Notes |
|---|---|---|---|---|---|
| 🗎 | 🛒 | 2 | 05/22/2023 | CIVIL COVER SHEET | |
| 🗎 | 🛒 | 3 | 05/22/2023 | COMPLAINT | AND DEMAND FOR JURY TRIAL F/B PLT |
| | | 1 | 05/30/2023 | DIVISION ASSIGNMENT | AI: Circuit Civil Central - AI (Civil) |
| 🗎 | 🛒 | 4 | 05/30/2023 | PAID $401.00 ON RECEIPT 4914837 | $401.00 4914837 Fully Paid |
| 🗎 | 🛒 | 5 | 08/21/2023 | ORDER DIRECTING SERVICE | ORDER DIRECTING PLAINTIFF TO EFFECT SERVICE UPON DEFENDANT JAMES NUTT CIRCUIT 08/21/2023 |
| 🗎 | 🛒 | 6 | 10/06/2023 | ORDER OF DISMISSAL BOOK 34619 PAGE 86-86 | CURLEY DTD 10/06/2023 DISMISSED WITHOUT PREJUDICE. COC SHALL CLOSE THE FILE |
| | | 7 | 10/06/2023 | DISPOSED BEFORE OTHER | DBO - DISPOSED BEFORE OTHER |
| 🗎 | 🛒 | 8 | 11/06/2024 | MOTION PLAINTIFF'S MOTION TO REOPEN | PLAINTIFF'S MOTION TO REOPEN |
| 🗎 | 🛒 | 9 | 11/06/2024 | NOTICE OF HEARING | NOTICE OF UMC HEARING 11/26/2024 TBD |
| 🗎 | 🛒 | 10 | 11/27/2024 | ORDER G CURLEY DTD. 11/27/24 MOTION TO REOPEN IS GRANTED. | G CURLEY DTD. 11/27/24 MOTION TO REOPEN IS GRANTED. |
| | | 11 | 11/27/2024 | ADDITIONAL COMMENTS | CASE IS REOPENED PER ORDER DTD. 11/27/24 |
| 🗎 | 🛒 | 12 | 12/02/2024 | COMPLAINT | AMENDED FB PLT |
| 🗎 | 🛒 | 13 | 12/03/2024 | DCM DESIGNATION TO THE GENERAL TRACK WITH JURY TRIAL ORDER | G. JOSEPH CURLEY, JR 12/03/2024 |
| 🗎 | 🛒 | 14 | 12/16/2024 | SUMMONS ISSUED | stephparsons13@gmail.com AS TO DFT |

| | | 15 | 12/17/2024 | PAID $10.00 ON RECEIPT 5589745 | $10.00 5589745 Balance Due: $50.00 |
| | | 16 | 12/17/2024 | MOTION PLAINTIFF'S MOTION TO CORRECT SCRIVENER'S ERROR | PLAINTIFF'S MOTION TO CORRECT SCRIVENER'S ERROR |
| | | 17 | 12/18/2024 | REQUEST TO PRODUCE | TO DEFENDANT FILED BY PLT |
| | | 18 | 12/18/2024 | NOTICE OF FILING INTERROGS | TO DEFENDANT FILED BY PLT |
| | | 19 | 12/18/2024 | NOTICE OF APPEARANCE CIVIL | AS COUNSEL FOR PLAINTIFF AND DESIGNATION OF EMAIL ADDRESSES FILED BY ATTY PARSONS |
| | | 21 | 12/24/2024 | SERVICE RETURNED (NUMBERED) | RETURN OF SERVICE SERVED TRAVEL + LEISURE, CO. C/O REGISTERED AGENT - 12/16/2024 |
| | | 20 | 12/26/2024 | SERVICE RETURNED (NUMBERED) | RETURN OF SERVICE SERVED HILTON GRAND VACATIONS - 12/19/2024 |

517-e00422e2-3261-4507-97f0-db4d0e6d8687

## FORM 1.997.   CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.   CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>FIFTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>PALM BEACH</u>   COUNTY, FLORIDA

<u>Diamond White</u>
Plaintiff                                                          Case # _____
                                                                   Judge _____

vs.
<u>Bluegreen</u>
 Defendant

### II.   AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☒ $50,001- $75,000
☐ $75,001 - $100,000
☐ over $100,000.00

### III.   TYPE OF CASE   (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

### COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**    **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.**    **NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

   7

**VI.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.**    **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Tyler Stiglich          Fla. Bar # 0119969
        Attorney or party             (Bar # if attorney)

Tyler Stiglich              05/30/2023
  (type or print name)            Date

NOT A CERTIFIED COPY



**JOSEPH ABRUZZO**

# RECEIPT
4914837

CLERK OF THE CIRCUIT COURT & COMPTROLLER
PALM BEACH COUNTY, FLORIDA

Printed On:
05/30/2023 11:37
Page 1 of 1

| Receipt Number: 4914837 - Date 05/30/2023  Time 11:37AM | | | | |
|---|---|---|---|---|
| **Received of:** | The Timeshare Law Firm PLLC<br>3270 HWY A1A<br>Melbourne Beach, FL 32951 | | | |
| **Cashier Name:** | ADMIN | **Balance Owed:** | | 401.00 |
| **Cashier Location:** | E-Filing | **Total Amount Paid:** | | 401.00 |
| **Receipt ID:** | 11295801 | **Remaining Balance:** | | 0.00 |
| **Division:** | AI: Circuit Civil Central - AI(Civil) | | | |

| Case# 50-2023-CA-010711-XXXX-MB -- PLAINTIFF/PETITIONER: WHITE, DIAMOND | | | |
|---|---|---|---|
| **Item** | **Balance** | **Paid** | **Bal Remaining** |
| Fees | 401.00 | 401.00 | 0.00 |
| **Case Total** | **401.00** | **401.00** | **0.00** |

| Payments | | |
|---|---|---|
| **Type** | **Ref#** | **Amount** |
| EFiling_CREDITCARD | 7842034 | **401.00** |
| **Total Received** | | **401.00** |
| **Total Paid** | | **401.00** |



**How was your service today?**  Please visit www.mypalmbeachclerk.com/survey or send your feedback to clerkweb@mypalmbeachclerk.com.
**For office locations and information about Clerk & Comptroller services:**
Visit www.mypalmbeachclerk.com or call (561) 355-2996.

Filing # 180166005 E-Filed 08/21/2023 11:46:06 AM

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION: "AI"
CASE NO.: 50-2023-CA-010711-XXXX-MB

DIAMOND WHITE,
        Plaintiff/Petitioner
vs.
BLUEGREEN VACATION UNLIMITED INC,
BLUEGREEN VACATION CLUB,
        Defendant/Respondents.

_____/

## ORDER DIRECTING PLAINTIFF TO EFFECT SERVICE UPON DEFENDANT(S)
### (ODS)

**NOTE: Although this Order was entered by the Administrative Judge for the Circuit Civil Divisions, the parties should continue presenting all motions, proposed orders or questions relating to this matter to the Judge presiding over the division to which the case remains assigned.**

   **THIS CAUSE** came before the Court upon a *sua sponte* review of the court file. Pursuant to Administrative Order 3.107, case review for Lack of Service will take place after Ninety (90) days. Ninety (90) days has elapsed since the filing of the complaint, the Defendant(s) has not been served with process. Plaintiff is placed on notice that it must complete service required by Florida Rule of Civil Procedure 1.070(j).

   **IT IS HEREBY ORDERED AND ADJUDGED** that

1. Pursuant to Florida Rule of Civil Procedure 1.070(j), the Plaintiff is directed to serve process on Defendant(s) within one hundred and twenty (120) days from the date of filing of the Complaint.

2. If Plaintiff is unable to serve by the one hundred and twenty (120) day deadline, Plaintiff may file a motion showing good cause or excusable neglect why the Defendant(s) has not yet been served with process. The motion must contain specific detail showing good cause or excusable neglect for the failure and what steps are being undertaken to serve. No extensions will be granted unless a timely motion is filed which lays out the required detail. In the event that Plaintiff elects to file a motion for good cause or excusable neglect, the Plaintiff <u>must set the same motion for hearing</u> pursuant to divisional instructions on the Uniform Motion Calendar and must occur no later than thirty (30) days from the date of this Order.

   Failure to obtain an Order Granting Extension of Time or serve process on all Defendant(s) in the time frames set forth above will result in an Order of Dismissal of the

*** FILED: PALM BEACH COUNTY, FL  JOSEPH ABRUZZO, CLERK. 08/21/2023 11:46:06 AM ***

case against the unserved Defendant(s).

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida.

**ADMINISTRATIVE JUDGE FOR DIVISIONAL JUDGE**

50-2023-CA-010711-XXXX-MB    08/21/2023
James Nutt   Circuit Judge

50-2023-CA-010711-XXXX-MB    08/21/2023
James Nutt
Circuit Judge

**COPIES TO:**

| | |
|---|---|
| THE TIMESHARE LAW FIRM, PLLC | TYLER STIGLICH, ESQ.   stiglich21@gmail.com<br>3270 HWY A1A    litigation@thetimesharelawfirm.<br>Melbourne Beach, FL 32951 com |

NOT A CERTIFIED COPY

Filing # 183418758 E-Filed 10/06/2023 02:00:00 PM

IN THE CIRCUIT COURT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION: "AI"
CASE NO.: 50-2023-CA-010711-XXXX-MB

DIAMOND WHITE,
    Plaintiff/Petitioner
vs.
BLUEGREEN VACATION UNLIMITED INC,
BLUEGREEN VACATION CLUB,
    Defendant/Respondents.
_____/

### ORDER OF DISMISSAL WITHOUT PREJUDICE AND
### ORDER DIRECTING THE CLERK OF COURT TO CLOSE THE FILE
(ODIS)

**THIS CAUSE** came before the Court upon a *sua sponte* review of the court file and the Court's previous Order Directing Plaintiff to Effect Service upon Defendant(s). The Order directed the Plaintiff to effectuate service of process or to show good cause as to why process had not been effectuated. One hundred twenty (120) days have elapsed since the filing of the complaint, the Defendant(s) has not been served with process and this Court's Order extending the time to serve has expired. Further, the Plaintiff has failed to show good cause as to why process had not been effectuated. Based on the foregoing it is,

**ORDERED AND ADJUDGED** that this Case is **DISMISSED** without prejudice for failure to comply with this Court's *Order Directing Plaintiff to Effect Service upon Defendant(s)*. The Clerk of Court shall close the file.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida.

50-2023-CA-010711-XXXX-MB   10/06/2023
G. Joseph Curley, Jr.   Circuit Judge

50-2023-CA-010711-XXXX-MB   10/06/2023
G. Joseph Curley, Jr.
Circuit Judge

**COPIES TO:**
THE TIMESHARE LAW    TYLER STIGLICH, ESQ.   stiglich21@gmail.com
FIRM, PLLC    3270 HWY A1A   litigation@thetimesharelawfirm.
    Melbourne Beach, FL 32951 com

Page **1** of **1**

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

DIAMOND WHITE,

Plaintiff,

vs.

BLUEGREEN VACATION UNLIMITED,
INC., d/b/a BLUEGREEN RESORTS and
BLUEGREEN VACATION CLUB,

Defendant.

_____/

Case No.: 50-2023-CA-010711-XXXX-MB
Division: AI

### PLAINTIFF'S MOTION TO REOPEN

COMES NOW, Plaintiff, DIAMOND WHITE, ("Plaintiff"), by and through the undersigned counsel, moves this Honorable Court to Reopen this instant action and in support thereof states as follows:

1.      Plaintiff filed her *Complaint* on May 22, 2023.

2.      On August 21, 2023, this Honorable Court issued an *Order Directing Service* on the Defendant.

3.      Due to excusable neglect, the counsel for the undersigned firm, but not the undersigned counsel, failed to perfect service upon the Defendant and has since left the undersigned firm.

4.      As a result, this Honorable Court issued an *Order of Dismissal* on October 6, 2023.

5.      The filing fee for this instant case has already been paid and reopening the case would not prejudice either party while having to refile a new case would prejudice Plaintiff.

6.      The Defendant in this matter has yet to be served and therefore would not be prejudiced by the reopening of this instant action.

WHEREFORE, Plaintiff, DIAMOND WHITE, respectfully requests that this Honorable Court, (1) grant this motion; (2) reopen this case and direct the Clerk to set this case as active and (3) for such other and further relief as the Court deems just and proper.

NOT A CERTIFIED COPY

## CERTIFICATE OF SERVICE

I certify that the foregoing document has been furnished to the parties listed below on November 6, 2024 through US Regular Mail.

Corporation Service Company
Registered Agent for the Defendant
1201 Hays St.
Tallahassee, FL 32301-2525

Hilton Grand Vacations f/k/a Bluegreen Resorts
6355 MetroWest Boulevard
Suite 180
Orlando, FL 32835

Respectfully Submitted,

/s/Stephanie Parsons, Esq.
Stephanie Parsons, Esquire
FBN 1015688
The Timeshare Law Firm, L.L.C.
3270 HWY A1A, Suite 11
Melbourne Beach, FL 32951
(321) 224-1111
info@theabramsfirm.com
litigation@thetimesharelawfirm.com
stephparsons13@gmail.com
Attorneys for Plaintiff

## IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

DIAMOND WHITE,

Plaintiff,

vs.

BLUEGREEN VACATION UNLIMITED,
INC., d/b/a BLUEGREEN RESORTS and
BLUEGREEN VACATION CLUB,

Defendant.

_____/

Case No.: 50-2023-CA-010711-XXXX-MB
Division: AI

### NOTICE OF UMC HEARING

**YOU ARE HEREBY NOTIFIED** that the undersigned attorney has called up for hearing:

**DATE:** Tuesday, November 26, 2024

**JUDGE:** Honorable G. Joseph Curley

**PLACE:** Zoom

**ZOOM LINK:** Meeting ID: 88244742921

**SPECIFIC MATTER TO BE HEARD:** Plaintiff's *Motion to Reopen* filed on November 6, 2024

### CERTIFICATE OF SERVICE

I certify that the foregoing document has been furnished to the parties listed below on November 6, 2024, through US Regular Mail.

Corporation Service Company
Registered Agent for the Defendant
1201 Hays St.
Tallahassee, FL 32301-2525

Hilton Grand Vacations f/k/a Bluegreen Resorts
6355 MetroWest Boulevard
Suite 180
Orlando, FL 32835

Respectfully Submitted,

/s/Stephanie Parsons, Esq.
Stephanie Parsons, Esquire
FBN 1015688
The Timeshare Law Firm, L.L.C.
3270 HWY A1A, Suite 11
Melbourne Beach, FL 32951
(321) 224-1111
info@theabramsfirm.com
litigation@thetimesharelawfirm.com
stephparsons13@gmail.com
Attorneys for Plaintiff

**IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT**
**IN AND FOR PALM BEACH COUNTY, FLORIDA**

DIAMOND WHITE,                     Case No.: 50-2023-CA-010711-XXXX-MB
                                   Division: AI

Plaintiff,

vs.

BLUEGREEN VACATION UNLIMITED,
INC., d/b/a BLUEGREEN RESORTS and
BLUEGREEN VACATION CLUB,

Defendant.

_____/

**ORDER ON PLAINTIFF'S MOTION TO REOPEN**

 **THIS CAUSE** having come before this Court on November 26, 2024 at 8:30a.m. and the Court having reviewed the file and otherwise being duly advised it is hereupon **ORDERED AND ADJUDGED** that:

 1. Counsel for Plaintiff, Stephanie Parsons, Esq. appeared and Defendant nor their representative appeared despite proper notice of the hearing set on this instant matter.

 2. Plaintiff's *Motion to Reopen* filed on November 6, 2024, is hereby GRANTED.

 3. Plaintiff shall have thirty (30) days from the issuance of this Order to serve her *Complaint* filed on May 22, 2023.

 4. This order shall be *nunc pro tunc* to the date of *Order of Dismissal* or October 6, 2023.

 **DONE AND ORDERED** in Palm Beach County, Florida on this ___ day of November, 2024.

50-2023-CA-010711-XXXX-MB    11/27/2024
                                   G. Joseph Curley, Jr.    Circuit Judge

50-2023-CA-010711-XXXX-MB    11/27/2024
G. Joseph Curley, Jr.
Circuit Judge

_____
CIRCUIT COURT JUDGE

Copies furnished to:

Corporation Service Company
Registered Agent for the Defendant
1201 Hays St.
Tallahassee, FL 32301-2525

FILED: PALM BEACH COUNTY, FL, JOSEPH ABRUZZO, CLERK, 11/27/2024 03:42:34 PM

Hilton Grand Vacations f/k/a Bluegreen Resorts
6355 MetroWest Boulevard
Suite 180
Orlando, FL 32835

Stephanie Parsons, Esq.
litigation@thetimesharelawfirm.com
info@thetimesharelawfirm.com



IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION: "AI"
CASE NO.: 50-2023-CA-010711-XXXX-MB

DIAMOND WHITE,
    Plaintiff/Petitioner

vs.

BLUEGREEN VACATION UNLIMITED INC,
BLUEGREEN VACATION CLUB,
    Defendant/Respondents.

_____/

### ORDER IMPLEMENTING DIFFERENTIATED CASE MANAGEMENT PLAN, DESIGNATING CASE TO THE GENERAL TRACK, ORDER SETTING CALENDAR CALL AND CASE MANAGEMENT CONFERENCE AND DIRECTING PRETRIAL AND MEDIATION PROCEDURES (DCMGJT)

(THIS ORDER IS BEING ENTERED TO COMPLY
WITH ADMINISTRATIVE ORDER 3.110)

**THIS MATTER** is a Circuit Civil case calling for a jury trial. Accordingly, it is

**ORDERED AND ADJUDGED** that pursuant to Administrative Order 3.110 (as amended), this case is designated to the **GENERAL TRACK**. The deadlines established by this Order are to ensure the case is **disposed of within 18 months.** To that end, the following procedures and deadlines shall be strictly observed:

I. **SERVICE OF THIS ORDER, ACTIVE CASE MANAGEMENT AND NON-COMPLIANCE**

**Plaintiff/Petitioner is directed to serve this Order** upon each Defendant/Respondent with the Initial Complaint/Petition and Summons. The deadlines and procedures set forth herein are firm and may be modified only upon a showing of a good faith attempt to comply with the deadlines or demonstration of a significant change of circumstances and through the process established in the 15th Circuit's Administrative Order 3.110 (as amended).

The parties are expected to actively manage the case and to confer early and often to ensure compliance with this order and timely resolution of the case. The parties and counsel are expected to govern themselves at all times with a spirit of cooperation, professionalism, and civility. They are expected to accommodate each other whenever reasonably possible and eliminate disputes by reasonable agreements.

**Self-Represented/Pro se litigants** (i.e. those without counsel) are held to the same obligations imposed upon counsel.

**Motions to extend deadlines** must be filed *prior* to the deadline. Untimely motions will be denied absent compelling circumstances and showing of good cause.

*** FILED: PALM BEACH COUNTY, FL  JOSEPH ABRUZZO, CLERK. 12/03/2024 01:25:25 PM ***

**NONCOMPLIANCE WITH THIS ORDER, ABSENT A SHOWING OF GOOD CAUSE, MAY RESULT IN DISMISSAL OF THE ACTION, THE STRIKING OF PLEADINGS, WITNESSES, OR EXHIBITS, REMOVAL OF THE CASE FROM THE DOCKET, DEFAULT OR ANY OTHER APPROPRIATE SANCTION.**

The failure to act in good faith and comply with this order must be reported, if not resolved through a conference of the parties and good faith conferral, by filing a **"Suggestion of Non-Compliance with Pre-Trial Order"** that must be set for hearing in a timely manner. The Suggestion must name the non-compliant person, describe the act of non-compliance, be served upon all parties and sent to the Court's chambers. Responses may only be submitted upon request of the Court. Failure to correct any non-compliance before the hearing may result in sanctions as described above. The parties will notify the Court immediately if non-compliance is cured; if cured more than 7 days before the hearing, the hearing may be cancelled.

II. **SCHEDULING, CONTINUANCES AND PRETRIAL DEADLINES**

**A CASE MANAGEMENT CONFERENCE and CALENDAR CALL will be held on September 12, 2025**. The parties must be ready to try the case by that day. The specific time of Case Management Conference and procedures for conducting Calendar Call can be found on the Division's webpages at www.15thecircuit.com. The Calendar Call may be conducted in-person or by e-calendar. <u>This Order serves as notice to the parties that failure to attend the Case Management Conference and Calendar Call will result in an Order of Dismissal without prejudice, or entry of default, without further notice or hearing. See Fla. R. Civ. P. 1.200(j)(6).</u>

The trial period begins the first business day of the immediately following week after the above-listed Case Management Conference and Calendar Call, unless otherwise described in the divisional instructions or by court order.

**TRIAL CONTINUANCES:** If a case cannot be ready for trial by the Calendar Call despite all good faith efforts, a motion to continue trial must be set for a Differentiated Case Management (DCM) Conference as described in the 15th Circuit's Administrative Order 3.110 (as amended) and the next paragraph. Any motion to continue the trial must comply with Fla. R. Civ. P. Rule 1.460, including that they are signed by the client. The Motion must be filed and the DCM Conference set no more than **30 DAYS** from the last defendant being served or as soon as circumstances giving rise to the need for a continuance becomes known and only for good cause. Every motion for a continuance must include a proposed Amended DCMO resetting each pretrial deadline that remains applicable and indicating the month the case can be ready for trial.

**DCM CONFERENCES:** DCM conferences are scheduled through the Circuit's Online Scheduling System under DCM- Case Management Conference Scheduling. No less than ten (10) days in advance of the DCM Conference the parties must file with the Clerk a Joint Status Report that:

1. Concisely updates the Court on the status of the case,
2. Identifies pending motions and other matters the Court needs to address, and
3. If applicable, provides a proposed revised pretrial schedule.

The parties must upload the Joint Status report at least 7 days in advance of a DCM

Case No. 50-2023-CA-010711-XXXX-MB

Conference through the e-courtesy feature of the Circuit's Online Scheduling System. The parties are to be prepared at the DCM Conference to address the topics listed in Rule 1.200(a) and for the court, at its discretion, to hear or set for hearing any pending motions.

**The following deadlines (discussed in detail below) apply unless otherwise modified by the Court:**

| | EVENTS | DESCRIPTION | COMPLETION DEADLINE |
|---|---|---|---|
| 1. | Service of Complaint | See Part III.A, infra | expired or Service under extension is only by court order. |
| 2. | Pleading Amendments/ Adding parties | See Part III.B, infra | January 10, 2025 |
| 3. | Resolution of all motions/objections directed to the pleadings *(i.e. to dismiss or strike)* and pleadings closed * | See Part III.B, infra | February 28, 2025 |
| 4. | Expert Witnesses and Compulsory Examinations | See Part III.D, infra | May 15, 2025 |
| 5. | Witness & Exhibit Lists | See Part III.C, infra | May 15, 2025 |
| 6. | Rebuttal Witness Lists | See Part III.E, infra | June 4, 2025 |
| 7. | Filing Summary Judgment & *Daubert* Motions | See Part III.J, infra | June 14, 2025 |
| 8. | Discovery Cut-Off | See Part III.H, infra | June 14, 2025 |
| 9. | Pre-Trial Meet & Confer | See Part III.I, infra | August 13, 2025 |
| 10. | Deposition Designations | See Part III.G, infra | August 23, 2025 |
| 11. | Deadline for Mediation | See Part IV, infra | September 2, 2025 |
| 12. | Deadline to hear ALL Motions | See Part III.J, infra | September 7, 2025 |
| 13. | Jury Instructions and Verdict Form | See Part III.O, infra | September 9, 2025 |
| 14. | Trial Ready Date ** | See Part II, supra | September 12, 2025 |

**Fla. R. Gen. Prac. & Jud. Admin. Rule 2.514 governs if any deadlines falls on a weekend or holiday.**

\* The parties must expeditiously address any motions directed to the pleadings. Defensive motions under Rule 1.140 of the Fla. R. Civ. P., motions to extend time to file a defensive motion or pleading, and any other motion preventing the matter from being at issue shall be set for hearing within **five (5) days** of filing. The motion should be scheduled for hearing at the earliest date that the Court and parties are available.

\*\* The Court reserves the authority to expedite the trial setting and amend the pretrial deadlines accordingly.

III. **UNIFORM PRETRIAL PROCEDURES**

A. **Timely Service and Defaults:**

Parties must make reasonable efforts to ensure speedy service. Each return of service must be separately filed for each defendant. If service is not completed within 90 days, an Order will be issued directing service by the **120 DAY DEADLINE**. Failure to comply will result in dismissal of the case or party for lack of service. Any motions to extend the deadline for service must specify why service could not have been effectuated, what is being done to effectuate service and request only that amount of additional time necessary.

If all defendants become defaulted, a Motion for Default Final Judgment along with supporting documentation must be filed within **30 days** of the last default and set for hearing at the next available hearing time.

B. **Amendment of Pleadings, Motions Directed at Pleadings and Notice for Trial:**

Any Motions to Amend Pleadings to add parties, must be filed no later than the first business day **180 DAYS AFTER THE CASE IS FILED**.

The parties must expeditiously address any other motions directed to the pleadings. Defensive motions under Rule 1.140, Fla. R. Civ. P., motions to extend time to file a defensive motion or pleading, and any other motion preventing the matter from being at issue must be set for hearing within **5 days** of filing to be heard at the earliest date that the Court and parties are available.

If the pleadings are not closed and the case not at issue **250 DAYS AFTER FILING**, the parties must appear for a DCM Conference to be noticed and held in accordance within the 15th Circuit's Administrative Order 3.110 and Divisional Instructions located on the Circuit's website for the Division to which the case is assigned.

C. **Exhibits and Witnesses.** On the last business day no later than **120 DAYS PRIOR TO CALENDAR CALL**, the parties must exchange lists of all trial exhibits, names and addresses of all trial witnesses.

D. **Expert Witnesses and Compulsory Medical Examinations.** If Expert Witnesses or Compulsory Medical Examinations are anticipated, the Parties must confer and establish a schedule for completing related discovery, including deadlines for disclosures, written discovery, depositions and motions directed at Experts or Compulsory Medical Examiners that will result in the completion of Expert/CME Discovery and resolution of Motions directed at them at least **120 DAYS BEFORE TRIAL**.

If agreed, the parties must submit a proposed Expert/CME Scheduling Order for entry by the Court. If not, the parties must appear for a DCM Case Management Conference.

**Expert Disclosures:** In addition to names and addresses of each expert retained to formulate an expert opinion with regard to this cause, both on the initial listing and on rebuttal, the parties must provide:

1. The subject matter about which the expert will testify;
2. The substance of facts and opinions to which the expert will testify;
3. A summary of the grounds for each opinion;
4. A copy of any written reports issued by the expert; and

     5. A copy of the expert's curriculum vitae.

**One Expert Per Specialty:** The parties will be limited to one expert witness per specialty unless they obtain leave of Court to list and call more than one expert witness per specialty, no later than 60 days prior to calendar call.

E. **Rebuttal Witnesses and Exhibits.** On the last business day no later than **100 DAYS PRIOR TO CALENDAR CALL**, the parties must exchange lists of names and addresses of all rebuttal witnesses and list of any rebuttal exhibits.

F. **Additional Exhibits, Witnesses Or Objections.** At trial, the parties will be strictly limited to exhibits and witnesses disclosed and objections reserved on the schedules attached to the Pre-Trial Stipulation prepared in accordance with paragraphs D and E, absent agreement specifically stated in the Pre-Trial Stipulation or order of the Court upon good cause shown. Failure to reserve objections constitutes a waiver. A party desiring to use an exhibit or witness discovered after counsel have conferred pursuant to paragraph D must immediately furnish the Court and other counsel with a description of the exhibit or with the witness' name and address and the expected subject matter of the witness' testimony, together with the reason for the late discovery of the exhibit or witness. Use of the exhibit or witness may be allowed by the Court for good cause shown or to prevent manifest injustice.

G. **Deposition Designations.** No later than **20 DAYS PRIOR TO CALENDAR CALL**, each party must serve designation of depositions, or portions of depositions, each intends to offer as testimony. No later than **10 DAYS PRIOR TO CALENDAR CALL**, each opposing party is to serve any counter (or "fairness") designations to portions of depositions designated, together with objections to the depositions, or portions thereof, originally designated. No later than **5 DAYS BEFORE** calendar call, each party must serve any objections to counter designations served by an opposing party.

H. **Discovery Cutoff.** Unless otherwise agreed in the Pre-Trial Stipulation, all discovery must be completed no later than **90 DAYS PRIOR TO CALENDAR CALL** absent agreement for later discovery specifically stated in the Pre-Trial Stipulation or for other good cause shown. Absent unforeseeable, exigent circumstances, the failure to complete discovery is not grounds for a continuance.

I. **Pre-Trial Meet and Confer.** On the last business day no later than **30 DAYS PRIOR TO CALENDAR CALL**, the parties must confer and:

    1. Discuss settlement;

    2. Simplify the issues and stipulate, in writing, as to as many facts and issues as possible;

    3. Prepare a Pre-Trial Stipulation in accordance with paragraph E; and

    4. List all objections to trial exhibits.

J. **Motions:** The Parties must plan for, file and timely set hearings for any motions they expect the Court to address in advance of trial. **No motions will be heard the day of trial**. Few are appropriate after Calendar Call. The parties must confer early in the case and coordinate briefing and discovery schedules, as necessary, to ensure

motions are timely heard.

While motion practice is critical to the advancement and streamlining of a case, the Parties are reminded they **DO NOT have an absolute right to most motions being heard**. Failure to timely file and set motions for hearing in advance of Calendar Call will likely result the Court denying a request for hearing. Failure to file and have a motion heard is not grounds for a trial continuance.

**Summary Judgment and *Daubert* Motions** must be filed at least **90 DAYS prior to Calendar Call**. The parties shall confer regarding summary judgment motions to ensure discovery necessary for those motions is completed in advance of their filing.

**ALL MOTIONS** (including dispositive motions to motions in limine) must be heard no less than **5 days before Calendar Call**. Parties must plan and seek hearing time sufficiently in advance to ensure this deadline is met.

K. **Filing of Pre-Trial Stipulation.** It is the duty of counsel for the Plaintiff to see that the Pre-Trial Stipulation is drawn, executed by counsel for all parties, and filed with the Clerk no later than **20 DAYS PRIOR TO CALENDAR CALL**. Unilateral pretrial statements are disallowed, unless approved by the Court, after notice and hearing showing good cause. Counsel for all parties are charged with good faith cooperation in this regard. The Pre-Trial Stipulation must contain in separately numbered paragraphs:

1. A list of all pending motions including Motions *In Limine* and *Daubert* Motions requiring action by the Court and the dates those motions are set for hearing. **Motions not listed are deemed waived**.

2. Stipulated facts requiring no proof at trial which may be read to the trier of fact;

3. A statement of all issues of fact for determination at trial;

4. Lists of exhibits itemized as follows:

    a. Exhibits to be admitted by Plaintiff without objection;

    b. Exhibits to be admitted by Defendant without objection;

    c. Objected to Exhibits, with the specific basis for the objection stated.

    Note: Reasonably specific description of each exhibit is required. Non-specific descriptions like "all documents produced in discovery" will be stricken. Moreover, Objections may not be "reserved." Failure to specify an objection constitutes its waiver.

5. Each party's numbered list of trial witnesses with addresses (including all known rebuttal witnesses); the list of witnesses must be on separate schedules attached to the Stipulation;

6. A statement of total estimated time for trial, including the time needed per side for (1) jury selection, (2) opening arguments, (3) each case in chief, and (4) closing arguments.

7. Names of attorneys to try case and their contact information; and

   8.  The number of peremptory challenges per party.

   Failure to file the Pre-Trial Stipulation or a Court Approved Unilateral Stipulation as provided above may result in the case being stricken from the Court's calendar or other sanctions, including dismissal or default.

L.  **Pre-Trial Conference pursuant to Fla. R. Civ. P. 1.200**  If a pre-trial conference is set upon motion of a party or by the Court, counsel must meet and prepare a stipulation pursuant to paragraph K, infra, and file the stipulation no later than **5 DAYS BEFORE THE CONFERENCE**. Failure to request a pre-trial conference in a timely fashion constitutes a waiver of the notice of requirement of Rule 1.200. Absent prior approval, Motions for Summary Judgment will not be heard at any pre-trial conference.

M.  **Pre-Marking Exhibits.** Prior to trial, each party is to mark for identification all exhibits, as directed by the clerk. (instructions and templates found at www.mypalmbeachclerk.com/departments/courts/evidence-guidelines/civil-evidence)

N.  **Enlarged Jury Panels:** Local Rules require advance approval of the Chief Judge and Jury Office for jury panels exceeding 31 jurors. To ensure enough jurors are available, requests for enlarged jury panels must be resolved at least 6 months before calendar call.

O.  **Jury Instructions and Verdict Form:** A joint set of proposed jury instructions and a proposed verdict form must be provided to the court no less than **3 days BEFORE TRIAL** in a printed form appropriate for submission to the jury and in Microsoft Word format.

   If there is an objection to a proposed instruction, the instruction should be followed by the specific objection, a brief explanation, and a citation to legal authority. If an alternative or modified instruction is proposed, it should follow the instruction it is intended to replace.

P.  **Unique Questions Of Law.** Prior to calendar call, counsel for the parties are directed to exchange and simultaneously submit to the Court appropriate memoranda with citations to legal authority in support of any unique legal questions that may reasonably be anticipated to arise during the trial.

IV. **MEDIATION**

   A.  All parties are required to participate in mediation as follows:

       1.  The attendance of counsel who will try the case and representatives of each party with full authority to enter into a complete compromise and settlement is mandatory. If insurance is involved, an adjuster with authority up to the policy limits must attend.

       2.  At least one week prior to a scheduled mediation conference, all parties are to file with the mediator a brief, written summary of the case containing a list of issues as to each party.

       3.  All communications at the mediation conference are privileged consistent with

Florida Statutes sections 44.102 and 90.408.

4. The mediator has no power to compel or enforce a settlement agreement. If a settlement is reached, it is a responsibility of the attorneys or parties to reduce the agreement to writing and to comply with Florida Rule of Civil Procedure 1.730(b), unless waived.

B. The Plaintiff's attorney is responsible for scheduling mediation. The parties should agree on a mediator. If they are unable to agree, any party may apply to the Court for appointment of a mediator in conformity with Rule 1.720 (j), Fla. R. Civ. P. The lead attorney or party must file and serve on all parties and the mediator a Notice of Mediation giving the time, place, and date of the mediation and the mediator's name.

C. **Completion of mediation prior to calendar call is a prerequisite to trial and must be completed no later than 10 DAYS PRIOR TO CALENDAR CALL.** If mediation is not conducted, or if a party fails to participate in mediation, the case, at the Court's discretion, may be stricken from the trial calendar, pleadings may be stricken, and other sanctions may be imposed.

D. Any party opposing mediation may proceed under Florida Rule of Civil Procedure 1.700(b).

**DONE AND ORDERED** in West Palm Beach, Palm Beach County, Florida.

50-2023-CA-010711-XXXX-MB   12/03/2024
G. Joseph Curley, Jr.   Circuit Judge

50-2023-CA-010711-XXXX-MB   12/03/2024
G. Joseph Curley, Jr.
Circuit Judge

**COPIES TO:**

| THE TIMESHARE LAW FIRM, PLLC | 3270 HWY A1A Melbourne Beach, FL 32951 | stiglich21@gmail.com litigation@thetimesharelawfirm.com info@thetimesharelawfirm.com info@theabramsfirm.com |
|---|---|---|

Page **8** of **9**

Case No. 50-2023-CA-010711-XXXX-MB

# ADA NOTICE

This notice is provided pursuant to Administrative Order No. 2.207-7/22

"**If you are a <u>person with a disability</u> who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact William Hutchings, Jr., Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**"

"**Si usted es una <u>persona minusválida</u> que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con William Hutchings, Jr., 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.**"

"**Si ou se yon <u>moun ki enfim</u> ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte William Hutchings, Jr., kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711.**"

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

DIAMOND WHITE,

Plaintiff,                                          CASE NO.: 50-23-CA-010711-XXXX-MB

vs.                                                 DIV.: AI

HILTON GRAND VACATIONS, INC., f/k/a
BLUE GREEN VACATIONS
UNLIMITED INC., d/b/a BLUEGREEN
RESORTS and BLUEGREEN
VACATIONS CLUB,

Defendant.
_____/

## SUMMONS:
## ORDEN DE COMPARECENCIA: CITATION:

**TO/PARA/A:** Hilton Grand Vacations f/k/a Blue Green Vacations Unlimited, Inc.
d/b/a Bluegreen Resorts and Bluegreen Vacations Club
Corporation Service Company
Registered Agent for the Defendant
1201 Hays St.
Tallahassee, FL 32301-2525

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court.

A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case.

If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also serve a copy of your written response on the party serving this summons at:

Stephanie Parsons, Esq.
FBN 1015688

NOT A CERTIFIED COPY

3270 HWY A1A
Melbourne Beach, FL  32951
(321) 224-1111
info@theabramsfirm.com
litigation@thetimesharelawfirm.com
Lawyers for Plaintiffs

If the party serving summons has designated email address(es) for service or is represented by an attorney, you may designate email address(es) for service by or on you. Service must be in accordance with Florida Rule of Judicial Administration 2.516.

Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit Court's office. You may review these documents, upon request.

You must keep the Clerk of the Circuit Court's office notified of your current address. (You may file Designation of Current Mailing and Email Address).

## IMPORTANTE

Usted ha sido demandado legalmente, Tiene veinte (20) dias, contados a Partir del recibo de esta notificacion, para contestar la demanda adjunto, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo rotegera; si usted desea que el tribunal considere su defensa, debe

presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales, Si lo desea, puede usted consultar a un abogado immediatament. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparencen en la guia telefonica. Si desa responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante al tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

## IMPORTANT

Des poursuites judiciaries ont ete enterprises contre ous. Vous avez 20 jours consecutifts a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre response ecrite, avec mentin du numero de dossier ci-dessus et du nom des paties nommees isi, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur de Tribunal. Il y a d'autres obligations juridiques et vous pouvez reqerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

## ADA NOTICE

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact William Hutchings Jr., MPA, PHR, the Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.

Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con William Hutchings Jr., MPA, PHR, 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355- 4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.

Si ou se yon moun ki enfim ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte William Hutchings Jr., MPA, PHR, k donatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telef n li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, relè 711.

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this summons and a copy of the complaint in this lawsuit on the above-named person.

**DATED: Dec 17 2024**

JOSEPH ABRUZZO
CLERK OF THE CIRCUIT COURT

By: _____

Deputy Clerk   **JOSIE LUCCE**

NOT A CERTIFIED COPY



**JOSEPH ABRUZZO**

CLERK OF THE CIRCUIT COURT & COMPTROLLER
PALM BEACH COUNTY, FLORIDA

# RECEIPT
5589745

Printed On:
12/17/2024 06:27
Page 1 of 1

| Receipt Number: 5589745 - Date 12/17/2024  Time 6:27PM | | | |
|---|---|---|---|
| **Received of:** | Stephanie A. Parsons<br>3830 S. Highway A1A<br>4-101<br>Melbourne Beach, FL 32951 | | |
| **Cashier Name:** | ADMIN | **Balance Owed:** | 60.00 |
| **Cashier Location:** | E-Filing | **Total Amount Paid:** | 10.00 |
| **Receipt ID:** | 12021907 | **Remaining Balance:** | 50.00 |
| **Division:** | AI: Circuit Civil Central - AI(Civil) | | |

| Case# 50-2023-CA-010711-XXXX-MB -- PLAINTIFF/PETITIONER: WHITE, DIAMOND | | | |
|---|---|---|---|
| Item | Balance | Paid | Bal Remaining |
| Fees | 60.00 | 10.00 | 50.00 |
| **Case Total** | **60.00** | **10.00** | **50.00** |

| Payments | | |
|---|---|---|
| **Type** | **Ref#** | **Amount** |
| EFiling_CREDITCARD | 13421217 | 10.00 |
| **Total Received** | | **10.00** |
| **Total Paid** | | **10.00** |



**How was your service today?**  Please visit www.mypalmbeachclerk.com/survey or send your feedback to clerkweb@mypalmbeachclerk.com.
**For office locations and information about Clerk & Comptroller services:**
Visit www.mypalmbeachclerk.com or call (561) 355-2996.

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

DIAMOND WHITE,

Plaintiff,                                          CASE NO.: 50-23-CA-010711-XXXX-MB

vs.                                                 DIV.: AI

HILTON GRAND VACATIONS, INC., f/k/a
BLUE GREEN VACATIONS
UNLIMITED INC., d/b/a BLUEGREEN
RESORTS and BLUEGREEN
VACATIONS CLUB,

Defendant.

_____/

### PLAINTIFF'S MOTION TO CORRECT SCRIVENER'S ERROR

COMES NOW, Plaintiff, DIAMOND WHITE, ("Plaintiff"), hereby files this *Motion to Correct Scrivener's Error* and in support thereof states as follows:

1.      On December 2, 2024, Plaintiff filed her *Amended Complaint* against Defendant, HILTON GRAND VACATIONS, INC., ("Defendant").

2.      It was then discovered that Plaintiff inadvertently entered the wrong name on the Amended Complaint, "Diamond Nelson" in paragraph three (3) of the *Amended Complaint*.

3.      Although not critical as all parties can be properly identified in this instant action, the following scrivener's error should be corrected in the *Amended Complaint* filed in this instant action.

4.      The corrected party in paragraph three (3) of the *Amended Complaint* should reflect as follows: "DIAMOND WHITE"

WHEREFORE, Plaintiff, DIAMOND WHITE, respectfully requests that this Court grant this motion, *sua sponte*, correct the party in paragraph three (3) of the *Amended Complaint* and for such other and further relief as this Court deems just and proper.

Respectfully submitted this 17th day of December, 2024.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of this document will be personally served via certified process server to the person(s) or registered agent with the initial pleadings.

/s/Stephanie Parsons, Esq.
Stephanie Parsons, Esquire
FBN 1015688
The Timeshare Law Firm, L.L.C.
3270 HWY A1A, Suite 11
Melbourne Beach, FL 32951
(321) 224-1111
info@theabramsfirm.com
stephparsons13@gmail.com
Attorneys for Plaintiffs

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

DIAMOND WHITE,

    Plaintiff,                            CASE NO.: 50-23-CA-010711-XXXX-MB

vs.                                  DIV.: AI

HILTON GRAND VACATIONS, INC., f/k/a
BLUE GREEN VACATIONS
UNLIMITED INC., d/b/a BLUEGREEN
RESORTS and BLUEGREEN
VACATIONS CLUB,

    Defendant.

_____/

## PLAINTIFF'S FIRST REQUESTS FOR
## PRODUCTION TO DEFENDANT

    Pursuant to Fla. R. Civ. Pro. §1.351, the Plaintiff by and through their counsel of record,

respectfully submits to this Honorable Court this Plaintiff's *First Requests for Production*.

    For the purpose of this *Requests for Production* only, Plaintiff has used the definitions

and instructions as set forth below.

### I.   DEFINITIONS

1.    "All" means each and every.

2.    "Document" means any written, electronic, typed, printed, recorded pictorial or graphic

matter that is or has been in your actual or constructive possession, custody or control regardless

of the medium on which it is produced, reproduced, or stored and all originals, drafts and non-

identical copies thereof. Any document bearing marks not a part of the original text or

photographic reproduction thereof shall be treated as a separate document.

3.    "Communication" means any inquiry, discussion, conversation, negotiation,

agreement, undertaking, meeting, telephone conversation, letter, note, telegram, telex, fax, email,

text message or other form of expression, written or oral.

## II.    INSTRUCTIONS

1.      The Plaintiff's *First Request for Production* is directed to HILTON GRAND VACATIONS, INC., f/k/a BLUE GREEN VACATIONS UNLIMITED INC., d/b/a BLUEGREEN RESORTS and BLUEGREEN VACATIONS CLUB ("Defendant"), and covers all information in Defendant's possession, control, or custody including information in the possession of Defendant's officers, employees, agents, servants, representatives, attorneys, staff, or other persons directly or indirectly employed or retained by Defendant, or anyone else acting on Defendant's behalf or otherwise subject to Defendant's control, and any merged, consolidated, or acquired predecessor or successor, parent, subsidiary, division, or affiliate, including, without limitation information in any corporate archives or document collection of any kind over which Defendant exercises any authority to control access to any degree.

2.      If Defendant currently lacks the ability to provide the requested document, please state: the information currently available; the information currently unavailable; efforts the Defendant intends to make to secure the unavailable information; and when Defendant anticipates receiving the unavailable information.

3.      If Defendant or Defendant's counsel believes that any information requested by any of the following Requests for Production is privileged, please identify such information, state the privilege asserted, and state the facts giving rise to such privilege.

4.      In the event Defendant or Defendant's counsel objects to a particular Request for Production as vague or burdensome, please answer that and all other interrogatories as fully as possible and in good faith, preserving any bona fide objections as necessary.

## III.    REQUESTS FOR PRODUCTION

1.      All documents identified in your answer to *Interrogatories* propounded by the

Plaintiff.

**Answer:**


2.      All documents relating to Plaintiff's timeshare purchase(s).

**Answer:**


3.      All audio recordings or video recordings of any (1) sales presentations conducted by Defendant or (2) any conversations between any representative, employee or agent of Defendant and the Plaintiff relating to the timeshare purchase(s).

**Answer:**


4.      Produce all documents relating to payments made by the Plaintiff to Defendant in relation to the timeshare purchase(s).

**Answer:**


5.      Produce all security camera recordings relating to Plaintiff' alleged purchase(s).

**Answer:**


6.      Produce the demand for release that Plaintiff(s) sent via facsimile to Defendant.

**Answer:**


7.      Produce all documents you anticipate you may use at trial in this matter.

**Answer:**

Respectfully Submitted,

/s/Stephanie Parsons, Esq.
Stephanie Parsons, Esquire
FBN 1015688
The Timeshare Law Firm, L.L.C.
3270 HWY A1A, Suite 11
Melbourne Beach, FL 32951
(321) 224-1111
info@theabramsfirm.com
litigation@thetimesharelawfirm.com
stephparsons13@gmail.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that the foregoing document has been furnished to the parties listed below through a licensed process server and/or US Regular Mail.

Corporation Service Company
Registered Agent for the Defendant
1201 Hays St.
Tallahassee, FL 32301-2525

Hilton Grand Vacations f/k/a Bluegreen Resorts
6355 MetroWest Boulevard
Suite 180
Orlando, FL 32835

Respectfully Submitted,

/s/Stephanie Parsons, Esq.
Stephanie Parsons, Esquire

Filing # 213094646 E-Filed 12/18/2024 10:48:38 AM

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

DIAMOND WHITE,

Plaintiff,

CASE NO.: 50-23-CA-010711-XXXX-MB

vs.

DIV.: AI

HILTON GRAND VACATIONS, INC., f/k/a
BLUE GREEN VACATIONS
UNLIMITED INC., d/b/a BLUEGREEN
RESORTS and BLUEGREEN
VACATIONS CLUB,

Defendant.

_____/

**PLAINTIFF'S FIRST SET OF
INTERROGATORIES TO DEFENDANT**

Pursuant to Fl. R. Civ. Pro. §26.02 and §33.01, the Plaintiff by and through their counsel

of record, respectfully submit to this Honorable Court this Plaintiff's *First Set of Interrogatories*.

For the purpose of these *Interrogatories* only, Plaintiff has used the definitions and

instructions as set forth below.

**I.    DEFINITIONS**

1.    "Identify" means to provide a statement of the specified person(s) name, address,

employer, title, and position.

2.    "All" means each and every.

3.    "Closing agent" means each and every employee, independent contractor, affiliate,

servant, representative, or agent under the control or authority of the Defendant in contact,

whether in person or appearing through video conference systems such as Zoom, Teams, or

WebEx, with the Plaintiff during the contract signing process.

4.    "Signing agent" means each and every employee, independent contractor, affiliate,

servant, representative, or agent under the control or authority of the Defendant that signed the contract on behalf of the Defendant.

5.      "Other agent" means each and every employee, independent contractor, affiliate, servant, representative, or agent under the control or authority of the Defendant in contact, whether in person or appearing through video conference systems such as Zoom, Teams, or WebEx, with the Plaintiff.

**II.     INSTRUCTIONS**

1.      The Plaintiff's *First Set of Interrogatories* is directed to HILTON GRAND VACATIONS, INC., f/k/a BLUE GREEN VACATIONS UNLIMITED INC., d/b/a BLUEGREEN RESORTS and BLUEGREEN VACATIONS CLUB, and covers all information in Defendant's possession, control, or custody including information in the possession of Defendant's officers, employees, agents, servants, representatives, attorneys, staff, or other persons directly or indirectly employed or retained by Defendant, or anyone else acting on Defendant's behalf or otherwise subject to Defendant's control, and any merged, consolidated, or acquired predecessor or successor, parent, subsidiary, division, or affiliate, including, without limitation information in any corporate archives or document collection of any kind over which Defendant exercises any authority to control access to any degree.

2.      These interrogatories are continuing in nature: Defendant's responses must be supplemented if Defendant, Defendant's counsel, or Defendant's agents obtain further or different information or documents prior to or during trial on the matters alleged in the Complaint.

3.      In answering these interrogatories, please set forth the interrogatory to which each answer corresponds immediately prior to the answer.

4.      Answer each interrogatory fully.

5.      If Defendant objects to any interrogatory, state the reasons for objection and answer to the extent the interrogatory is not objectionable. If unable to answer an interrogatory fully, submit as much information as is available, explain why the answer is incomplete, and identify or describe all other sources of more complete or accurate information.

6.      If Defendant currently lacks information to answer any interrogatory, please state: the information currently available; the information currently unavailable; efforts the Defendant intends to make to secure the unavailable information; and when Defendant anticipates receiving the unavailable information.

7.      If Defendant does not know the answer to any interrogatory, identify the person(s) who know(s) or would be expected to know the answer to such interrogatory.

8.      If Defendant or Defendant's counsel believes that any information requested by any of the following interrogatories is privileged, please identify such information, state the privilege asserted, and state the facts giving rise to such privilege.

9.      In the event Defendant or Defendant's counsel objects to a particular interrogatory as vague or burdensome, please answer that and all other interrogatories as fully as possible and in good faith, preserving any bona fide objections as necessary.

## III.     INTERROGATORIES

1.      Identify the podium speaker(s) involved in the timeshare sale to the Plaintiff on April 22, 2019.

**Answer:**


2.      Identify the tour guide(s) involved in the timeshare sale to the Plaintiff on April 22, 2019.

**Answer:**

3.      Identify the sales agent(s) involved in the timeshare sale to the Plaintiff on April 22,

2019.

**Answer:**

4.      Identify the managing or supervising agent(s) involved in the timeshare sale to the

Plaintiff on April 22, 2019.

**Answer:**

5.      Identify the closing agent(s) involved in the timeshare sale to the Plaintiff on April 22,

2019.

**Answer:**

6.      Identify the signing agent(s) involved in the timeshare sale to the Plaintiff on April 22,

2019.

**Answer:**

7.      Identify all other agents involved in the sale of the timeshare to the Plaintiff on April 22,

2019.

**Answer:**

8.      Identify all persons who witnessed or claims to have witnessed or overheard any

occurrence involving the alleged April 22, 2019, transaction(s).

**Answer:**

9.      Identify all the people you anticipate you may call as a witness at trial in this matter.

**Answer:**

Respectfully Submitted,

/s/Stephanie Parsons, Esq.
Stephanie Parsons, Esquire
FBN 1015688
The Timeshare Law Firm, L.L.C.
3270 HWY A1A, Suite 11
Melbourne Beach, FL 32951
(321) 224-1111
info@theabramsfirm.com
litigation@thetimesharelawfirm.com
stephparsons13@gmail.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

        I certify that the foregoing document has been furnished to the parties listed below
through a licensed process server and/or US Regular Mail.

Corporation Service Company
Registered Agent for the Defendant
1201 Hays St.
Tallahassee, FL 32301-2525

Hilton Grand Vacations f/k/a Bluegreen Resorts
6355 MetroWest Boulevard
Suite 180
Orlando, FL 32835

Respectfully Submitted,

/s/Stephanie Parsons, Esq.
Stephanie Parsons, Esquire



Diamond White - Summons.docx

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

DIAMOND WHITE,

Plaintiff,                                          CASE NO.: 50-23-CA-010711-XXXX-MB

vs.                                                 DIV.: AI

HILTON GRAND VACATIONS, INC., f/k/a
BLUE GREEN VACATIONS
UNLIMITED INC., d/b/a BLUEGREEN
RESORTS and BLUEGREEN
VACATIONS CLUB,

Defendant.

_____/

## NOTICE OF APPEARANCE AND DESIGNATION OF EMAIL ADDRESS(ES)

PLEASE TAKE NOTICE that the undersigned hereby appears as counsel for the Plaintiff, DIAMOND WHITE, in this instant action. All future pleadings and correspondence with regard to this matter should be forwarded to the undersigned. Pursuant to Florida Rule of Judicial Administration 2.516, Stephanie Parsons, Esq. hereby designates the below email address(es) as follows:

Primary E-Mail: litigation@thetimesharelawfirm.com
Secondary E-Mail: info@theabramsfirm.com
Stephparsons13@gmail.com

Respectfully Submitted,

/s/Stephanie Parsons, Esq.
Stephanie Parsons, Esquire
FBN 1015688
The Timeshare Law Firm, L.L.C.
3270 HWY A1A, Suite 11
Melbourne Beach, FL 32951
(321) 224-1111
info@theabramsfirm.com
litigation@thetimesharelawfirm.com
stephparsons13@gmail.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that the foregoing document has been furnished to the parties listed below through a licensed process server and/or US Regular Mail.

Corporation Service Company
Registered Agent for the Defendant
1201 Hays St.
Tallahassee, FL 32301-2525

Hilton Grand Vacations f/k/a Bluegreen Resorts
6355 MetroWest Boulevard
Suite 180
Orlando, FL 32835

Respectfully Submitted,

/s/Stephanie Parsons, Esq.
Stephanie Parsons, Esquire

## RETURN OF SERVICE

State of Florida                    County of PALM BEACH                    CIRCUIT Court

Case Number: 50-23-010711-XXXX-MB

Plaintiffs:
**DIAMOND WHITE**

vs.

Defendant:
**HILTON GRAND VACATIONS, INC., F/K/A BLUE GREEN VACATIONS UNLIMITED INC. ET AL**

For:
STEPHANIE PARSONS, ESQ.
THE TIMESHARE LAW FIRM, P.L.L.C.
3270 HWY A1A
STE. 11
MELBOURNE BEACH, FL 32951

Received by NOLAN PROCESS SERVERS, LLC on the 18th day of December, 2024 at 11:31 am to be served on **HILTON GRAND VACATIONS F/K/A BLUE GREEN VACATIONS UNLIMITED, INC. D/B/A BLUEGREEN RESORTS AND BLUEGREEN VACATIONS CLUB / CORPORATION SERVICE COMPANY, 1201 HAYS STREET, TALLAHASSEE, FL 32301.**

I, MICHAEL C. NOLAN, do hereby affirm that on the **19th day of December, 2024** at **8:45 am**, I:

**CORPORATE:** served by delivering a true copy of the **SUMMONS; PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANT; PLAINTIFF'S FIRST SET OF INTERROGATORIES FOR PRODUCTION TO DEFENDANT; NOTICE OF APPEARANCE AND DESIGNATION OF EMAIL ADDRESS(ES); PLAINTIFF'S MOTION TO CORRECT SCRIVENER'S ERROR; AMENDED COMPLAINT, WITH COUNT(S); COMPLAINT AND DEMAND FOR JURY TRIAL, WITH COUNT(S) EXHIBIT(S)** with the date and hour of service endorsed thereon by me, to: **DENNIS RATLIFFE** as **AUTHORIZED REPRESENTATIVE** for the Registered Agent of HILTON GRAND VACATIONS F/K/A BLUE GREEN VACATIONS UNLIMITED, INC. D/B/A BLUEGREEN RESORTS AND BLUEGREEN VACATIONS CLUB / CORPORATION SERVICE COMPANY at the address of: **1201 HAYS STREET, TALLAHASSEE, FL 32301**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 30+, Sex: M, Race/Skin Color: WHITE, Height: 6'0", Weight: 210, Hair: DARK BROWN, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. Under penalty of perjury I declare that the facts contained herein are true to the best of my knowledge. NO NOTARY REQUIRED PURSUANT TO F.S. 92.525 (2).

**MICHAEL C. NOLAN**
Certified Process Server, #111

NOLAN PROCESS SERVERS, LLC
7498 Anglewood Lane
Tallahassee, FL 32309
(850) 562-6058

Our Job Serial Number: MCN-2024018292

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

Filing # 212891952 E-Filed 12/16/2024 09:59:26 AM

IN THE CIRCUIT COURT FOR THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

DIAMOND WHITE,

Plaintiff,                                    CASE NO.: 50-23-CA-010711-XXXX-MB

vs.                                           DIV.: AI

HILTON GRAND VACATIONS, INC., f/k/a
BLUE GREEN VACATIONS
UNLIMITED INC., d/b/a BLUEGREEN
RESORTS and BLUEGREEN                         Date: 12/19/24   Time: 8:45
VACATIONS CLUB,                                                MCN #111
                                              is a certified process server in the
                                              Circuit and County Courts in and for the
Defendant.                                              Second Judicial Circuit
_____/

## SUMMONS:
## ORDEN DE COMPARECENCIA: CITATION:

**TO/PARA/A:** Hilton Grand Vacations f/k/a Blue Green Vacations Unlimited, Inc.
d/b/a Bluegreen Resorts and Bluegreen Vacations Club
Corporation Service Company
Registered Agent for the Defendant
1201 Hays St.
Tallahassee, FL 32301-2525

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court.

A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case.

If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also serve a copy of your written response on the party serving this summons at:

Stephanie Parsons, Esq.
FBN 1015688

Filing # 213450939 E-Filed 12/24/2024 11:01:42 AM

# RETURN OF SERVICE

**State of Florida**                **County of ORANGE**                **9TH JUDICIAL CIRCUIT Court**

Case Number: 2024-CA-010233-O

Plaintiffs:
**VANESSA THOMPSON,**

vs.

Defendant:
**TRAVEL + LEISURE CO., INCLUDING ITS SUBIDIARIES WYNDHAM VACATION OWNERSHIP INC., AND WORLDMARK BY WYNDHAM,**

For:
STEPHANIE PARSONS, ESQ.
THE TIMESHARE LAW FIRM, P.L.L.C.
3270 HWY A1A
STE. 11
MELBOURNE BEACH, FL 32951

Received by NOLAN PROCESS SERVERS, LLC on the 13th day of December, 2024 at 1:18 pm to be served on **TRAVEL + LEISURE, CO. C/O REGISTERED AGENT - CORPORATION SERVICE COMPANY, 1201 HAYS STREET, TALLAHASSEE, FL 32301-2525**.

I, MICHAEL C. NOLAN, do hereby affirm that on the **16th day of December, 2024** at **9:05 am, I:**

**CORPORATE:** served by delivering a true copy of the **SUMMONS, COMPLAINT, NOTICE OF APPEARANCE AND DESIGNATION OF EMAIL ADDRESS(ES), PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT, PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANT** with the date and hour of service endorsed thereon by me, to: **SHEENA BLACK** as **AUTHORIZED REPRESENTATIVE** for the Registered Agent of TRAVEL + LEISURE, CO. C/O REGISTERED AGENT - CORPORATION SERVICE COMPANY  at the address of: **1201 HAYS STREET, TALLAHASSEE, FL 32301**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 35+, Sex: F, Race/Skin Color: WHITE, Height: 5'6", Weight: 145, Hair: DARK RED, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.  Under penalty of perjury I declare that the facts contained herein are true to the best of my knowledge.NO NOTARY REQUIRED PURSUANT TO F.S. 92.525 (2).

_____

**MICHAEL C. NOLAN**
Certified Process Server, #111

**NOLAN PROCESS SERVERS, LLC**
**7498 Anglewood Lane**
**Tallahassee, FL 32309**
**(850) 562-6058**

Our Job Serial Number: MCN-2024018072

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

Filing # 211131019 E-Filed 11/18/2024 10:29:16 AM

**IN THE CIRCUIT COURT FOR THE NINTH JUDICIAL CIRCUIT**
**IN AND FOR ORANGE COUNTY, FLORIDA**

VANESSA THOMPSON,

Plaintiff,

vs.

TRAVEL + LEISURE CO.,
INCLUDING ITS SUBSIDIARIES
WYNDHAM VACATION
OWNERSHIP INC., AND WORLDMARK
BY WYNDHAM,

Defendant.

_____/

Case No.:2024-CA-010233-O
Division:

Date: 12/16/24   Time: 9:05

MCN #111
is a certified process server in the
Circuit and County Courts in and for the
Second Judicial Circuit

NOT A CERTIFIED COPY

## SUMMONS:
## ORDEN DE COMPARECENCIA: CITATION:

**TO/PARA/A:** Travel + Leisure, Co. including its subsidiaries
Wyndham Vacation Ownership, Inc. and Worldmark by Wyndham
c/o Registered Agent – Corporation Service Company
1201 Hays St.
Tallahassee, Florida 32301-2525

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court.

A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case.

If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also serve a copy of your written response on the party serving this summons at: